1    315. On January 28, 2013, defendant MARTINEZ, using coded

2 language in a telephone conversation, told defendant ANTROINE

3 TYARS SR. that defendant PEREZ would be arriving to pick up 3.5

4 grams of crack cocaine from defendant ANTROINE TYARS SR.

5    316. On January 28, 2013, defendant MARTINEZ, using coded

6 language in a telephone conversation, told defendant SUMPTER

7 that defendant TYRELL THOMAS JR. wanted to purchase drugs; and

8 defendant SUMPTER told defendant MARTINEZ to call defendant

9 HALL.

10    317. On January 28, 2013, defendant TYRELL THOMAS JR.,

11 using coded language in a telephone conversation, ordered crack

12 cocaine from defendant MARTINEZ.

13    318. On January 29, 2013, defendant TYRELL THOMAS JR., in

14 his residence located in Compton, California, possessed a FEG

15 Union model SA85 9mm caliber semi-automatic assault rifle,

16 bearing serial number SM13947; a high capacity 30-round

17 ammunition magazine; ammunition; and indicia of his membership

18 in the Broadway Crips.

19    319. On January 29, 2013, defendants MARTINEZ and SUMPTER,

20 using coded language in a telephone conversation, discussed how

21 defendant GOLDSTON needed to stop publically talking about gang

22 business.

23    320. On January 29, 2013, defendant MARTINEZ, using coded

24 language in a telephone conversation, told defendant SORRELLS to

25 come and help assault and discipline defendant GOLDSTON.

26    321. On January 29, 2013, defendants MARTINEZ and SORRELLS,

27 using coded language in a telephone conversation, discussed the

28

1  assault and discipline of defendant GOLDSTON that had just
2  occurred.

3     322. On January 30, 2013, defendant MARSHALL, using coded
4  language in a telephone conversation, ordered additional crack
5  cocaine from defendant SUMPTER.

6     323. On January 30, 2013, defendant MARTINEZ, using coded
7  language in a telephone conversation, informed defendant DODDS
8  that A.S. had been shot twice in the head and that defendant
9  MARTINEZ believed the murder to have been committed by a rival
10  gang member.  In turn, defendant DODDS informed defendant
11  MARTINEZ that, during a recent encounter with the police,
12  defendant DODDS provided a false name to police officers.

13     324. On January 30, 2013, defendants MARTINEZ and DASHIELL,
14  using coded language in a telephone conversation, discussed the
15  murder of A.S. and whether it was committed by the Rollin' 40s
16  gang.

17     325. On January 30, 2013, defendant MARTINEZ, using coded
18  language in a telephone conversation, instructed defendant PETE
19  that defendant MARTINEZ and other Broadway Crips gang members
20  were going to be meeting soon on 41st and Hoover Streets to
21  discuss A.S.'s recent murder.

22     326. On January 30, 2013, defendant RICHARDS, using coded
23  language in a telephone conversation, told defendant MARTINEZ
24  that defendant RICHARDS recently heard about the murder of A.S.
25  and agreed to retrieve a firearm and meet defendant MARTINEZ on
26  53rd Street.

27     327. On January 30, 2013, defendant JAMES, in his
28  residence, located at 219 W. 53rd Street in Broadway Crips'

1  territory, possessed a loaded Beretta model Corto 9mm caliber
2  semi-automatic handgun, bearing serial number E59786; a loaded
3  Sig Sauer model P226 9mm caliber semi-automatic handgun, bearing
4  serial number UU683108; a loaded Springfield Armory model XD 9mm
5  caliber semi-automatic handgun, bearing serial number XD200090;
6  a loaded Sturm, Ruger & Co. model P94 .40 caliber semi-automatic
7  handgun, bearing serial number 340-72229; a Beretta model 92FS
8  9mm caliber semi-automatic handgun, bearing serial number
9  C73925Z, loaded with hollow point ammunition; and a Dakota
10 Magnum .357 caliber revolver, bearing serial number 23600,
11 loaded with hollow point ammunition, for the purpose of
12 retaliating against a rival gang for A.S.'s murder.
13      328. On January 30, 2013, defendants KELLY and KEITH, in a
14 residence, located at 225 W. 53rd Street in Broadway Crips'
15 territory, possessed a loaded Cobra Enterprises Inc. Patriot .45
16 caliber semi-automatic handgun with an obliterated serial
17 number, extra ammunition magazines, and 40 .223 caliber
18 ammunition rounds, for the purpose of retaliating against a
19 rival gang for A.S.'s murder.
20      329. On January 30, 2013, several Broadway Crips members,
21 including defendants JONES, KEATON, HALL, and JACKSON, were
22 present at and around 219 and 225 W. 53rd Street in Broadway
23 Crips' territory for the purpose of retaliating against a rival
24 gang for A.S.'s murder.
25      330. On January 30, 2013, defendant MARTINEZ, using coded
26 language in a telephone conversation, advised defendant MARSHALL
27 to watch out because of police activity in the area of 53rd
28 Street in Broadway Crips' territory.

331. On January 30, 2013, defendant MARTINEZ, using coded language in a telephone conversation, referred to defendant DASHIELL as "OG" and advised him about recent search warrants executed at defendants KELLY's and JAMES's residences where the gang's firearms had just been seized.

332. On January 31, 2013, defendant MARTINEZ, using coded language in a telephone conversation, spoke to a Rollin' 40s gang member and agreed to meet regarding the recent murder of A.S.

333. On January 31, 2013, defendant GRIMBLE, using coded language in a telephone conversation, asked defendant MARTINEZ for defendant SUMPTER's phone number because defendant GRIMBLE needed a "50" of crack cocaine.

334. On January 31, 2013, defendant MARTINEZ told fellow Broadways Crips members that they should have killed a rival gang member in retaliation for the murder of A.S.

335. On January 31, 2013, defendant MARTINEZ, using coded language in a telephone conversation, informed defendant DASHIELL that the Rollin' 40s gang was not taking responsibility for A.S.'s killing and wanted to meet with representatives from the Broadway Crips in order to prevent a gang war; and defendant DASHIELL directed defendant MARTINEZ to have the meeting with the Rollin' 40s in a discrete area in Broadway Crips' territory.

336. On January 31, 2013, defendant MARTINEZ, using coded language in a telephone conversation, told a member of the Rollin' 40s gang to meet defendant MARTINEZ on 52nd Place in Broadway Crips' territory.

1    337. On January 31, 2013, defendants MARTINEZ and MARSHALL,
2    using coded language in a telephone conversation, discussed a
3    possible suspect in a murder and a meeting with the Rollin' 40s
4    regarding A.S.'s murder.

5    338. On January 31, 2013, defendant MARTINEZ, using coded
6    language in a telephone conversation, told defendant HALL that
7    defendant GRIMBLE would pick up 1.5 grams of crack cocaine from
8    defendant HALL.

9    339. On January 31, 2013, defendant MARTINEZ, using coded
10   language in a telephone conversation, bragged that he carried a
11   .357 caliber handgun with him to engage in his gang activity.

12   340. On January 31, 2013, defendant DODDS, using coded
13   language in a telephone conversation, discussed with defendant
14   MARTINEZ the police raid at defendant KELLY's residence and that
15   the police may have seized a firearm during the raid, the person
16   they suspected of killing A.S., and the status of a gang safe
17   house.

18   341. On February 1, 2013, defendant MARTINEZ, using coded
19   language in a telephone conversation, told defendant SUMPTER
20   that defendant BARNETT wanted to purchase crack cocaine, and
21   defendant SUMPTER directed that the purchase be made from
22   defendant HALL.

23   342. On February 1, 2013, defendant MARTINEZ, using coded
24   language in a telephone conversation, discussed with defendant
25   HALL their drug supply status, and defendant HALL stated that he
26   had just 3.5 grams of crack cocaine left to sell.

27   343. On February 1, 2013, defendant MARTINEZ, using coded
28   language in a telephone conversation, told defendant SUMPTER

that defendant HALL had sold all of his drugs and that defendant
AMOS purchased "three," and defendant SUMPTER instructed
defendant MARTINEZ to give the remaining drugs to defendant
BARNETT.

344. On February 1, 2013, defendant HALL, using coded
language in a telephone conversation, informed defendant
MARTINEZ that he was going to bring defendant MARTINEZ $450 in
drug proceeds.

345. On February 1, 2013, defendants MARTINEZ and SUMPTER,
using coded language in a telephone conversation, discussed a
meeting that defendants MARTINEZ, DASHIELL, and MARSHALL and
other Broadway Crips members had with members of the Rollin' 40s
gang to discuss the murder of A.S.

346. On February 1, 2013, defendant MARTINEZ, using coded
language in a telephone conversation, told defendant GRIMBLE
that defendant MARTINEZ was cooking crack cocaine.

347. On February 1, 2013, defendants MARTINEZ and GRIMBLE,
using coded language in a telephone conversation, discussed
supplying a 9mm caliber handgun to a CS.

348. On February 1, 2013, defendant MARTINEZ, using coded
language in a telephone conversation, instructed defendant
SUMPTER to call defendant RILEY because defendant HALL was on
his way to deliver drug proceeds.

349. On February 1, 2013, defendants MARTINEZ and SUMPTER,
using coded language in a telephone conversation, discussed the
following: the drug supply status at their drug stash house;
providing defendant HALL additional crack cocaine to sell; the
purchase by a drug customer of $800 worth of crack cocaine; and

1    defendant RILEY's transportation of the crack cocaine to be

2    purchased by the customer to the drug stash house.

3         350. On February 1, 2013, defendant SUMPTER, using coded

4    language in a telephone conversation, told defendant MARTINEZ

5    that defendant AMOS would be meeting with defendant MARTINEZ to

6    discuss the purchase of drugs.

7         351. On February 1, 2013, defendant MARTINEZ, in Broadway

8    Crips' territory and with the assistance of defendant GRIMBLE,

9    sold a 9mm caliber handgun for $100 to a CS.

10        352. On February 1, 2013, defendant HALL, using coded

11   language in a telephone conversation, told defendant MARTINEZ

12   that defendant SUMPTER had referred a drug customer who wanted

13   to purchase 14 grams of marijuana to defendant HALL, and

14   defendant MARTINEZ informed defendant HALL to sell the marijuana

15   for $150.

16        353. On February 1, 2013, defendants MARTINEZ and HALL,

17   using coded language in a telephone conversation, discussed drug

18   proceeds and breaking down crack cocaine into smaller and more

19   profitable sale quantities.

20        354. On February 1, 2013, defendant MARTINEZ, using coded

21   language in a telephone conversation, advised a CS that

22   defendant MARTINEZ had a 9mm caliber handgun with an extended

23   ammunition magazine that he would sell for $350.

24        355. On February 1, 2013, defendant MARTINEZ told a CS

25   that: defendant MARTINEZ was in possession of a .357 caliber

26   handgun; defendant TYRELL THOMAS JR. was in possession of a

27   shotgun; defendant TYRELL THOMAS SR. was going to give defendant

28   MARTINEZ a rifle, a shotgun, and two handguns; defendant SHAW

1  was going to give defendant MARTINEZ a 9mm caliber handgun; and

2  all of the weapons defendant MARTINEZ would be obtaining and

3  storing would be used by the gang to protect its territory and

4  to retaliate against other gangs.

5       356. On February 1, 2013, defendant GRIMBLE, using coded

6  language in a telephone conversation, ordered 1.5 grams of crack

7  cocaine from defendant MARTINEZ.

8       357. On February 1, 2013, defendants MARTINEZ and HALL,

9  using coded language in a telephone conversation, discussed the

10 following: the murder of A.S. and how A.S.'s family believed

11 that the Broadway Crips committed the murder as a form of

12 discipline because of A.S.'s alleged cooperation with the police

13 regarding the January 2, 2012 murder; how the Rollin' 40s gang

14 wanted a meeting with the Broadway Crips to establish that their

15 gang was not responsible for A.S.'s murder; the fact that if the

16 Broadway Crips wanted A.S. dead, it would have been done long

17 ago and in the gang's own territory; that defendant MARTINEZ

18 requested defendant HALL be present as back-up at the meeting

19 with the Rollin' 40s gang; the drug supply status at the drug

20 stash house and their downtown drug sales area; and that

21 defendant BARNETT owed them $115 in drug proceeds.

22      358. On February 1, 2013, defendant MARTINEZ, using coded

23 language in a telephone conversation, asked defendant RILEY to

24 supply defendant MARTINEZ with seven grams of crack cocaine.

25      359. On February 2, 2013, defendant HALL, using coded

26 language in a telephone conversation, informed defendant

27 MARTINEZ that defendant HALL had 42 grams of crack cocaine left

28 at their drug stash house, and defendant MARTINEZ stated that he

had a gun on him and told another person that he would sell him 1.5 grams of crack cocaine.

360. On February 2, 2013, defendant GRIMBLE, using coded language in a telephone conversation, told defendant MARTINEZ that defendant GRIMBLE needed to purchase a re-supply of crack cocaine, and defendant MARTINEZ referred him to defendant HALL.

361. On February 2, 2013, defendant MARTINEZ, using coded language in a telephone conversation, told defendant HALL that defendant GRIMBLE would purchase some additional drugs.

362. On February 3, 2013, defendant MARTINEZ, using coded language in telephone conversations, asked an unindicted co-conspirator to return defendant MARTINEZ's gun to defendant MARTINEZ.

363. On February 3, 2013, defendant DODDS, using coded language in a telephone conversation, informed defendant MARTINEZ that defendant DODDS would have to sneak into A.S.'s funeral because of the fear of undercover law enforcement officers being present to investigate the gang.

364. On February 4, 2013, defendant MARTINEZ, using coded language in a telephone conversation, told defendant HALL that defendant RILEY was going to make a drug delivery to defendant HALL.

365. On February 4, 2013, defendant MARTINEZ, using coded language in a telephone conversation, asked if defendant JUAN TYARS had received the drugs that defendant JUAN TYARS wanted.

366. On February 4, 2013, defendant MARTINEZ, using coded language in a telephone conversation, asked defendant RILEY to supply defendant MARTINEZ with 17.5 grams of crack cocaine.

367. On February 4, 2013, defendant GRIMBLE, using coded language in a telephone conversation, discussed with defendant MARTINEZ whether an unindicted Broadway Crips OG member known to the Grand Jury was disciplined by the gang.

368. On February 4, 2013, defendant MARTINEZ, using coded language in a telephone conversation, told defendant HALL that a Broadway Crips member would be arriving to purchase 1.5 grams of crack cocaine.

369. On February 4, 2013, defendant HALL, using coded language in a telephone conversation, informed defendant MARTINEZ that he had sold all of the crack cocaine and would provide $885 in drug proceeds to defendant MARTINEZ; defendant HALL also stated that defendant SUMPTER had provided 3.5 grams of crack cocaine to defendant WHETSTONE; and defendant MARTINEZ told defendant HALL that he would re-supply defendant HALL with crack cocaine.

370. On February 5, 2013, defendant MARTINEZ, using coded language in a telephone conversation, instructed defendant HALL to give an unindicted Broadway Crips member "two greezy" or "two grams" of crack cocaine.

371. On February 5, 2013, defendants MARTINEZ and HALL, using coded language in a telephone conversation, discussed the potential sale of drugs to defendant TYRONE TYARS.

372. On February 5, 2013, defendant MARTINEZ, using coded language in a telephone conversation, told defendant SUMPTER that he sent people, including defendant TYRONE TYARS, to purchase drugs from defendant HALL.

81

373. On February 5, 2013, defendant MARTINEZ, using coded language in a telephone conversation, instructed defendant HALL to minimize the visible foot traffic to their drug stash location so as to not alert law enforcement as to that location; defendant HALL stated that he had $750 worth of drugs and had sold $450 worth of drugs; defendant MARTINEZ stated that he would send defendant RILEY to re-supply defendant HALL with drugs; and defendant MARTINEZ told defendant HALL that he did not want to further discuss drug sales over the phone.

374. On February 5, 2013, defendant MARTINEZ, using coded language in a telephone conversation, told an unindicted female co-conspirator to bring defendant MARTINEZ's gun to him.

375. On February 5, 2013, defendant HALL, using coded language in a telephone conversation, told defendant MARTINEZ that a drug customer had just purchased 14 grams of crack cocaine.

376. On February 5, 2013, defendant RILEY, using coded language in a telephone conversation, confirmed with defendant MARTINEZ that defendant RILEY was delivering 14 grams of crack cocaine to defendant HALL.

377. On February 5, 2013, defendant MARTINEZ, using coded language in a telephone conversation, told defendant HALL to give a Broadway Crips member 2.5 grams of crack cocaine.

378. On February 6, 2013, defendants MARTINEZ and SUMPTER, using coded language in a telephone conversation, discussed the following: various drug supplies; that defendant HALL was taking care of the drug business; and that defendant RILEY had delivered drugs.

379. On February 6, 2013, defendant MARTINEZ, using coded language in a telephone conversation, told an unidentified individual that defendant MARTINEZ brings a gun home to protect himself from rival gang members and also had an assault rifle.

380. On February 7, 2013, defendants MARTINEZ, TYRELL THOMAS SR., DASHIELL, and WOOLEY discussed the shooting of an unindicted Broadway Crips member known to the Grand Jury.

381. On February 7, 2013, defendant MARTINEZ and an unindicted female Broadway Crips associate, using coded language in a telephone conversation, discussed that defendant MARTINEZ's gun was under the female associate's bed.

382. On February 7, 2013, defendant GOLDSTON, using coded language in a telephone conversation, informed defendant MARTINEZ that defendant GOLDSTON was going to a drug stash house in Broadway Crips' territory to collect drug proceeds.

383. On February 7, 2013, defendants MARTINEZ and TYRELL THOMAS SR., using coded language in a telephone conversation, discussed directing the girlfriend of A.S. to not come to A.S.'s funeral; that defendants SUMPTER and DASHIELL agreed to contribute for the funeral; that defendant MARTINEZ would have a gang meeting to collect money for the gang's cash fund; that defendant MARTINEZ would speak with defendant CAMPBELL about the gang's cash fund; and that defendant TYRELL THOMAS SR. should inform defendants DASHIELL and HARRIS and an unindicted Broadway Crips OG member known to the Grand Jury about collecting money for A.S.'s funeral.

1    384. On February 7, 2013, defendant MARTINEZ, using coded
2    language in a telephone conversation, ordered 14 grams of crack
3    cocaine from defendant RILEY.

4    385. On February 7, 2013, defendant HALL, using coded
5    language in a telephone conversation, told defendant MARTINEZ
6    that defendant HALL needed a re-supply of crack cocaine,
7    defendant SUMPTER had provided seven grams of crack cocaine to a
8    customer, and defendant HALL had sold $250 worth of crack
9    cocaine; and defendant MARTINEZ responded that defendants
10   MARTINEZ and SUMPTER needed to manufacture more crack cocaine.

11   386. On February 7, 2013, defendant HALL, using coded
12   language in a telephone conversation, told defendant MARTINEZ
13   that defendant HALL had just received 28 grams of crack cocaine
14   at their drug stash location.

15   387. On February 7, 2013, defendant HALL, using coded
16   language in a telephone conversation, told defendant MARTINEZ
17   that he had $500 in drug proceeds.

18   388. On February 7, 2013, defendant MARTINEZ, using coded
19   language in a telephone conversation, told an unidentified
20   individual that the family of A.S. could not stop the gang from
21   attending A.S.'s funeral and that if they did, they would "have
22   a problem."

23   389. On February 7, 2013, defendant MARTINEZ, using coded
24   language in a telephone conversation, informed defendant HALL
25   that defendant RILEY would be bringing 14 grams of crack cocaine
26   to their drug stash location.

27   390. On February 8, 2013, defendant MARTINEZ, using coded
28   language in a telephone conversation, instructed defendant HALL

1  that the price for which they would sell seven grams of crack

2  cocaine would be between $220-$225.

3       391. On February 8, 2013, defendant MARTINEZ, using coded

4  language in a telephone conversation, instructed defendant HALL

5  that the "boss" dictated how to distribute crack cocaine to

6  three Broadway Crips members, including defendants JUAN TYARS

7  and JONES, and to keep the crack cocaine as one solid so it

8  would not affect the count of the drug proceeds.

9       392. On February 8, 2013, defendant MARTINEZ, using coded

10 language in a telephone conversation, informed defendants

11 SUMPTER and GRIMBLE that defendants MARTINEZ, DASHIELL, HALL,

12 BARNETT, and TYRONE TYARS had traveled to confront ECC members

13 after a dispute involving a separate Broadway Crips member.

14      393. On February 8, 2013, defendants MARTINEZ and HALL,

15 using coded language in a telephone conversation, discussed the

16 following: that they would front three Broadway Crips members,

17 including defendant RICHARDS, crack cocaine so that the three

18 members could make money; that defendant HALL only had crack

19 cocaine rocks of seven grams and 3.5 grams remaining; that

20 defendant HALL gave other drugs to defendant SUMPTER; and that

21 defendant HALL needed to break down some of the crack cocaine in

22 order to make more sales.

23      394. On February 8, 2013, defendant MARTINEZ, using coded

24 language in a telephone conversation, ordered an ounce of crack

25 cocaine from defendant RILEY.

26      395. On February 8, 2013, defendant HALL, using coded

27 language in a telephone conversation, told defendant MARTINEZ

28

1  that defendant TYRONE TYARS purchased three grams of crack

2  cocaine for $100.

3      396. On February 8, 2013, defendant TYRELL THOMAS JR.,

4  using coded language in a telephone conversation, referred to

5  defendant MARTINEZ as "Rider" and ordered 3.5 grams of crack

6  cocaine from defendant MARTINEZ.

7      397. On February 8, 2013, defendants MARTINEZ and HALL,

8  using coded language in a telephone conversation, discussed the

9  impending sale of crack cocaine to defendants TYRELL THOMAS JR.,

10 TYRONE TYARS, and RICHARDS.

11     398. On February 8, 2013, defendant RICHARDS, using coded

12 language in a telephone conversation, told defendant MARTINEZ

13 that defendant RICHARDS wanted to purchase drugs from defendant

14 HALL; and defendant MARTINEZ told defendant RICHARDS to go to

15 defendant HALL because defendant HALL was on 56th Street and

16 would also be making sales to defendants TYRELL THOMAS JR. and

17 TYRONE TYARS.

18     399. On February 8, 2013, defendant MARTINEZ, using coded

19 language in a text conversation, stated to an unindicted

20 Broadway Crips member that defendant MARTINEZ could not obtain a

21 9mm caliber handgun ammunition magazine, but would look into

22 obtaining ammunition; that the gang would be having a

23 "mandatory" meeting the following day in Broadway Crips'

24 territory; and that the unindicted member did not have to bring

25 his gun because the meeting was only about a fellow gang

26 member's funeral.

27     400. On February 8, 2013, defendant MARTINEZ, using coded

28 language in a telephone conversation, asked defendant SUMPTER

1  for a gun to go on "a mission," but defendant SUMPTER responded

2  that he had just provided a gun to another unindicted Broadway

3  Crips member.

4      401. On February 9, 2013, defendant MARTINEZ, using coded

5  language in a telephone conversation, advised an unindicted

6  female Broadway Crips associate that defendant MARTINEZ may need

7  the gun he had stored at her house.

8      402. On February 9, 2013, defendant GRIMBLE, using coded

9  language in a telephone conversation, told defendant MARTINEZ

10 that defendant GRIMBLE encountered a male who was with two

11 females and a baby and that defendant GRIMBLE asked the male

12 what gang the male belonged to, told the male that he was in

13 Broadway Crips' territory, and then stabbed the male.

14     403. On February 9, 2013, defendant MARTINEZ, using coded

15 language in a telephone conversation, told defendant HALL that

16 he sent drug customers to defendant HALL, and defendant HALL

17 advised that he had approximately 18 grams of crack cocaine

18 remaining for sale.

19     404. On February 9, 2013, defendant MARTINEZ, using coded

20 language in a telephone conversation, ordered seven grams of

21 crack cocaine from defendant RILEY.

22     405. On February 10, 2013, defendant RICHARDS, using coded

23 language in a text message, told defendant MARTINEZ that

24 defendant RICHARDS was satisfied with defendant MARTINEZ's

25 recent sale of crack cocaine to defendant RICHARDS.

26     406. On February 10, 2013, defendant RICHARDS, using coded

27 language in a telephone conversation, asked defendant MARTINEZ

28 to sell defendant RICHARDS seven grams of crack cocaine, and

defendant MARTINEZ agreed to meet defendant RICHARDS to carry out the sale.

407. On February 10, 2013, defendant MARTINEZ, using coded language in a telephone conversation, told defendant ANTROINE TYARS SR. that defendant WHETSTONE would be arriving to pick up 3.5 grams of crack cocaine from defendant ANTROINE TYARS SR.

408. On February 11, 2013, defendant MARTINEZ, using coded language in a telephone conversation, instructed defendant HALL to prepare 3.5 grams of crack cocaine at the drug stash location in order to sell it to a drug customer.

409. On February 11, 2013, defendant MARTINEZ, using coded language in a telephone conversation, told defendant MARSHALL that defendant SUMPTER was calling defendant LEGGETT to have him supply cocaine to defendant MARSHALL.

410. On February 11, 2013, defendant WHETSTONE, using coded language in a telephone conversation, told defendant MARTINEZ to call defendant HALL because defendant WHETSTONE needed to place another order of drugs.

411. On February 11, 2013, defendant MARSHALL, using coded language in a telephone conversation, asked defendant MARTINEZ to have defendant SUMPTER ask defendant LEGGETT to provide cocaine to defendant MARSHALL.

412. On February 11, 2013, defendant MARTINEZ, using coded language in a telephone conversation, advised an unindicted female Broadway Crips associate that he was coming to pick up his gun that was stored at her house.

413. On February 11, 2013, defendant MARTINEZ, using coded language in a telephone conversation, told an unindicted co-

conspirator that defendant MARTINEZ only had crack cocaine and was waiting on his supplier from Arizona to deliver powder cocaine.

414. On February 11, 2013, defendant HALL, using coded language in a telephone conversation, informed defendant MARTINEZ that defendant HALL had sold all of the drugs but had recently been re-supplied, and defendant MARTINEZ responded that he would come to the drug stash location to pick up the drug proceeds.

415. On February 11, 2013, an unindicted co-conspirator, using coded language in a telephone conversation, ordered 14 grams of powder cocaine from defendant MARTINEZ.

416. On February 11, 2013, defendant MARSHALL, using coded language in a telephone conversation, told defendant MARTINEZ to pass on defendant MARSHALL's order of one ounce of crack cocaine to defendant SUMPTER.

417. On February 11, 2013, defendant SUMPTER, using coded language in a telephone conversation, asked defendant JUAN TYARS for the phone number of defendant LEGGETT to obtain crack cocaine from defendant LEGGETT.

418. On February 12, 2013, defendant MARTINEZ, using coded language in a telephone conversation, told defendant SUMPTER that defendant HALL had provided the count in reference to their drug supply at their drug stash location.

419. On February 12, 2013, defendant RICHARDS, using coded language in a telephone conversation, asked defendant MARTINEZ to sell defendant RICHARDS 28 grams of crack cocaine, to which

1 | defendant MARTINEZ agreed and arranged to meet with defendant
2 | RICHARDS to carry out the sale.

3 |     420. On February 12, 2013, defendants MARTINEZ and HALL,
4 | using coded language in a telephone conversation, discussed
5 | dividing up crack cocaine rocks, and defendant MARTINEZ
6 | instructed defendant HALL to add a cutting agent to boost the
7 | weights of the crack cocaine rocks.

8 |     421. On February 12, 2013, defendant MARTINEZ, using coded
9 | language in a telephone conversation, ordered 3.5 grams of crack
10 | cocaine from defendant RILEY.

11 |     422. On February 12, 2013, defendant MARTINEZ, using coded
12 | language in a telephone conversation, ordered codeine syrup from
13 | defendant PITTS.

14 |     423. On February 12, 2013, defendant MARTINEZ and an
15 | unindicted co-conspirator, using coded language in a telephone
16 | conversation, discussed purchasing prescription drugs for re-
17 | sale.

18 |     424. On February 12, 2013, an unindicted co-conspirator,
19 | using coded language in a text message, requested that defendant
20 | MARTINEZ initiate the unindicted co-conspirator into the
21 | Broadway Crips.

22 |     425. On February 12, 2013, defendant TYRELL THOMAS JR.,
23 | using coded language in a telephone conversation, asked
24 | defendant MARTINEZ if he had drugs; and when defendant MARTINEZ
25 | affirmed that he did, defendant THOMAS stated that he would come
26 | over to obtain the drugs.

27 |     426. On February 12, 2013, defendant MARTINEZ and an
28 | unindicted co-conspirator, using coded language in a telephone

1 conversation, discussed the following: the purchase of 20
2 bottles of codeine syrup per order; the transportation of
3 codeine syrup by smuggling it on a plane; and that defendant
4 SUMPTER would provide the money for the codeine syrup
5 trafficking.

6     427. On February 12, 2013, defendant SUMPTER, using coded
7 language in a telephone conversation, told defendant MARTINEZ to
8 collect money from defendant ANTROINE TYARS SR.

9     428. On February 13, 2013, defendant JUAN TYARS, using
10 coded language in a telephone conversation, first ordered a
11 half-ounce of crack cocaine for $500 from defendant MARTINEZ,
12 but then changed his request to seven grams of crack cocaine for
13 $225.

14     429. On February 13, 2013, defendant HALL, using coded
15 language in a telephone conversation, told defendant MARTINEZ
16 that defendant BARNETT owed defendants MARTINEZ and HALL $225 in
17 drug proceeds.

18     430. On February 13, 2013, defendant DODDS, using coded
19 language in a telephone conversation, ordered 63 grams of crack
20 cocaine for $1,850 from defendant MARTINEZ; and defendant
21 MARTINEZ indicated that defendant DODDS still owed defendant
22 MARTINEZ money from defendant DODDS' last purchase of 63 grams
23 of crack cocaine.

24     431. On February 13, 2013, defendant MARTINEZ, using coded
25 language in a telephone conversation, instructed defendant HALL
26 to prepare seven grams of crack cocaine at the drug stash
27 location.

28

1      432. On February 13, 2013, defendant DODDS, using coded

2   language in a text message, asked defendant MARTINEZ whether law

3   enforcement was present in Broadway Crips' territory.

4      433. On February 13, 2013, defendants MARTINEZ and HALL,

5   using coded language in a telephone conversation, discussed the

6   following: that defendants HALL and BARNETT owed defendant

7   MARTINEZ $785 and $225 in drug proceeds, respectively; that

8   defendant MINNIEFIELD purchased seven grams of crack cocaine and

9   stated he had paid defendant SUMPTER for the crack cocaine; and

10  how to better package their drugs to increase their profit.

11     434. On February 14, 2013, defendant PETE, using coded

12  language in a telephone conversation, informed defendant

13  MARTINEZ that defendant PETE and other Broadway Crips members,

14  including defendant PEREZ, had seen a rival gang member at the

15  Slauson Swap Meet, and defendant MARTINEZ responded by telling

16  defendant PETE that defendant MARTINEZ had intended to give the

17  group a firearm to use to attack the rival gang member.

18     435. On February 14, 2013, defendant MARTINEZ, using coded

19  language in a telephone conversation, ordered 14 grams of crack

20  cocaine from defendant RILEY.

21     436. On February 14, 2013, defendant RICHARDS, using coded

22  language in a telephone conversation, ordered $50 worth of crack

23  cocaine from defendant MARTINEZ.

24     437. On February 14, 2013, defendant WHETSTONE, using coded

25  language in a telephone conversation, told defendant MARTINEZ

26  that the drug supply defendant WHETSTONE had received was short;

27  and defendant MARTINEZ stated that the scale was malfunctioning

28

1  and that he would take care of defendant WHETSTONE on the next
2  drug order.
3      438. On February 14, 1013, defendants MARTINEZ and TYRELL
4  THOMAS SR., using coded language in a telephone conversation,
5  discussed the collection of money for A.S.'s funeral, and
6  defendant MARTINEZ said that defendant WOOLEY would contribute
7  his portion.
8      439. On February 14, 2013, defendants MARTINEZ and TYRELL
9  THOMAS SR., using coded language in a telephone conversation,
10  discussed whether defendant CAMPBELL could use the gang's cash
11  fund to obtain a funeral escort for the funeral of A.S.
12      440. On February 14, 2013, defendant HALL, using coded
13  language in a telephone conversation, informed defendant
14  MARTINEZ that defendant HALL possessed seven grams of crack
15  cocaine at the drug stash location and owed $675 in drug
16  proceeds.
17      441. On February 14, 2013, defendant MARTINEZ, using coded
18  language in a telephone conversation, informed defendant SUMPTER
19  that defendant BARNETT had recently been arrested with crack
20  cocaine.
21      442. On February 14, 2013, defendant MARTINEZ, using coded
22  language in a telephone conversation, advised defendant TYRONE
23  TYARS that defendant MARTINEZ was traveling in a vehicle while
24  armed with a firearm.
25      443. On February 26, 2013, defendant PEREZ, in the Broadway
26  Crips' downtown drug sales area, sold crack cocaine to a UC.
27
28

444. On February 28, 2013, co-conspirator Burton, using coded language in a telephone conversation, ordered seven grams of crack cocaine from defendant SUMPTER.

445. On February 28, 2013, defendant INGRAM, using coded language in a telephone conversation, ordered 14 grams of crack cocaine from defendant SUMPTER.

446. On February 28, 2013, defendant SUMPTER, using coded language in a telephone conversation, told defendant RILEY that defendant RILEY owed defendant SUMPTER drug proceeds from a previous delivery and instructed defendant RILEY to deliver drugs to one of defendant SUMPTER's customers.

447. On February 28, 2013, defendants SUMPTER and WEST, using coded language in a telephone conversation, discussed defendant WEST's payment of $200 for a drug transaction.

448. On February 28, 2013, defendant WHETSTONE, using coded language in a telephone conversation, told defendant SUMPTER that someone had come to purchase crack cocaine and to have the drugs brought over quickly.

449. On March 1, 2013, defendant INGRAM, using coded language in a telephone conversation, ordered 14 grams of crack cocaine from defendant SUMPTER.

450. On March 1, 2013, defendant HOUSTON, using coded language in a telephone conversation, ordered seven grams of crack cocaine from defendant SUMPTER and asked defendant SUMPTER to bring the crack cocaine to defendant HOUSTON's residence because he had on an electronic monitoring bracelet.

1    451. On March 1, 2013, defendant SUMPTER, using coded
2  language in a telephone conversation, told defendant MARTINEZ to
3  collect money from defendant ANTROINE TYARS SR.

4    452. On March 1, 2013, defendant MARTINEZ, using coded
5  language in a telephone conversation, advised defendant
6  WHETSTONE that "a soda" was 3.5 grams of crack cocaine and that
7  defendant RILEY was on his way to deliver 3.5 grams of crack
8  cocaine; and defendant WHETSTONE stated that he had $450 in drug
9  proceeds.

10    453. On March 1, 2013, defendant MARTINEZ, using coded
11 language in a text conversation, stated that he was cooking
12 crack cocaine.

13    454. On March 1, 2013, defendant MARTINEZ, using coded
14 language in a telephone conversation, explained that he only
15 sold codeine syrup by the 16-ounce bottle, that it cost $800 per
16 bottle, and that he usually shipped the codeine syrup out of
17 town.

18    455. On March 1, 2013, defendant SUMPTER, using coded
19 language in a telephone conversation, instructed defendant RILEY
20 to transport a gun to defendant SUMPTER.

21    456. On March 1, 2013, defendant MARTINEZ, using coded
22 language in a telephone conversation, ordered codeine syrup for
23 re-distribution.

24    457. On March 1, 2013, defendant MARTINEZ, using coded
25 language in a telephone conversation, asked defendant RILEY
26 whether defendant RILEY had drugs available to deliver to one of
27 defendant MARTINEZ's customers, and defendant RILEY responded by
28 stating that he had nothing else available and suggested that

1  defendant MARTINEZ go to a stash house to see if there were
2  drugs available there.

3      458. On March 1, 2013, defendant SUMPTER and an unknown
4  female, using coded language in a telephone conversation,
5  discussed the following: how defendant SUMPTER was safe to walk
6  "in [his] own hood"; that defendant SUMPTER should not talk on
7  his phone too much; the police activity in Broadway Crips'
8  territory; that 60th Street and Broadway was ECC territory; and
9  that defendant HOUSTON ordered seven grams of crack cocaine from
10  defendant SUMPTER.

11      459. On March 1, 2013, defendant WEST, using coded language
12  in a telephone conversation, told defendant SUMPTER he had paid
13  defendant SUMPTER $540; defendant SUMPTER told defendant WEST
14  that he was sending defendant RILEY over to sell drugs to
15  defendant WEST for $220; and defendant WEST stated he now owed
16  defendant SUMPTER $150.

17      460. On March 1, 2013, defendant MARTINEZ, using coded
18  language in a telephone conversation, told defendant WHETSTONE
19  that defendant RILEY was not answering his phone and defendant
20  MARTINEZ only had 3.5 grams of crack cocaine.

21      461. On March 2, 2013, defendant MARTINEZ, using coded
22  language in a telephone conversation, asked defendant RILEY to
23  deliver seven grams of crack cocaine to defendant MARTINEZ.

24      462. On March 2, 2013, defendant MARTINEZ, using coded
25  language in a telephone conversation, asked defendant RILEY to
26  deliver 56.6 grams of crack cocaine to defendant MARTINEZ.

27      463. On March 2, 2013, defendant MARTINEZ, using coded
28  language in a telephone conversation, told co-conspirator Burton

that co-conspirator Burton owed defendant MARTINEZ a total of $450 in drug proceeds.

464. On March 2, 2013, co-conspirator Burton, using coded language in a telephone conversation, ordered at least seven grams of crack cocaine from defendant SUMPTER.

465. On March 3, 2013, defendants SUMPTER and MARSHALL, using coded language in a telephone conversation, arranged a cocaine transaction.

466. On March 3, 2013, defendant MARTINEZ, using coded language in a telephone conversation, asked defendant RILEY to deliver 17.5 grams of crack cocaine to defendant WHETSTONE.

467. On March 3, 2013, defendant SUMPTER, using coded language in a telephone conversation, instructed defendant RILEY to deliver 28.3 grams of crack cocaine to defendant SUMPTER.

468. On March 3, 2013, defendant MARSHALL, using coded language in a telephone conversation, placed an order of crack cocaine with defendant SUMPTER for the same quantity as defendant MARSHALL had purchased the previous day.

469. On March 3, 2013, defendant SUMPTER and an unindicted co-conspirator, using coded language in a telephone conversation, negotiated a drug transaction; and the unindicted co-conspirator told defendant SUMPTER that he had previously purchased quality drugs from defendant WOOLEY.

470. On March 3, 2013, defendant INGRAM, using coded language in a telephone conversation, ordered seven grams of crack cocaine from defendant SUMPTER.

471. On March 3, 2013, defendant HEARD, using coded language in a telephone conversation, ordered eight grams of marijuana from defendant SUMPTER.

472. On March 3, 2013, defendant HOUSTON, using coded language in a telephone conversation, ordered 14 grams of crack cocaine from defendant SUMPTER.

473. On March 4, 2013, defendant WEST, using coded language in a telephone conversation, ordered 28 grams of crack cocaine for $900 from defendant SUMPTER, and defendant WEST told defendant SUMPTER that he owed defendant SUMPTER $550 from a previous drug transaction.

474. On March 4, 2013, defendant INGRAM, using coded language in a telephone conversation, ordered seven grams of crack cocaine from defendant SUMPTER.

475. On March 4, 2013, defendant SUMPTER, using coded language in a telephone conversation, told defendant RILEY to bring an ounce of crack cocaine to defendant SUMPTER.

476. On March 4, 2013, defendant PITTS, using coded language in a telephone conversation, greeted defendant MARTINEZ with "Wayz up Rider" and told defendant MARTINEZ that he was checking on the "inventory" of prescription medication defendant MARTINEZ wanted to purchase.

477. On March 4, 2013, defendant WOOLEY, using coded language in a text message, told defendant SUMPTER that defendant WOOLEY had to get some drugs to sell for the next day.

478. On March 4, 2013, defendants SUMPTER and ANTROINE TYARS SR., using coded language in a telephone conversation,

98

discussed $300 that defendant ANTROINE TYARS SR. owed to defendant SUMPTER.

479. On March 4, 2013, defendants MARTINEZ and MARSHALL, using coded language in a telephone conversation, discussed that defendant MARSHALL was coming to pick up crack cocaine.

480. On March 4, 2013, defendant MINNIEFIELD, using coded language in a telephone conversation, told defendant SUMPTER to have the younger Broadways Crips members be on the lookout for a green car that was being driven around Broadway Crips' territory by individuals claiming to be from the Hoovers gang.

481. On March 5, 2013, defendant MINNIEFIELD, using coded language in a telephone conversation, told defendant SUMPTER that members of the Playboys gang wrote graffiti on a house in Broadway Crips' territory and that defendant SUMPTER should tell other Broadway Crips members not to retaliate because the gang did not need problems and the Broadway Crips currently enjoyed a neutral relationship with the Playboys.

482. On March 5, 2013, defendant SUMPTER, using coded language in a telephone conversation, told defendant RILEY to bring seven grams of crack cocaine to defendant MINNIEFIELD.

483. On March 5, 2013, defendant SUMPTER, using coded language in a telephone conversation, instructed defendant HEARD to provide a fellow Broadways Crips member with 14 grams of crack cocaine.

484. On March 5, 2013, defendant HOGAN, using coded language in a telephone conversation, offered to sell defendant MARTINEZ a gun with five ammunition clips for $700; and

1   defendant MARTINEZ stated he wanted the gun, but wanted to pay
2   $350 for it.
3       485. On March 5, 2013, defendant SUMPTER, using coded
4   language in a telephone conversation, told defendant WHETSTONE
5   that a drug customer would be coming to purchase a "half."
6       486. On March 5, 2013, defendants MARTINEZ and MARSHALL,
7   using coded language in a telephone conversation, discussed
8   defendant MARSHALL's purchase of the same amount of crack
9   cocaine as the day before, plus an extra seven grams, and
10  defendant MARSHALL asked how much defendant SUMPTER would charge
11  for the extra amount of crack cocaine.
12      487. On March 5, 2013, defendant MINNIEFIELD, using coded
13  language in a telephone conversation, ordered seven grams of
14  crack cocaine from defendant SUMPTER.
15      488. On March 6, 2013, defendant MARSHALL, using coded
16  language in a telephone conversation, ordered 21 grams of crack
17  cocaine from defendant SUMPTER, who obtained the crack cocaine
18  from co-conspirator Sanchez.
19      489. On March 6, 2013, defendants MARTINEZ and MARSHALL,
20  and an unidentified Broadway Crips member, using coded language
21  in a telephone conversation, discussed plans for the gang's Hood
22  Day, and defendant MARTINEZ agreed the park would be the best
23  place to hold the event because it would throw off the police.
24      490. On March 6, 2013, defendant HEARD, using coded
25  language in a telephone conversation, advised defendant MARTINEZ
26  that defendant HEARD would deliver drug proceeds that night.
27
28

491. On March 6, 2013, defendant SUMPTER, using coded language in a telephone conversation, ordered cocaine from defendant LEGGETT.

492. On March 6, 2013, defendant SUMPTER, using coded language in a telephone conversation, asked defendant RILEY to deliver an ounce of crack cocaine and a phone to defendant SUMPTER.

493. On March 6, 2013, defendant MARTINEZ, using coded language in a telephone conversation, told an unidentified Broadways Crips member that the gang needed to have a mandatory meeting at which every member would have to contribute money for Hood Day.

494. On March 7, 2013, defendant MARTINEZ, using coded language in a telephone conversation, instructed defendant RILEY to deliver 14 grams of crack cocaine to defendant WHETSTONE.

495. On March 7, 2013, defendant MARTINEZ, using coded language in a telephone conversation, told defendant WHETSTONE that he owed defendant MARTINEZ for drugs.

496. On March 7, 2013, defendants SUMPTER and MARSHALL, using coded language in a telephone conversation, discussed the quality of crack cocaine that defendant MARSHALL had purchased the day before, and defendant MARSHALL ordered additional crack cocaine from defendant SUMPTER.

497. On March 7, 2013, defendant WOOLEY, using coded language in a text conversation, told defendant SUMPTER that defendant WOOLEY had $150 in addition to what defendant WOOLEY already had; that defendant RILEY owed defendant WOOLEY $300;

101

1  and that defendants SUMPTER and WOOLEY would have had $1,200

2  each, but defendant WOOLEY purchased more drugs.

3      498. On March 7, 2013, defendants SUMPTER and RILEY, using

4  coded language in a telephone conversation, discussed the fact

5  that defendant RILEY needed to go to defendant WOOLEY's location

6  to collect $225 in drug proceeds.

7      499. On March 8, 2013, defendants SUMPTER and WHETSTONE,

8  using coded language in a telephone conversation, discussed

9  defendant WHETSTONE's payment of drug proceeds and that

10  defendant HEARD received $50 of the drug proceeds.

11      500. On March 8, 2013, defendant BABB, while incarcerated

12  and using coded language in a telephone conversation, discussed

13  Broadway Crips gang business with defendant SUMPTER.

14      501. On March 8, 2013, defendant GOLDSTON, using coded

15  language in a telephone conversation, informed defendant

16  MARTINEZ that defendant GOLDSTON had secured their crack

17  cocaine.

18      502. On March 8, 2013, defendant WOOLEY, using coded

19  language in a text conversation, told defendant SUMPTER that

20  defendant SUMPTER should receive the remaining money due by

21  today and that defendant WOOLEY would provide the remaining

22  money when defendant WOOLEY received it.

23      503. On March 9, 2013, defendant WHETSTONE, using coded

24  language in a telephone conversation, asked defendant MARTINEZ

25  about the whereabouts of defendant SUMPTER and stated that he

26  would provide "three" to defendant HEARD.

27      504. On March 9, 2013, defendant WEST, using coded language

28  in a telephone conversation, asked defendant SUMPTER if

1  defendant RILEY was available to conduct a drug transaction;

2  defendant WEST requested to purchase crack cocaine for $1,000

3  from defendant SUMPTER but stated he was short $150; and

4  defendant SUMPTER agreed to sell the crack cocaine to defendant

5  WEST and stated that defendant RILEY was on his way to meet

6  defendant WEST.

7       505. On March 10, 2013, co-conspirator Burton, using coded

8  language in a telephone conversation, ordered 14 grams of crack

9  cocaine from defendant SUMPTER.

10      506. On March 10, 2013, defendant SUMPTER, using coded

11  language in a telephone conversation, talked to co-conspirator

12  Sanchez about a large shipment of stolen television sets that

13  defendant SUMPTER needed help selling, and co-conspirator

14  Sanchez responded by asking defendant SUMPTER for the sets'

15  model numbers.

16      507. On March 10, 2013, defendant SUMPTER, using coded

17  language in a telephone conversation, asked defendant WHETSTONE

18  to provide 3.5 grams of crack cocaine to defendant MINNIEFIELD.

19      508. On March 10, 2013, defendant WHETSTONE, using coded

20  language in a telephone conversation, told defendant MARTINEZ

21  that defendant SUMPTER was on his way to re-supply their drug

22  stash location.

23      509. On March 10, 2013, defendant SUMPTER, using coded

24  language in a telephone conversation, told defendant WHETSTONE

25  to give "a gram" of crack cocaine to a drug customer.

26      510. On March 11, 2013, defendant KOONCE, using coded

27  language in a telephone conversation, told defendant MARTINEZ

28  that defendant TYRONE TYARS was chased down by ECC members; and

defendant MARTINEZ told defendant KOONCE to tell defendant
TYRONE TYARS to obtain a gun and find these rival gang members.

511. On March 11, 2013, defendant MINNIEFIELD, using coded
language in a telephone conversation, asked defendant SUMPTER to
provide him with crack cocaine.

512. On March 11, 2013, defendant WHETSTONE, using coded
language in a telephone conversation, told defendant SUMPTER
that he did not have enough crack cocaine to supply defendant
MINNIEFIELD because he did not have the 3.5 grams' that defendant
MINNIEFIELD wanted.

513. On March 11, 2013, defendant SUMPTER, using coded
language in a telephone conversation, asked defendant RILEY to
supply defendant MINNIEFIELD with 3.5 grams of crack cocaine.

514. On March 11, 2013, defendant SUMPTER, using coded
language in a telephone conversation, told defendant RILEY to
re-supply defendant WEST with drugs.

515. On March 11, 2013, defendant MARTINEZ, using coded
language in a telephone conversation, ordered crack cocaine from
defendant ANTROINE TYARS SR.

516. On March 11, 2013, defendant MARTINEZ, using coded
language in a telephone conversation, instructed defendant RILEY
to deliver 21 grams of crack cocaine to defendant MARTINEZ.

517. On March 11, 2013, co-conspirator Burton, using coded
language in a telephone conversation, ordered $600 worth of
drugs from defendant SUMPTER.

518. On March 11, 2013, defendants MARTINEZ and MARSHALL,
using coded language in a telephone conversation, discussed

1  having a mandatory meeting for Broadway Crips members at which
2  members would have to contribute money.

3      519. On March 12, 2013, defendant MARTINEZ, using coded
4  language in a telephone conversation, discussed the mandatory
5  gang meeting being called by defendant TYRELL THOMAS SR. for the
6  purpose of collecting money and finding a location for Hood Day.

7      520. On March 12, 2013, defendants CHARLES SMITH and
8  JACKSON, armed with a silver revolver, followed victim K.H., an
9  Asian female, from the BBCN Bank in Torrance, California, to
10 K.H.'s home, put a gun to her head, and robbed her of $2,500
11 that she had just withdrawn from the bank and a total of
12 approximately $7,000 worth of cash and personal items.

13     521. On March 12, 2013, co-conspirator Sanchez, using coded
14 language in a telephone conversation, in response to co-
15 conspirator Sanchez's recent police encounter, instructed
16 defendant SUMPTER to not call co-conspirator Sanchez at that
17 phone number and to erase co-conspirator Sanchez's number from
18 defendant SUMPTER's records.

19     522. On March 13, 2013, defendant HEARD, using coded
20 language in a telephone conversation, ordered one ounce of crack
21 cocaine from defendant MARTINEZ.

22     523. On March 13, 2013, defendant SUMPTER, using coded
23 language in a telephone conversation, instructed defendant RILEY
24 to deliver 3.5 grams of crack cocaine to defendant WHETSTONE.

25     524. On March 14, 2013, defendant WEST, using coded
26 language in a telephone conversation, asked defendant SUMPTER to
27 send defendant RILEY to re-supply defendant WEST with drugs;
28 defendant WEST told defendant SUMPTER that he could pay

1   defendant SUMPTER $400 and would pay the remaining amount later;

2   and defendant SUMPTER stated that defendant RILEY was en route

3   to defendant WEST.

4        525. On March 14, 2013, defendant PITTS, using coded

5   language in a telephone conversation, offered to sell defendant

6   MARTINEZ 120 pills of ecstasy for $1,200, but defendant MARTINEZ

7   stated he needed 1,000 ecstasy pills; and defendant PITTS also

8   stated that he received eight bottles of codeine syrup a week

9   and that he sold each bottle for $475.

10        526. On March 14, 2013, defendant MARTINEZ, using coded

11   language in a telephone conversation, told defendant SUMPTER

12   that defendant PITTS offered to sell 120 ecstasy pills for

13   $1,200; and defendant SUMPTER agreed that defendants MARTINEZ

14   and SUMPTER should purchase them.

15        527. On March 14, 2013, defendant SUMPTER, using coded

16   language in a telephone conversation, told a drug customer that

17   defendant SUMPTER did not have any crack cocaine for sale and to

18   go to defendant ANTROINE TYARS SR. to purchase crack cocaine.

19        528. On March 15, 2013, an unknown male who had engaged in

20   a confrontation with defendants WASHINGTON, BARNETT, and

21   GRIMBLE, using coded language in a telephone conversation,

22   informed defendant MARTINEZ that he would not disrespect the

23   Broadway Crips gang; and defendant MARTINEZ stated that he would

24   arrange for the three Broadway Crips members to physically fight

25   the unknown male to resolve the dispute.

26        529. On March 15, 2013, defendant MARTINEZ, using coded

27   language in a telephone conversation, told defendant KEATON that

28   defendant MARTINEZ's nephew, a member of the Harlem Crips gang,

1  got into a fight with defendant WASHINGTON; and defendant
2  MARTINEZ told defendant KEATON that defendant MARTINEZ's nephew
3  said he would not disrespect the Broadway Crips because of
4  defendant MARTINEZ's status in the gang.

5      530. On March 15, 2013, defendants MARTINEZ and KEATON,
6  using coded language in a telephone conversation, discussed a
7  meeting of the Broadway Crips, and defendant MARTINEZ told
8  defendant KEATON that they would collect $52 from each member
9  present at the meeting.

10     531. On March 15, 2013, defendant WOOLEY, using coded
11  language in a telephone conversation, asked defendant SUMPTER if
12  he wanted to purchase more codeine syrup and offered to supply
13  more to defendant SUMPTER.

14     532. On March 16, 2013, defendants MARTINEZ and KEATON,
15  using coded language in a telephone conversation, discussed
16  collecting money every weekend from Broadway Crips members for
17  Hood Day; and defendant KEATON told defendant MARTINEZ that
18  defendant TYRELL THOMAS SR. wants "to be on point for this one."

19     533. On March 16, 2013, defendant INGRAM, using coded
20  language in a telephone conversation, ordered seven grams of
21  crack cocaine from defendant SUMPTER.

22     534. On March 16, 2013, defendants MARTINEZ and WASHINGTON,
23  using coded language in a telephone conversation, discussed a
24  Broadway Crips gang meeting being held on March 16, 2013.

25     535. On March 16, 2013, defendants SUMPTER and MARSHALL,
26  using coded language in a telephone conversation, discussed
27  cooking crack cocaine and attending a meeting of Broadway Crips
28  members in Broadway Crips' territory.

536. On March 18, 2013, defendant WEST, using coded language in a telephone conversation, complained to defendant SUMPTER about the quality of the crack cocaine he received; and defendant SUMPTER told defendant WEST that defendant ANTROINE TYARS SR. had made the crack cocaine and stated that defendant SUMPTER would fix the problem.

537. On March 18, 2013, defendant MARTINEZ, using coded language in a telephone conversation, told defendant KEATON that defendant MARTINEZ was going to initiate a new female into the Broadway Crips.

538. On March 13, 2013, defendant MARTINEZ, using coded language in a telephone conversation, asked defendant ANTROINE TYARS SR. if defendant ANTROINE TYARS SR. could re-supply him with crack cocaine.

539. On March 18, 2013, defendant SUMPTER, using coded language in a telephone conversation, told defendant WEST that defendant WHETSTONE brought the wrong drug order and that defendant ANTROINE TYARS SR. would provide drugs to defendant WEST.

540. On March 18, 2013, defendant SUMPTER, using coded language in a telephone conversation, told defendant WEST that defendant SUMPTER would check if defendant ANTROINE TYARS SR. would be available to sell crack cocaine.

541. On March 18, 2013, defendants MARTINEZ and TYRELL THOMAS SR., using coded language in a telephone conversation, discussed the following:  making venue reservations and other plans for Hood Day; collecting gang funds from defendant CAMPBELL; using gang funds to bail out a Broadway Crips member

1 | from jail; collecting gang funds from OGs; that every Broadway
2 | Crips member was supposed to contribute $52 to the gang fund;
3 | and that the OGs intended to match the younger members'
4 | contribution to the gang fund.

5 |     542. On March 18, 2013, defendants MARTINEZ and MARSHALL,
6 | using coded language in a telephone conversation, discussed the
7 | collection of money from gang members for Hood Day; and
8 | defendant MARTINEZ stated that defendant TYRELL THOMAS SR. had
9 | already collected the money for the event.

10 |     543. On March 18, 2013, defendant MARSHALL, using coded
11 | language in a telephone conversation, told defendant MARTINEZ
12 | that defendant MARTINEZ needed to focus on being a leader in the
13 | Broadway Crips and to put business over pleasure.

14 |     544. On March 18, 2013, defendant MARTINEZ, using coded
15 | language in a telephone conversation, told defendant ANTROINE
16 | TYARS SR. that defendant BROWNLEE would be arriving to pick up
17 | drugs from defendant ANTROINE TYARS SR.

18 |     545. On March 18, 2013, defendants MARTINEZ and MARSHALL,
19 | using coded language in a telephone conversation, discussed a
20 | recent Broadway Crips gang meeting held to determine a location
21 | for Hood Day; and defendant MARSHALL relayed that defendant
22 | WOOLEY and other gang members said to take or pay for the other
23 | park.

24 |     546. On March 18, 2013, defendant WEST, using coded
25 | language in a telephone conversation, asked defendant SUMPTER if
26 | defendant RILEY was available to re-supply defendant WEST with
27 | drugs; and defendant SUMPTER stated that defendant RILEY was

28 |

1  unavailable, but that defendant SUMPTER would send defendant
2  WHETSTONE over to defendant WEST's location.

3       547. On March 19, 2013, defendant WOOLEY, using coded
4  language in a text message, told defendant SUMPTER that
5  defendant WOOLEY had $468 in drug proceeds for defendant
6  SUMPTER.

7       548. On March 19, 2013, defendant SUMPTER, using coded
8  language in a telephone conversation, informed a drug customer
9  that the customer could purchase crack cocaine from defendant
10 ANTROINE TYARS SR. for $220.

11      549. On March 20, 2013, defendant MARTINEZ, using coded
12 language in a telephone conversation, directed an unindicted co-
13 conspirator to meet with defendant KEATON to purchase crack
14 cocaine.

15      550. On March 20, 2013, defendant MARTINEZ, using coded
16 language in a telephone conversation, asked defendant ANTROINE
17 TYARS SR. about his supply of crack cocaine, and defendant
18 ANTROINE TYARS SR. replied that had "two whole ones."

19      551. On March 20, 2013, defendant MARTINEZ, using coded
20 language in a telephone conversation, told defendant WHETSTONE
21 to pick up crack cocaine from defendant ANTROINE TYARS SR. and
22 to give it to defendant KEATON.

23      552. On March 20, 2013, defendants MARTINEZ and KEATON,
24 using coded language in a telephone conversation, discussed drug
25 activity; and defendant KEATON told defendant MARTINEZ to give
26 defendant KEATON's phone number to other gang members, including
27 defendants TYRONE TYARS and GRIMBLE, so they could call
28 defendant KEATON directly for drugs.

1     553. On March 20, 2013, defendant WHETSTONE, using coded
2   language in a telephone conversation, ordered crack cocaine from
3   defendant MARTINEZ.

4     554. On March 21, 2013, defendant KEATON, using coded
5   language in a telephone conversation, told defendant MARTINEZ
6   that he had four grams of crack cocaine and that he would leave
7   this crack cocaine with defendant KOONCE.

8     555. On March 21, 2013, defendant MARTINEZ, using coded
9   language in a telephone conversation, instructed defendant
10  CAMPBELL to bring $260 for Hood Day and to meet with defendant
11  TYRELL THOMAS SR.

12    556. On March 21, 2013, defendant JUAN TYARS, using coded
13  language in a telephone conversation, discussed with defendant
14  MARTINEZ calling the sister of defendant MARTINEZ, so defendant
15  JUAN TYARS could retrieve defendant DODDS's drugs and bail out
16  defendant DODDS; and defendant JUAN TYARS stated he wanted to
17  obtain money for a lawyer for defendant DODDS.

18    557. On March 21, 2013, defendant MARTINEZ, using coded
19  language in a telephone conversation, discussed with his sister
20  that defendant JUAN TYARS was going to pick up drugs at the home
21  of defendant DODDS.

22    558. On March 21, 2013, co-conspirator Burton, using coded
23  language in a telephone conversation, ordered 10.5 grams of
24  crack cocaine from defendant SUMPTER.

25    559. On March 22, 2013, defendant HEARD, using coded
26  language in a telephone conversation, asked defendant MARTINEZ
27  when defendant ANTROINE TYARS SR. would be arriving to deliver
28

1  drugs; and defendant MARTINEZ said defendant ANTROINE TYARS SR.

2  would be arriving shortly.

3      560. On March 22, 2013, defendants KEATON and RICHARDS,

4  using coded language in a telephone conversation, discussed

5  where to hide their drugs with defendant MARTINEZ.

6      561. On March 22, 2013, defendants MARTINEZ and SUMPTER,

7  using coded language in a telephone conversation, discussed

8  their supply of crack cocaine with defendant ANTROINE TYARS SR.

9      562. On March 22, 2013, defendants MARTINEZ, KEATON, and

10  WHETSTONE, using coded language in a telephone conversation,

11  discussed defendant KEATON's purchase of crack cocaine to be

12  supplied by defendant ANTROINE TYARS SR. and picked up by

13  defendant WHETSTONE.

14      563. On March 22, 2013, defendant MARTINEZ, using coded

15  language in a telephone conversation, instructed a female in

16  Broadway Crips' territory to not drive slowly through Broadway

17  Crips' territory because her car might get shot up by Broadway

18  Crips members who might mistake her as an associate with a rival

19  gang.

20      564. On March 22, 2013, defendant MARTINEZ, using coded

21  language in a telephone conversation, told defendant KEATON that

22  a customer wanted a half-ounce of crack cocaine, and defendant

23  KEATON told defendant MARTINEZ that he had enough crack cocaine

24  to supply this customer.

25      565. On March 22, 2013, defendant KEATON, using coded

26  language in a telephone conversation, told defendant MARTINEZ

27  that defendant KOONCE sold 1.5 or 2 grams of crack cocaine and

28  that defendant KOONCE had $100 and defendant KEATON had $500.

566. On March 22, 2013, defendant HEARD, using coded language in a telephone conversation, asked defendant MARTINEZ if defendant MARTINEZ could supply crack cocaine to defendant HEARD and take payment for it the next day (aka "fronting" the drugs), instead of an arrangement in which defendant HEARD obtained crack cocaine from defendant SUMPTER because defendant SUMPTER required immediate payment; and MARTINEZ agreed to front defendant HEARD the requested crack cocaine.

567. On March 22, 2013, defendant MARTINEZ, using coded language in a telephone conversation, instructed defendant KEATON to supply crack cocaine to defendant HEARD.

568. On March 22, 2013, defendant KEATON, using coded language in a telephone conversation, told defendant MARTINEZ to bring him "another one"; defendant KEATON then passed the phone to defendant WHETSTONE, and defendant MARTINEZ told defendant WHETSTONE to pick up crack cocaine from defendant ANTROINE TYARS SR. and give it to defendant KEATON.

569. On March 23, 2013, defendant MARTINEZ, using coded language in a telephone conversation, ordered three 3.5-gram quantities of crack cocaine from defendant KEATON and told defendant KEATON that the customer was on his way.

570. On March 23, 2013, defendant MARTINEZ, using coded language in a telephone conversation, asked defendant BELLINGER to hold a quantity of crack cocaine for defendants MARTINEZ and KEATON.

571. On March 23, 2013, co-conspirator Burton, using coded language in a telephone conversation, ordered 9.5 grams of crack cocaine from defendant MARTINEZ.

572. On March 23, 2013, defendant MARTINEZ, using coded language in a telephone conversation, told defendant KEATON to have defendant WHETSTONE bring defendant MARTINEZ seven grams of crack cocaine.

573. On March 24, 2013, defendant SUMPTER, using coded language in a telephone conversation, told defendant KEATON that he was sending a drug customer to defendant KEATON to purchase seven grams of crack cocaine.

574. On March 24, 2013, defendants MARTINEZ and KEATON, using coded language in a telephone conversation, discussed their supply of crack cocaine and providing crack cocaine to various individuals, including defendants SUMPTER and AMOS; and defendant KEATON told defendant MARTINEZ that he might have defendant KOONCE run one of the gang's drug stash houses for the night.

575. On March 24, 2013, defendant DODDS, calling from jail and using coded language in a telephone conversation, discussed with defendant MARTINEZ a drug transaction that defendant SUMPTER conducted on behalf of defendant DODDS; and defendant DODDS also requested that defendant MARTINEZ call defendant JUAN TYARS to get money for a lawyer for defendant DODDS.

576. On March 24, 2013, defendants MARTINEZ and HEARD, using coded language in a telephone conversation, discussed the quality of crack cocaine they were selling.

577. On March 24, 2013, defendant KEITH, in the Broadway Crips' downtown drug sales area, distributed and possessed crack cocaine for sale.

114

578. On March 25, 2013, defendant MARTINEZ, using coded language in a telephone conversation, stated that defendant KEATON was handling one of the gang's drug stash houses at defendant MARTINEZ's instruction.

579. On March 25, 2013, defendants MARTINEZ and KEATON, using coded language in a telephone conversation, discussed defendant MINNIEFIELD's purchase of seven grams of crack cocaine.

580. On March 25, 2013, defendant SUMPTER, using coded language in a telephone conversation, asked defendant KEATON to have defendant WHETSTONE bring defendant SUMPTER seven grams of crack cocaine.

581. On March 25, 2013, defendant MARTINEZ, using coded language in a telephone conversation, discussed the arrangements for Hood Day with defendant WOOLEY.

582. On March 25, 2013, defendants SUMPTER and WOOLEY, using coded language in a telephone conversation, discussed one of defendant SUMPTER's drug suppliers.

583. On March 26, 2013, co-conspirator Burton, using coded language in a telephone conversation, ordered 10.5 grams of crack cocaine from defendant SUMPTER.

584. On March 26, 2013, defendant MARTINEZ, using coded language in a telephone conversation, asked defendant ANTROINE TYARS SR. to prepare 10.5 grams of crack cocaine for sale.

585. On March 27, 2013, defendant HOGAN, in his residence, located at 122 W. 58th Street in Broadway Crips' territory, possessed approximately 6.38 grams of crack cocaine for sale.

1   586. On March 27, 2013, defendant HOUSTON, in his

2   residence, located at 330 W. 54th Street in Broadway Crips'

3   territory, possessed the following drugs for sale:

4   methamphetamine, hydrocodone, diazepam, codeine, and marijuana.

5   587. On March 27, 2013, defendant WEST, in his residence,

6   located at 225 W. 54th Street in Broadway Crips' territory,

7   possessed approximately 2.06 grams of crack cocaine; 2.88 grams

8   of marijuana; a Savage Arms Corp. model 101-22 .22 caliber

9   revolver, bearing serial number 50159; a Winchester model 190

10  .22 caliber semi-automatic rifle with an attached scope, bearing

11  no serial number; a Marlin Firearms Co. Revelation .22 caliber

12  semi-automatic rifle, bearing serial number 72223479; ammunition

13  of various calibers; $865 in cash; a scale with cocaine residue;

14  gang pictures; and prison correspondence.

15  588. On March 27, 2013, defendant ANTROINE TYARS SR., in

16  his residence, located at 143 E. 57th Street in Broadway Crips'

17  territory, possessed a loaded Jennings model J-22 .22 caliber

18  semi-automatic handgun, bearing serial number 1114259.

19  589. On March 27, 2013, defendant SUMPTER, in his

20  residence, located at 228 W. 55th Street in Broadway Crips'

21  territory, at a time when defendant MARTINEZ was present at the

22  residence, possessed approximately 285 grams of marijuana; a

23  Smith & Wesson model 29-2 .44 magnum caliber revolver, bearing

24  serial number N744473, and loaded with hollow point ammunition;

25  a loaded Mossberg 12-gauge shotgun, bearing serial number

26  H416990; additional hollow point and shotgun ammunition; and

27  $2,174 in drug proceeds.

28

116

590. On March 27, 2013, defendants MARTINEZ and JUAN TYARS, using coded language in a telephone conversation, discussed the following: police raids of various Broadway Crips' locations that day; the arrest of defendant SUMPTER; and whether to get new phones due to fear that their current phones had been compromised by law enforcement.

591. On March 27, 2013, defendant RILEY, in his residence, located at 329 1/2 W. 51st Street in Broadway Crips' territory, possessed a Smith & Wesson .44 caliber magnum revolver, bearing serial number N664628, loaded with hollow point ammunition.

592. On March 28, 2013, defendants SUMPTER and WOOLEY, using coded language in a telephone conversation, discussed search warrants executed against various gang locations the previous morning, that is, March 27, 2013.

593. On March 29, 2013, defendants MARTINEZ and THOMAS TYRELL SR. reserved Santa Fe Dam on May 4, 2013 for Hood Day.

594. On April 6, 2013, defendants CHARLES SMITH and PETE, armed with a taser, attacked and robbed victim J.H., an Asian female, of victim J.H.'s property just after victim J.H. withdrew cash from the BBCN Bank in Los Angeles, California, and stole victim J.H.'s purse, cash, debit and credit cards, and sunglasses.

595. On April 15, 2013, defendants PETE and CARTER, in Broadway Crips' territory, sold a handgun for $250 to a CS, and defendant PETE discussed the recent robbery of victim J.H. that he and defendant CHARLES SMITH committed.

596. On April 19, 2013, defendants CHARLES SMITH and PETE, armed with a silver handgun, followed victim H.S., an Asian

male, after victim H.S. withdrew money from the BBCN Bank in Torrance, California, and robbed victim H.S. of the $10,000 victim H.S. had just withdrawn for his business. Defendants CHARLES SMITH and PETE then rammed their vehicle into another vehicle while fleeing the scene.

597. On April 21, 2013, defendant TYRONE TYARS, in Broadway Crips' territory, possessed approximately 7.6 grams of crack cocaine for sale and $1,063 in drug proceeds, and after his arrest, tried to hide the crack cocaine by leaving it in the police car in which he was riding.

598. On April 28, 2013, defendant GOLDSTON and another Broadway Crips member, in Broadway Crips' territory, attacked a security guard with a bottle and a bike and threatened to kill the guard after the guard confronted the two for stealing.

599. On April 30, 2013, defendants CHARLES SMITH and JACKSON surveilled the BBCN Bank in Torrance, California, and attempted to follow victim M.H., an Asian male, from the bank to rob him.

600. On May 2, 2013, defendants CHARLES SMITH and JACKSON, while in possession of binoculars, black gloves, and approximately $1,342 in cash, surveilled the BBCN Bank in Torrance, California for the purpose of following bank customers from the bank and robbing them.

601. On May 2, 2013, at the Broadway Crips' Hood Day event, an incarcerated Broadway Crips member known to the Grand Jury, using coded language in a telephone conversation, made reference to the gang's Hood Day to defendant HARRIS, and defendant HARRIS passed along greetings from defendant SHAW and other Broadway

1  Crips members and stated that defendants HARRIS and AMOS had
2  discussed confronting a suspected informant in the gang.

3      602. On May 24, 2013, defendant JOHNSON, in Broadway Crips'
4  territory, possessed a Beretta model Tomcat semi-automatic
5  handgun, bearing serial number DAA379210, loaded with hollow
6  point ammunition.

7      603. On May 30, 2013, defendant GREGORY GORDON, in Broadway
8  Crips' territory, sold crack cocaine to a CS.

9      604. On July 2, 2013, defendant WASHINGTON, in Broadway
10 Crips' territory, sold crack cocaine to a drug customer.

11     605. On July 15, 2013, defendant CHARLES SMITH and other
12 Broadway Crips members, armed with a silver revolver, followed
13 victim S.K., an Asian male, from the BBCN Bank in Gardena,
14 California, to his home where they robbed him of approximately
15 $850 worth of personal items and his American Express and Visa
16 credit cards.

17     606. On July 24, 2013, defendant MUHAMMAD, in the area of
18 103rd Street in Los Angeles, California, distributed marijuana
19 to another Broadway Crips member.

20     607. On August 5, 2013, defendants CHARLES SMITH, PETE, and
21 JACKSON, driving a vehicle whose true license plate was covered
22 by paper plates, conducted surveillance on bank customers at
23 various Chase Banks in the City of Bell, California.

24     608. On August 16, 2013, defendants CHARLES SMITH,
25 MUHAMMAD, and JACKSON, while armed with a loaded Smith & Wesson
26 .38 caliber silver revolver, bearing serial number 461210, in
27 San Bernardino, California, followed a victim from a BBCN Bank,
28 robbed the victim at gunpoint of his wallet containing an

American Express credit card and two blank checks, and fled from
the police to Broadway Crips' territory.

609. On August 16, 2013, defendant CHARLES SMITH, in his
residence, located at 111 W. 52nd Place in Los Angeles,
California, possessed a ski mask, taser, gloves, foreign
currency, and a phone belonging to a bank customer who had been
the victim of a robbery in Los Angeles.

610. On September 10, 2013, defendant GRIFFIN, in Broadway
Crips' territory, possessed crack cocaine for sale.

611. On September 10, 2013, defendant SWAFFI, in Broadway
Crips' territory, sold cocaine to a drug customer.

612. On September 10, 2013, defendant HALL, in Broadway
Crips' territory, conducted multiple hand-to-hand sales of crack
cocaine.

613. On September 11, 2013, defendant SWAFFI, in Broadway
Crips' territory, sold crack cocaine to a drug customer.

614. On September 12, 2013, defendant BROWNLEE, in Broadway
Crips' territory, sold crack cocaine to a drug customer.

615. On September 19, 2013, defendant SWAFFI, in his
residence, located at 5016 Wall Street in Broadway Crips'
territory, possessed approximately 546 grams of marijuana; a
loaded Colt model Officer's ACP .45 caliber handgun with an
obliterated serial number; a loaded A.A. Arms Inc. model AP9 9mm
caliber handgun, bearing serial number 046328; extra ammunition,
including hollow point bullets; extended ammunition magazines;
$2,580 in drug proceeds; various containers with cocaine
residue; a digital scale; and items to manufacture and
distribute crack cocaine; and defendant SWAFFI attempted to

1  flush evidence down the toilet when approached by police
2  officers.
3      616. On September 21, 2013, defendant CARTER, in Broadway
4  Crips' territory, sold crack cocaine to a drug customer.
5      617. On September 27, 2013, defendant JONES, in Broadway
6  Crips' territory, sold approximately 25.8 grams of crack cocaine
7  for $1,000 to a CS.
8      618. On October 8, 2013, defendant PEREZ, in Broadway
9  Crips' territory, sold crack cocaine to a drug customer.
10     619. On November 26, 2013, defendant JONES, in Broadway
11  Crips' territory, sold approximately 38.5 grams of crack cocaine
12  for $1,500 to a CS.
13     620. On November 27, 2013, defendants SUMPTER, GOLDSTON,
14  and BELLINGER, in a residence, located at 228 W. 55th Street in
15  Broadway Crips' territory, possessed a stolen Smith & Wesson
16  model 686 .357 caliber revolver, bearing serial number BHD0559;
17  a loaded semi-automatic handgun, bearing serial number 02754; a
18  gang book; and gang photos; and defendant GOLDSTON attempted to
19  flee from police officers.
20     621. On December 5, 2013, defendant JONES, in Broadway
21  Crips' territory, possessed approximately 102.2 grams of crack
22  cocaine for sale and $574.
23     622. On December 11, 2013, defendant DASHIELL conducted
24  counter-surveillance to protect his marijuana grow operation
25  that he operated using $11,000 worth of electricity stolen from
26  the Department of Water and Power; and in his residence, located
27  at 847 E. 73rd Street in Broadway Crips' territory, defendant
28

121

1  DASHIELL possessed approximately 20 pounds of marijuana plants

2  and marijuana.

3      623. On January 8, 2014, defendants PETE and MURRLEY, in

4  Broadway Crips' territory, sold crack cocaine to a drug

5  customer.

6      624. On January 14, 2014, defendant HARRIS, in Broadway

7  Crips' territory, provided approximately 13.5 grams of highly

8  pure methamphetamine to a CS and told the CS to pay him later

9  for the methamphetamine.

10     625. On January 15, 2014, defendant HARRIS, in Broadway

11 Crips' territory, sold approximately 10.3 grams of highly pure

12 methamphetamine for $225 to a CS, and defendant HARRIS also

13 collected an additional $250 from the CS for a previous

14 methamphetamine sale to the CS.

15     626. On April 21, 2014, defendant WASHINGTON and another

16 Broadway Crips member, in Broadway Crips' territory, sold two

17 rocks of crack cocaine for $40 to a CS.

18     627. On May 2, 2014, approximately 80 Broadway Crips

19 members and associates, including defendants MARTINEZ, SUMPTER,

20 WOOLEY, PETE, JUAN TYARS, JONES, KEATON, SWAFFI, SORRELLS,

21 GRANVILLE THOMAS, WASHINGTON, HOGAN, BABB, WEBSTER, MURRLEY,

22 CAMPBELL, CARTER, BRYANT, SAUNDERS, COLE, KOONCE, and BROWNLEE,

23 attended the gang's Los Angeles Hood Day in Cheviot Hills,

24 California.

25     628. On May 3, 2014, approximately 40 Broadway Crips

26 members and associates, including defendants SUMPTER, TYRELL

27 THOMAS SR., WOOLEY, BURRELL, and WEST, and Las Vegas members of

28

the gang, attended the gang's Las Vegas Hood Day in Las Vegas, Nevada.

629. On May 14, 2014, defendant CARTER, in Broadway Crips' territory, confronted a victim resident and stated that the victim was in Broadway Crips' territory and that defendant CARTER was going to make the victim move out of the gang's territory. Thereafter, defendant CARTER called over approximately seven additional Broadway Crips members, including defendants MARTINEZ, TYRELL THOMAS SR., JONES, and MURRLEY, to confront the victim, who then fled to his house where his wife and daughter were inside; the Broadway Crips members attempted to gain entry into the victim's residence; and defendant CARTER punched out a window to the residence.

630. On May 28, 2014, defendant MURRLEY, in Broadway Crips' territory, sold crack cocaine to a drug customer.

631. On May 28, 2014, defendant COLLINS, in Broadway Crips' territory, sold crack cocaine to a drug customer.

632. On May 28, 2014, defendant GREGORY GORDON, in Broadway Crips' territory, while defendant SAUNDERS was present, sold crack cocaine to a drug customer.

633. On June 4, 2014, defendant WASHINGTON, in Broadway Crips' territory, sold crack cocaine to a drug customer and told the drug customer "we got whatever you need."

1                    SPECIAL SENTENCING ALLEGATIONS

2       1.   Beginning on a date unknown to the Grand Jury, and

3 continuing to on or about the date of this Indictment, in Los

4 Angeles County, within the Central District of California, and

5 elsewhere, defendants MARTINEZ, HARRIS, SUMPTER, SHAW, TYRELL

6 THOMAS SR., DASHIELL, CHARLES SMITH, KELLY, MARSHALL, WOOLEY,

7 PETE, LEGGETT, PEREZ, JUAN TYARS, HOUSTON, JONES, KEATON,

8 MINNIEFIELD, MUHAMMAD, HALL, BURRELL, SWAFFI, LUCAS, SORRELLS,

9 GRANVILLE THOMAS, WASHINGTON, JACKSON, HOGAN, BARNETT, GRIFFIN,

10 INGRAM, WILLIAMS, HENDERSON, AMOS, BABB, ANTROINE TYARS SR.,

11 ANTROINE TYARS JR., WEBSTER, RILEY, MURRLEY, CAMPBELL, CARTER,

12 COLLINS, GREGORY GORDON, TYRELL THOMAS JR., TYRONE TYARS, WEST,

13 SIMS, BRYANT, DODDS, SAUNDERS, WHETSTONE, JOHNSON, COLE,

14 GOLDSTON, LEE, TONY GORDON, RICHARDS, BRAY, HEARD, MYERS,

15 KOONCE, LAMAR THOMAS, BELLINGER, JAMES, RYAN SMITH, GRIMBLE,

16 KEITH, PITTS, and BROWNLEE, and others known and unknown to the

17 Grand Jury, conspired and agreed with each other to knowingly

18 and intentionally (i) distribute, and (ii) possess with intent

19 to distribute, at least 280 grams of a mixture and substance

20 containing a detectable amount of cocaine base in the form of

21 crack cocaine and at least five kilograms of a mixture and

22 substance containing a detectable amount of cocaine, each a

23 Schedule II narcotic drug controlled substance, in violation of

24 Title 21, United States Code, Sections 846 and 841(b)(1)(A).

25       2.   On or about March 10, 2003, in Los Angeles County,

26 within the Central District of California, defendant SHAW

27 committed the following act chargeable under state law:

28 Defendant SHAW unlawfully and intentionally killed victim L.R.

1  with malice aforethought, in violation of California Penal Code

2  Sections 31 and 187.

3       3.   Beginning no later than on or about October 29, 2012,

4  and continuing to on or about the date of this Indictment, in

5  Los Angeles County, within the Central District of California,

6  defendant MARTINEZ committed the following act chargeable under

7  state law:  Defendant MARTINEZ unlawfully conspired to

8  intentionally kill defendant GRIFFIN and A.S. with malice

9  aforethought, in violation of California Penal Code Sections 182

10  and 187.

COUNT TWO

[18 U.S.C. §§ 1959(a)(1), 2]

1.    At all times relevant to this Indictment, the Broadway Crips gang, as described more particularly in Paragraphs 1 through 18 of the General Allegations, which paragraphs are re-alleged and incorporated by reference as if fully set forth herein, constituted an enterprise, as that term is defined in Title 18, United States Code, Section 1959(b)(2), that is, a group of individuals associated in fact, which was engaged in, and the activities of which affected, interstate and foreign commerce.  The enterprise constituted an ongoing organization whose members functioned as a continuing unit for a common purpose of achieving the objectives of the enterprise.

2.    At all times relevant to this Indictment, the Broadway Crips gang, through its members and associates, engaged in racketeering activity, as defined in Title 18, United States Code, Sections 1959(b)(1) and 1961(1), that is, acts involving murder, robbery, and extortion, in violation of the California Penal Code; offenses involving the manufacturing, selling, and otherwise dealing in controlled substances, namely, crack cocaine, cocaine, methamphetamine, PCP, ecstasy, marijuana, and codeine, in violation of Title 21, United States Code, Sections 846 and 841(a)(1); and acts indictable under Title 18, United States Code, Section 1951 (Interference with Commerce by Threats or Violence), and Title 18, United States Code, Section 1512 (Tampering with a Witness, Victim, or Informant).

3.    On or about March 10, 2003, in Los Angeles County, within the Central District of California, for the purpose of

126

gaining entrance to and maintaining and increasing position in the Broadway Crips gang, an enterprise engaged in racketeering activity, defendant MARQUIS SHAW, also known as "T-Loon," while aiding and abetting others known and unknown to the Grand Jury, murdered victim L.R. with malice aforethought, in violation of California Penal Code Sections 31 and 187, all in violation of Title 18, United States Code, Section 1959(a)(1).

## COUNT THREE

### [18 U.S.C. § 1959(a)(5)]

1.    Paragraphs 1 and 2 of Count Two are re-alleged and incorporated by reference as if fully set forth herein.

2.    Beginning no later than on or about October 29, 2012, and continuing to on or about the date of this Indictment, in Los Angeles County, within the Central District of California, for the purpose of gaining entrance to and maintaining and increasing position in the Broadway Crips gang, an enterprise engaged in racketeering activity, defendant TYRINE MARTINEZ, also known as "Lil' C-Bone," and others known and unknown to the Grand Jury, unlawfully and knowingly conspired to murder defendant GRIFFIN and A.S., persons who the gang believed had violated gang rules, in violation of California Penal Code Sections 182 and 187, all in violation of Title 18, United States Code, Section 1959(a)(5).

COUNT FOUR

[18 U.S.C. § 1951(a)]

Paragraphs 1 through 18 of the General Allegations are re-alleged and incorporated by reference as if fully set forth herein.

A.   OBJECT OF THE CONSPIRACY

Beginning on a date unknown to the Grand Jury and continuing to or about August 16, 2013, in Los Angeles County, within the Central District of California, and elsewhere, defendants CHARLES SMITH, also known as ("aka") "Big Solo" ("CHARLES SMITH"), AKIA PETE, aka "Studda Box" ("PETE"), KHALID ALI MUHAMMAD, aka "Juice" ("MUHAMMAD"), WILLIAM LUCAS, aka "Knockout" ("LUCAS"), TRAYVONE JACKSON, aka "Deuce Von," aka "Trey" ("JACKSON"), and RAVON MURRLEY, aka ("Crook"), and others known and unknown to the Grand Jury, knowingly and willfully conspired and agreed with each other to interfere with commerce by robbery, in violation of Title 18, United States Code, Section 1951(a).

B.   MEANS BY WHICH THE OBJECT OF THE CONSPIRACY WAS TO BE
     ACCOMPLISHED

The object of the conspiracy was to be accomplished in substance as follows:

1.   Defendants CHARLES SMITH, PETE, MUHAMMAD, LUCAS, JACKSON, and MURRLEY, and other Broadway Crips members and associates, armed with, among other items, guns, tasers, and zip ties, would form robbery crews that would target banks that operate in interstate commerce, follow victims to and from these banks and rob the victims of their business proceeds, cash that

129

1  was intended for or had just come from banks, bank and credit

2  cards, and other valuable personal items.

3      2.    Defendant CHARLES SMITH would lead the robbery crews.

4      3.    Defendants CHARLES SMITH, PETE, MUHAMMAD, LUCAS,

5  JACKSON, and MURRLEY, and other Broadway Crips members and

6  associates, would conduct surveillance for potential victims at

7  various banks, particularly at BBCN banks, which operate

8  nationwide and primarily serve Korean communities.

9  C.   OVERT ACTS

10      In furtherance of the conspiracy and to accomplish the

11  object of the conspiracy, on or about the following dates,

12  defendants CHARLES SMITH, PETE, MUHAMMAD, LUCAS, JACKSON, and

13  MURRLEY, and others known and unknown to the Grand Jury,

14  committed various overt acts within the Central District of

15  California, and elsewhere, including, but not limited to, the

16  following:

17      1.   On December 7, 2009, defendants CHARLES SMITH,

18  JACKSON, and MURRLEY, in Hollywood, California, possessed a

19  loaded Rossi .38 caliber revolver, bearing serial number

20  D606211, a taser, and a screwdriver, surveilled multiple banks,

21  and then broke into a parked Mercedes vehicle in order to steal

22  a bank purse containing approximately $200 in cash, Bank of

23  America blank checks, and checking and savings ledgers.

24      2.   On August 19, 2010, defendant LUCAS and another

25  Broadway Crips member, armed with a handgun, pistol-whipped,

26  assaulted, and robbed victim J.G., who was headed to a Wells

27  Fargo Bank in Gardena, California, to deposit $750 in cash and

28  $630 in checks.

1      3.   On March 12, 2013, defendants CHARLES SMITH and

2  JACKSON, armed with a silver revolver, followed victim K.H., an

3  Asian female, from the BBCN Bank in Torrance, California, to

4  K.H.'s home, put a gun to her head, and robbed her of $2,500

5  that she had just withdrawn from the bank and a total of

6  approximately $7,000 worth of cash and personal items.

7      4.   On April 6, 2013, defendants CHARLES SMITH and PETE,

8  armed with a taser, attacked and robbed victim J.H., an Asian

9  female, of victim J.H.'s property just after victim J.H.

10 withdrew cash from the BBCN Bank in Los Angeles, California, and

11 stole victim J.H.'s purse, cash, debit and credit cards, and

12 sunglasses.

13     5.   On April 15, 2013, defendants PETE and CARTER, in

14 Broadway Crips' territory, sold a handgun for $250 to a CS, and

15 defendant PETE discussed the recent robbery of victim J.H. that

16 he and defendant CHARLES SMITH committed.

17     6.   On April 19, 2013, defendants CHARLES SMITH and PETE,

18 armed with a silver handgun, followed victim H.S., an Asian

19 male, after victim H.S. withdrew money from the BBCN Bank in

20 Torrance, California, and robbed victim H.S. of the $10,000

21 victim H.S. had just withdrawn for his business.  Defendants

22 CHARLES SMITH and PETE then rammed their vehicle into another

23 vehicle while fleeing the scene of the robbery.

24     7.   On April 30, 2013, defendants CHARLES SMITH and

25 JACKSON surveilled the BBCN Bank in Torrance, California, and

26 attempted to follow victim M.H., an Asian male, from the bank to

27 rob him.

28

8.    On May 2, 2013, defendants CHARLES SMITH and JACKSON, while in possession of binoculars, black gloves, and approximately $1,342 in cash, surveilled the BBCN Bank in Torrance, California, for the purpose of following bank customers from the bank and robbing them.

9.    On July 15, 2013, defendant CHARLES SMITH and other Broadway Crips members, armed with a silver revolver, followed victim S.K., an Asian male, from the BBCN Bank in Gardena, California, to his home where they robbed him of approximately $850 worth of personal items and his American Express and Visa credit cards.

10.    On August 5, 2013, defendants CHARLES SMITH, PETE, and JACKSON, driving a vehicle whose true license plate was covered by paper plates, conducted surveillance on bank customers at various Chase Banks in the city of Bell, California.

11.    On August 16, 2013, defendants CHARLES SMITH, MUHAMMAD, and JACKSON, while armed with a loaded Smith & Wesson .38 caliber silver revolver, bearing serial number 461210, in San Bernardino, California, followed a victim from a BBCN Bank, robbed the victim at gunpoint of his wallet containing an American Express credit card and two blank checks, and fled from the police to Broadway Crips' territory.

12.    On August 16, 2013, defendant CHARLES SMITH, in his residence, located at 111 W. 52nd Place in Los Angeles, California, possessed a ski mask, taser, gloves, foreign currency, and a phone belonging to a bank customer who had been the victim of a robbery in Los Angeles.

## COUNT FIVE

[18 U.S.C. §§ 1951(a), 2]

On or about August 19, 2010, in Los Angeles County, within the Central District of California, and elsewhere, defendant WILLIAM LUCAS, also known as "Knockout" ("LUCAS"), while aiding and abetting others known and unknown to the Grand Jury, did unlawfully obstruct, delay, and affect, and attempt to obstruct, delay, and affect, commerce and the movement of articles and commodities in commerce by robbery, as that term is defined in Title 18, United States Code, Section 1951(b)(1), in that defendant LUCAS did unlawfully take and obtain personal property consisting of a Wells Fargo Bank N.A. ("Wells Fargo") deposit bag containing $750 in cash and $630 in checks from the person and in the presence of victim J.G., who engaged in using the services of Wells Fargo, which operates in interstate commerce, and did so against victim J.G.'s will, by means of actual and threatened force, violence, and fear of injury, immediate and future, to his person, that is, by pointing a handgun at, threatening, and pistol-whipping victim J.G.

## COUNT SIX

[18 U.S.C. §§ 1951(a), 2]

On or about March 26, 2012, in Los Angeles County, within the Central District of California, and elsewhere, defendants CHARLES SMITH, also known as "Big Solo" ("CHARLES SMITH"), and KENNETH WASHINGTON, aka "Tiny Dulow," aka "Little Ken Dog" ("WASHINGTON"), while aiding and abetting each other and others known and unknown to the Grand Jury, did unlawfully obstruct, delay, and affect, and attempt to obstruct, delay, and affect, commerce and the movement of articles and commodities in commerce by robbery, as that term is defined in Title 18, United States Code, Section 1951(b)(1), in that defendants CHARLES SMITH and WASHINGTON and others known and unknown to the Grand Jury did unlawfully take and obtain property consisting of approximately $78,000 worth of jewelry from Sing's Jewelry Store, which orders and receives almost all of its inventory from outside California, and did so in the presence of victims A.S., E.S., and C.S., against their will, by means of actual and threatened force, violence, and fear of injury, immediate and future, to their persons, that is, by pointing a handgun at the victims, forcing victim A.S. into another room to open the store's safe, and zip-tying victims E.S. and C.S.

## COUNT SEVEN

### [18 U.S.C. §§ 1951(a), 2]

On or about March 12, 2013, in Los Angeles County, within the Central District of California, and elsewhere, defendants CHARLES SMITH, also known as ("aka") "Big Solo" ("CHARLES SMITH"), and TRAYVONE JACKSON, aka "Deuce Von," aka "Trey" ("JACKSON"), while aiding and abetting each other and others known and unknown to the Grand Jury, did unlawfully obstruct, delay, and affect, and attempt to obstruct, delay, and affect, commerce and the movement of articles and commodities in commerce by robbery, as that term is defined in Title 18, United States Code, Section 1951(b)(1), in that defendants CHARLES SMITH and JACKSON did unlawfully take and obtain personal property consisting of approximately $2,500 in cash from the person and in the presence of victim K.H., which victim K.H. had just withdrawn from BBCN Bank, which operates in interstate commerce, and did so against victim K.H.'s will, by means of actual and threatened force, violence, and fear of injury, immediate and future, to her person, that is, by threatening victim K.H. with a silver revolver.

1

COUNT EIGHT

2

[18 U.S.C. §§ 1951(a), 2]

3   On or about April 6, 2013, in Los Angeles County, within

4   the Central District of California, and elsewhere, defendants

5   CHARLES SMITH, also known as ("aka") "Big Solo" ("CHARLES

6   SMITH"), and AKIA PETE, aka "Studda Box" ("PETE"), while aiding

7   and abetting each other and others known and unknown to the

8   Grand Jury, did unlawfully obstruct, delay, and affect, and

9   attempt to obstruct, delay, and affect, commerce and the

10   movement of articles and commodities in commerce by robbery, as

11   that term is defined in Title 18, United States Code, Section

12   1951(b)(1), in that defendants CHARLES SMITH and PETE did

13   unlawfully take and obtain personal property, to include debit

14   and credit cards connected to financial institutions engaged in

15   interstate commerce, from the person and in the presence of

16   victim J.G., against her will, by means of actual and threatened

17   force, violence, and fear of injury, immediate and future, to

18   her person, that is, by threatening victim J.G. with a taser

19   after victim J.G. had just used the services of BBCN Bank, which

20   operates in interstate commerce.

21

22

23

24

25

26

27

28

136

COUNT NINE

[18 U.S.C. §§ 1951(a), 2]

On or about April 19, 2013, in Los Angeles County, within the Central District of California, and elsewhere, defendants CHARLES SMITH, also known as ("aka") "Big Solo" ("CHARLES SMITH"), and AKIA PETE, aka "Studda Box" ("PETE"), while aiding and abetting each other and others known and unknown to the Grand Jury, did unlawfully obstruct, delay, and affect, and attempt to obstruct, delay, and affect, commerce and the movement of articles and commodities in commerce by robbery, as that term is defined in Title 18, United States Code, Section 1951(b)(1), in that defendants CHARLES SMITH and PETE did unlawfully take and obtain $10,000 in proceeds from Cash Uno, a business that operates in interstate commerce, from the person and in the presence of victim H.C., against his will, by means of actual and threatened force, violence, and fear of injury, immediate and future, to his person, that is, by threatening victim H.C. with a silver handgun after victim H.C. had withdrawn the $10,000 in question from BBCN Bank, which operates in interstate commerce.

## COUNT TEN

### [18 U.S.C. §§ 1951(a), 2]

On or about July 15, 2013, in Los Angeles County, within the Central District of California, and elsewhere, defendant CHARLES SMITH, also known as "Big Solo" ("CHARLES SMITH"), while aiding and abetting others known and unknown to the Grand Jury, did unlawfully obstruct, delay, and affect, and attempt to obstruct, delay, and affect, commerce and the movement of articles and commodities in commerce by robbery, as that term is defined in Title 18, United States Code, Section 1951(b)(1), in that defendant CHARLES SMITH did unlawfully take and obtain personal property, to include debit and credit cards connected to financial institutions engaged in interstate commerce, from the person and in the presence of victim S.K., against his will, by means of actual and threatened force, violence, and fear of injury, immediate and future, to his person, that is, by threatening victim S.K. with a silver revolver after victim S.K had utilized the services of BBCN Bank, which operates in interstate commerce.

138

## COUNT ELEVEN

[18 U.S.C. §§ 1951(a), 2]

On or about August 16, 2013, in Los Angeles County, within the Central District of California, and elsewhere, defendants CHARLES SMITH, also known as ("aka") "Big Solo" ("CHARLES SMITH"), KHALID ALI MUHAMMAD, aka "Juice" ("MUHAMMAD"), and TRAYVONE JACKSON, aka "Deuce Von," aka "Trey" ("JACKSON"), while aiding and abetting each other and others known and unknown to the Grand Jury, did unlawfully obstruct, delay, and affect, and attempt to obstruct, delay, and affect, commerce and the movement of articles and commodities in commerce by robbery, as that term is defined in Title 18, United States Code, Section 1951(b)(1), in that defendants CHARLES SMITH, MUHAMMAD, and JACKSON did unlawfully take and obtain personal property, to include debit and credit cards connected to financial institutions engaged in interstate commerce and $100 cash, from the person and in the presence of victim A.K., against her will, by means of actual and threatened force, violence, and fear of injury, immediate and future, to her person, that is, by threatening victim A.K. with a firearm, after victim A.K. had utilized the services the BBCN Bank, which operates in interstate commerce.

COUNT TWELVE

[21 U.S.C. § 846]

Paragraphs 1 through 18 of the General Allegations are re-alleged and incorporated by reference as if fully set forth herein.

A.  OBJECTS OF THE CONSPIRACY

Beginning on a date unknown to the Grand Jury, and continuing to on or about the date of this Indictment, in Los Angeles County, within the Central District of California, and elsewhere, defendants MARTINEZ, HARRIS, SUMPTER, SHAW, TYRELL THOMAS SR., DASHIELL, CHARLES SMITH, KELLY, MARSHALL, WOOLEY, PETE, LEGGETT, PEREZ, JUAN TYARS, HOUSTON, JONES, KEATON, MINNIEFIELD, MUHAMMAD, HALL, BURRELL, SWAFFI, LUCAS, SORRELLS, GRANVILLE THOMAS, WASHINGTON, JACKSON, HOGAN, BARNETT, GRIFFIN, INGRAM, WILLIAMS, HENDERSON, AMOS, BABB, ANTROINE TYARS SR., ANTROINE TYARS JR., WEBSTER, RILEY, MURRLEY, CAMPBELL, CARTER, COLLINS, GREGORY GORDON, TYRELL THOMAS JR., TYRONE TYARS, WEST, SIMS, BRYANT, DODDS, SAUNDERS, WHETSTONE, JOHNSON, COLE, GOLDSTON, LEE, TONY GORDON, RICHARDS, BRAY, HEARD, MYERS, KOONCE, LAMAR THOMAS, BELLINGER, JAMES, RYAN SMITH, GRIMBLE, KEITH, PITTS, BROWNLEE, PEDRO SANCHEZ, aka "Peezy" ("SANCHEZ"), and JERMAINE BURTON, aka "J-Bone" ("BURTON") (collectively, "defendants"), and others known and unknown to the Grand Jury, conspired and agreed with each other to knowingly and intentionally (i) possess with intent to distribute, and (ii) distribute, the following controlled substances:

1.  at least 280 grams of a mixture and substance containing a detectable amount of cocaine base in the form of

140

crack cocaine ("crack cocaine"), a Schedule II narcotic drug controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(A)(iii);

2.    at least five kilograms of a mixture and substance containing a detectable amount of cocaine, a Schedule II narcotic drug controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(A)(ii);

3.    at least 100 grams of phencyclidine ("PCP"), a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(A)(iv);

4.    at least 50 grams of methamphetamine, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(A)(viii);

5.    3-4 methylenedioxymethamphetamine ("MDMA" or "ecstasy"), a Schedule I controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(C);

6.    Codeine, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(C); and

7.    A mixture and substance containing a detectable amount of marijuana, a Schedule I controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(D).

B.   MEANS BY WHICH THE OBJECTS OF THE CONSPIRACY WERE TO BE ACCOMPLISHED

The objects of the conspiracy were to be accomplished in substance as follows:

1.     Defendants MARTINEZ, SUMPTER, SHAW, WOOLEY, LEGGETT, JUAN TYARS, BURRELL, and PITTS would act as central drug suppliers to the gang.

2.     Defendant SANCHEZ would supply defendant SUMPTER with cocaine and crack cocaine.

3.     Defendant ANTROINE TYARS SR., at the direction of defendants MARTINEZ and SUMPTER, would operate a drug stash location known as "the Store," located at 143 E. 57th Street in Los Angeles, California, in order to supply drugs to Broadway Crips members for re-distribution and for sale to street-level customers.

4.     Defendants KEATON, HALL, and WHETSTONE, at the direction of defendants MARTINEZ and SUMPTER, would operate a drug stash location known as "the Spot," located at 142 W. 56th Street, in Los Angeles, California, in order to supply drugs to Broadway Crips members for re-distribution and for sale to street-level customers.

5.     Defendants MARTINEZ, KELLY, SWAFFI, and HOGAN would supply controlled substances and firearms for the Broadway Crips gang, and would ensure that younger members had sufficient controlled substances to sell.

6.     Defendants MARTINEZ, SUMPTER, SHAW, JUAN TYARS, HOUSTON, RILEY, DODDS, and LEE would convert or "cook" powder cocaine to make crack cocaine to supply to other Broadway Crips members and drug customers.

7.     Defendants MARTINEZ, HARRIS, SUMPTER, SHAW, TYRELL THOMAS SR., DASHIELL, KELLY, MARSHALL, WOOLEY, PETE, LEGGETT, PEREZ, JONES, KEATON, MINNIEFIELD, HALL, BURRELL, SWAFFI, LUCAS,