EILEEN M. DECKER
United States Attorney
LAWRENCE S. MIDDLETON
Assistant United States Attorney
Chief, Criminal Division
MACK E. JENKINS (Cal. Bar No. 242101)
Assistant United States Attorney
Public Corruption & Civil Rights Section
MAX B. SHINER (Cal. Bar No. 187125)
WILSON PARK (Cal. Bar No. 239527)
Assistant United States Attorneys
Violent & Organized Crime Section
     1300/1500 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-2091/3308/5796
     Facsimile: (213) 894-6436
     E-mail:    mack.jenkins@usdoj.gov
                max.shiner@usdoj.gov
                wilson.park@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 14-338(A)-SJO-15 |
|---|---|
| Plaintiff, | PLEA AGREEMENT FOR JERMAINE HOUSTON |
| v. | |
| TYRINE MARTINEZ et al., [JERMAINE HOUSTON], | |
| Defendants. | |

     1.   This constitutes the plea agreement between JERMAINE
HOUSTON ("defendant") and the United States Attorney's Office for the
Central District of California (the "USAO") in the above-captioned
case. This agreement is limited to the USAO and cannot bind any other
federal, state, local, or foreign prosecuting, enforcement,
administrative, or regulatory authorities.

DEFENDANT'S OBLIGATIONS

2.   Defendant agrees to:

a.   At the earliest opportunity requested by the USAO and provided by the Court, appear and plead guilty to Count One and a lesser-included offense in Count Twelve of the First Superseding Indictment (the "Indictment") in United States v. Tyrine Martinez et al., CR No. 14-338(A)-SJO, which charge defendant with conspiring to engage in racketeering activity in violation of 18 U.S.C. § 1962(d) and conspiring to traffic narcotics in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(B)(iii), respectively.

b.   Not contest facts agreed to in this agreement.

c.   Abide by all agreements regarding sentencing contained in this agreement.

d.   Appear for all court appearances, surrender as ordered for service of sentence, obey all conditions of any bond, and obey any other ongoing court order in this matter.

e.   Not commit any crime; however, offenses that would be excluded for sentencing purposes under United States Sentencing Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not within the scope of this agreement.

f.   Be truthful at all times with Pretrial Services, the United States Probation Office, and the Court.

g.   Pay the applicable special assessment at or before the time of sentencing unless defendant lacks the ability to pay and prior to sentencing submits a completed financial statement on a form to be provided by the USAO.

h.   The imposition of the following conditions of probation or supervised release:  (i) a residence prohibition,

2

1  precluding defendant from living in known Broadway Gangster Crips'

2  territory, which territory is defined in the Factual Basis (¶ 16)

3  below, unless defendant is unable to find suitable housing outside of

4  the BGC's territory and with written approval and verification from

5  the United States Probation Office defendant would be permitted to

6  reside with family members within BGC's territory; and (ii) upon a

7  showing of reasonable suspicion that defendant is violating a term of

8  his supervised release and/or any state or federal law, a search and

9  seizure condition, of defendant's person, vehicle, residence, and

10  cell phone.

THE USAO'S OBLIGATIONS

12     3.  The USAO agrees to:

13        a.  Not contest facts agreed to in this agreement.

14        b.  Abide by all agreements regarding sentencing contained

15  in this agreement.

16        c.  At the time of sentencing, move to dismiss the

17  underlying indictment any remaining counts of the Indictment as

18  against defendant.  Defendant agrees, however, that at the time of

19  sentencing the Court may consider any dismissed charges in

20  determining the applicable Sentencing Guidelines range, the propriety

21  and extent of any departure from that range, and the sentence to be

22  imposed.

23        d.  At the time of sentencing, provided that defendant

24  demonstrates an acceptance of responsibility for the offense up to

25  and including the time of sentencing, recommend a two-level reduction

26  in the applicable Sentencing Guidelines offense level, pursuant to

27  U.S.S.G. § 3E1.1, and recommend and, if necessary, move for an

28  additional one-level reduction if available under that section.

1          e.   At the time of sentencing, move to dismiss the sole

2    count of the information filed against defendant pursuant to Title

3    21, United States Code, Section 851.  Defendant agrees, however, that

4    at the time of sentencing the Court may consider the dismissed counts

5    of the information in determining the applicable Sentencing

6    Guidelines range, the propriety and extent of any departure from that

7    range, and the sentence to be imposed after consideration of the

8    Sentencing Guidelines and all other relevant factors under 18 U.S.C.

9    § 3553(a).

10         f.   With respect to Counts One and Twelve: Recommend that

11   defendant be sentenced to a term of imprisonment of no more than 87

12   months' imprisonment.

13                        NATURE OF THE OFFENSE

14        4.   Defendant understands that for defendant to be guilty of

15   the crime charged in Count One, that is, racketeering conspiracy, in

16   violation of Title 18, United States Code, Section 1962(d), the

17   following must be true: (1) the enterprise alleged in Count One of

18   the Indictment would exist and that it would have affected interstate

19   or foreign commerce; (2) the defendant would be employed by or

20   associated with the enterprise, and (3) defendant knowingly agreed

21   that defendant himself, or a coconspirator, would conduct or

22   participate, directly or indirectly, in the conduct of the affairs of

23   the enterprise through a pattern of racketeering activity.

24        5.   An "enterprise" includes any individual, partnership,

25   corporation, association, or other legal entity, and any union or

26   group of individuals associated in fact although not a legal entity.

27   "Racketeering activity" includes any act or threat involving murder,

28   kidnaping, robbery, extortion, or dealing in a controlled substance,

                                    4

1  which is chargeable under state law and punishable by imprisonment

2  for more than one year.

3      6.   A "pattern of racketeering activity" is at least two

4  racketeering acts that the defendant agreed a conspirator would

5  commit, the last of which occurred within ten years after the

6  commission of a prior act of racketeering.  To establish a pattern,

7  the racketeering acts must have a "nexus" to the enterprise and be

8  related, i.e., criminal acts that have the same or similar purposes,

9  results, participants, victims, or methods of commission, or

10  otherwise are interrelated by distinguishing characteristics and are

11  not isolated.  The racketeering acts themselves must either extend

12  over a substantial period of time or they must pose a threat of

13  continued criminal activity. Defendant admits that defendant is, in

14  fact, guilty of this offense as described in Count One of the

15  Indictment.

16      7.   Defendant understands that for defendant to be guilty of

17  the charge in Count Twelve (violation of Title 21, United States

18  Code, Sections 846, 841(a)(1), and 841(b)(1)(B)), the following must

19  be true: (1) there was an agreement between two or more persons to

20  distribute cocaine base in the form of crack cocaine ("crack

21  cocaine"); and (2) defendant became a member of this conspiracy

22  knowing of this object and intending to help accomplish it.

23  Defendant admits that defendant is, in fact, guilty of this offense

24  as described in Count Twelve of the Indictment.

25      8.   Defendant understands that for defendant to be subject to

26  the statutory maximum and statutory minimum sentences set forth

27  below, the government must prove beyond a reasonable doubt that, over

28  the life of the conspiracy to distribute drugs, defendant agreed to

distribute at least 28 grams of crack cocaine.  Defendant admits that defendant, in fact, agreed to distribute at least 28 grams of crack cocaine.

PENALTIES

9.   Defendant understands that the statutory maximum sentence that the Court can impose for a violation of Title 18, United States Code, Sections 1962(d), 1963(a), is: 20 years' imprisonment; a 3-year period of supervised release; a fine of $250,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.

10.   Defendant understands that the statutory maximum sentence that the Court can impose for a violation of Title 21, United States, Sections 846, 841(a)(1) and 841(b)(1)(B), is: 40 years' imprisonment; a lifetime period of supervised release; a fine of $5 million; and a mandatory special assessment of $100.

11.   Defendant understands that the statutory mandatory minimum sentence that the Court must impose for a violation of Title 21, United States, Sections 846, 841(a)(1) and 841(b)(1)(B) is: five years' imprisonment followed by a four-year period of supervised release.

12.   Defendant understands, therefore, that the total maximum sentence for all offenses to which defendant is pleading guilty is: 60 years' imprisonment; a lifetime period of supervised release; a fine of $5,250,000; and a mandatory special assessment of $200.

13.   Defendant understands that supervised release is a period of time following imprisonment during which defendant will be subject to various restrictions and requirements.  Defendant understands that if defendant violates one or more of the conditions of any supervised

release imposed, defendant may be returned to prison for all or part of the term of supervised release authorized by statute for the offense that resulted in the term of supervised release, which could result in defendant serving a total term of imprisonment greater than the statutory maximum stated above.

14.   Defendant understands that, by pleading guilty, defendant may be giving up valuable government benefits and valuable civic rights, such as the right to vote, the right to possess a firearm, the right to hold office, and the right to serve on a jury. Defendant understands that once the court accepts defendant's guilty plea, it will be a federal felony for defendant to possess a firearm or ammunition.  Defendant understands that the conviction in this case may also subject defendant to various other collateral consequences, including but not limited to revocation of probation, parole, or supervised release in another case and suspension or revocation of a professional license.  Defendant understands that unanticipated collateral consequences will not serve as grounds to withdraw defendant's guilty plea.

15.   Defendant understands that, if defendant is not a United States citizen, the felony conviction in this case may subject defendant to: removal, also known as deportation, which may, under some circumstances, be mandatory; denial of citizenship; and denial of admission to the United States in the future.  The court cannot, and defendant's attorney also may not be able to, advise defendant fully regarding the immigration consequences of the felony conviction in this case.  Defendant understands that unexpected immigration consequences will not serve as grounds to withdraw defendant's guilty plea.

1

<u>FACTUAL BASIS</u>

2      16.   Defendant admits that defendant is, in fact, guilty of the
3 offenses to which defendant is agreeing to plead guilty.  Defendant
4 and the USAO agree to the statement of facts provided below and agree
5 that this statement of facts is sufficient to support pleas of guilty
6 to the charges described in this agreement and to establish the
7 Sentencing Guidelines factors set forth in paragraph 18 below but is
8 not meant to be a complete recitation of all facts relevant to the
9 underlying criminal conduct or all facts known to either party that
10 relate to that conduct.

11          a.   Throughout the period described in the above-captioned
12 indictment, the Five Deuce Broadway Gangster Crips street gang
13 ("BGC") is and was a criminal enterprise composed of a group of
14 individuals associated for a common purpose of engaging in a course
15 of conduct, which course includes the trafficking of crack cocaine,
16 cocaine, and other drugs and the commission of violence against
17 perceived rivals.  In that regard, the BGC controls the majority of
18 the cocaine and crack cocaine trafficking that takes place in and
19 around its claimed territory in South Los Angeles.  This territory is
20 generally defined as (to the North) Vernon Avenue, (to the East)
21 Avalon Boulevard, (to the West) the 110 Freeway, and (to the South)
22 Slauson Avenue.  Members and associates of the BGC conspire with one
23 another to distribute cocaine and crack cocaine in its territory and
24 also in areas of downtown Los Angeles, specifically by sharing
25 information on drug suppliers, providing common security against
26 rival drug sellers and gang members, referring one another to
27 customers, and providing counter-surveillance against law
28 enforcement.

1          b.   As a result of its drug trafficking conduct,

2     throughout the period described in the above-captioned indictment,

3     and as known to defendant, BGC members and associates engaged in, and

4     their activities in some way affected, commerce between one state and

5     another state.

6          c.   Beginning no later than March 25, 1989, and continuing

7     at least until October 28, 2015, defendant JERMAINE HOUSTON, also

8     known as "J-Bone," was a member of the BGC.   In that capacity,

9     defendant conspired and agreed with BGC members that a conspirator

10    would commit at least two racketeering acts, in the form of

11    distribution of narcotics, including crack cocaine, which acts had a

12    relationship to one another and the gang, and posed a threat of

13    continued criminal activity.   Defendant became a member of this

14    conspiracy knowing of this object, knowing it was illegal, and

15    intending to help accomplish it.

16         d.   Defendant conspired with members of the BGC to sell

17    drugs throughout the gang's territory and maintain the BGC's drug

18    selling and territorial monopoly.   Defendant himself would, to

19    further the goals of the racketeering and drug conspiracies, in

20    addition to selling drugs within the BGC's territory, share drug

21    supply information with BGC members.   To further these same

22    conspiracies, defendant was aware that BGC members would carry

23    firearms for the purpose of assaulting and protecting themselves and

24    other BGC members from rival gang members and drug dealers.

25         e.   Defendant was an Original Gangster ("OG") in the BGC.

26         f.   Defendant was aware of the Gremlin Riderz, a clique of

27    the Broadway Crips.   Defendant knew that the Gremlin Riderz would

28    encourage younger Broadway Crips members to engage in violence

1   against rivals and insubordinate members.

2         g.   In furtherance of the racketeering and drug

3   trafficking conspiracies, defendant committed at least the following

4   acts:

5         h.   From February 24, 1999 to March 2, 1999, defendant

6   HOUSTON agreed with other Broadway Crips members to distribute crack

7   cocaine in Minnesota.

8         i.   On September 17, 2011, approximately 20 Broadway Crips

9   members, including codefendants Perez, and Tony Gordon, and

10   codefendant Martinez who participated via telephone from jail, held a

11   gang meeting in Broadway Crips' territory.

12         j.   On November 14, 2011, defendant HOUSTON and

13   codefendants Sumpter, Shaw, Marshall, Perez, Jones, Burrell,

14   Washington, Antroine Tyars Jr., Webster, Campbell, Tyrell Thomas Jr.,

15   West, Sims, Bryant, Dodds, Goldston, Lamar Thomas, Bellinger, Ryan

16   Smith, and Pitts attended the funeral of a leading Broadway Crips and

17   Gremlin Riderz member, K.M., aka "Hitman."

18         k.   On May 2, 2012, defendant HOUSTON and codefendants

19   Sumpter, Tyrell Thomas Sr., Dashiell, Marshall, Pete, Jones,

20   Minniefield, Burrell, Carter, Ryan Smith, and Keith, along with other

21   Broadway Crips members and associates, in Broadway Crips' territory,

22   celebrated the gang's Hood Day.

23         l.   On March 10, 2012, defendant HOUSTON and at least 35

24   members and associates of the Broadway Crips, including codefendants

25   Tyrell Thomas Sr., Charles Smith, Kelly, Pete, Jones, Burrell, Lucas,

26   Washington, Campbell, Carter, Sims, and Lee, in Broadway Crips'

27   territory, held a Broadway Crips gang meeting, which was led by

28   codefendant Tyrell Thomas Sr.

1   m. On March 10, 2012, during the Broadway Crips' gang

2 meeting, defendant HOUSTON along with codefendants Tyrell Thomas Sr.,

3 Charles Smith, Kelly, Pete, Jones, Burrell, Lucas, Washington,

4 Campbell, Carter, Sims, and Lee, along with other Broadway Crips

5 members and associates, discussed various gang matters, including:

6 criminal activity of the gang; the obligation for gang members to

7 carry firearms; suspected informants within the gang; enemies of the

8 gang; and the upcoming Hood Day, where codefendant Tyrell Thomas Sr.

9 said members would honor Broadway Crips members who had been killed

10 or incarcerated "for the cause."

11   n. On March 10, 2012, during the Broadway Crips gang

12 meeting, defendant HOUSTON and codefendants Tyrell Thomas Sr.,

13 Charles Smith, Kelly, Pete, Jones, and Campbell provided instructions

14 to the gang assembly, and defendant HOUSTON discussed killing

15 informants.

16   o. On January 8, 2013, defendant HOUSTON, in Broadway

17 Crips' territory and within 1,000 feet of the campuses of the

18 Estrella Elementary School and the Aspire Academy school, sold

19 approximately 7.8 grams of crack cocaine for $400 to a confidential

20 source ("CS") working with the FBI.

21   p. On March 1, 2013, defendant HOUSTON, using coded

22 language in a telephone conversation, ordered seven grams of crack

23 cocaine from codefendant Sumpter and asked codefendant Sumpter to

24 bring the crack cocaine to defendant HOUSTON's residence because he

25 had on an electronic monitoring bracelet.

26   q. On March 3, 2013, defendant HOUSTON, using coded

27 language in a telephone conversation, ordered 14 grams of crack

28 cocaine from codefendant Sumpter.

1          r.   On March 27, 2013, defendant HOUSTON, in his

2    residence, located at 330 W. 54th Street in Broadway Crips' territory

3    and within 1,000 feet of the playground located at Pocket Park,

4    possessed the following drugs for sale: methamphetamine, hydrocodone,

5    diazepam, codeine, and marijuana.

6          s.   In total, over the life of the racketeering and drug

7    conspiracies, defendant HOUSTON agreed with other BGC members to

8    distribute at least 28 grams of crack cocaine.

9                              SENTENCING FACTORS

10        17.  Defendant understands that in determining defendant's

11   sentence the Court is required to calculate the applicable Sentencing

12   Guidelines range and to consider that range, possible departures

13   under the Sentencing Guidelines, and the other sentencing factors set

14   forth in 18 U.S.C. § 3553(a).  Defendant understands that the

15   Sentencing Guidelines are advisory only, that defendant cannot have

16   any expectation of receiving a sentence within the calculated

17   Sentencing Guidelines range, and that after considering the

18   Sentencing Guidelines and the other § 3553(a) factors, the Court will

19   be free to exercise its discretion to impose any sentence it finds

20   appropriate between the mandatory minimum and up to the maximum set

21   by statute for the crimes of conviction.

22        18.  Defendant and the USAO agree to the following applicable

23   Sentencing Guidelines factors:

24

| Base Offense Level:<br><br>[At least 28 but less than 112g of crack cocaine] | 24 | [U.S.S.G. § 2D1.1(c)(8)] |
| --- | --- | --- |
| Distribution of Drugs In a Protected Location | +1 | [U.S.S.G. § 2D1.1(a)(2)] |

28

19.   Defendant and the USAO reserve the right to argue that additional specific offense characteristics, adjustments, and departures under the Sentencing Guidelines are appropriate. Defendant understands that defendant's offense level could be increased if defendant is a career offender under U.S.S.G. §§ 4B1.1 and 4B1.2.  If defendant's offense level is so altered, defendant and the USAO will not be bound by the agreement to Sentencing Guideline factors set forth above.

20.   Defendant understands that there is no agreement as to defendant's criminal history or criminal history category.

21.   Defendant and the USAO reserve the right to argue for a sentence outside the sentencing range established by the Sentencing Guidelines based on the factors set forth in 18 U.S.C. § 3553(a)(1), (a)(2), (a)(3), (a)(6), and (a)(7).

<u>WAIVER OF CONSTITUTIONAL RIGHTS</u>

22.   Defendant understands that by pleading guilty, defendant gives up the following rights:

a.   The right to persist in a plea of not guilty.

b.   The right to a speedy and public trial by jury.

c.   The right to be represented by counsel – and if necessary have the court appoint counsel -- at trial.  Defendant understands, however, that, defendant retains the right to be represented by counsel – and if necessary have the court appoint counsel – at every other stage of the proceeding.

d.   The right to be presumed innocent and to have the burden of proof placed on the government to prove defendant guilty beyond a reasonable doubt.

e.    The right to confront and cross-examine witnesses against defendant.

f.    The right to testify and to present evidence in opposition to the charges, including the right to compel the attendance of witnesses to testify.

g.    The right not to be compelled to testify, and, if defendant chose not to testify or present evidence, to have that choice not be used against defendant.

h.    Any and all rights to pursue any affirmative defenses, Fourth Amendment or Fifth Amendment claims, and other pretrial motions that have been filed or could be filed.

## WAIVER OF APPEAL OF CONVICTION

23.    Defendant understands that, with the exception of an appeal based on a claim that defendant's guilty pleas were involuntary, by pleading guilty defendant is waiving and giving up any right to appeal defendant's convictions on the offenses to which defendant is pleading guilty.

## LIMITED MUTUAL WAIVER OF APPEAL OF SENTENCE

24.    Defendant agrees that, provided the Court imposes a total term of imprisonment on all counts of conviction of no more than the high-end of the Guidelines range corresponding with a Total Offense Level of 22 and the Criminal History Category as calculated by the Court, defendant gives up the right to appeal all of the following: (a) the procedures and calculations used to determine and impose any portion of the sentence; (b) the term of imprisonment imposed by the Court; (c) the fine imposed by the court, provided it is within the statutory maximum; (e) the term of probation or supervised release imposed by the Court, provided it is within the statutory maximum;

1   and (f) any of the following conditions of probation or supervised

2   release imposed by the Court: the conditions set forth in General

3   Orders 318, 01-05, and/or 05-02 of this Court; the drug testing

4   conditions mandated by 18 U.S.C. §§ 3563(a)(5) and 3583(d); the

5   alcohol and drug use conditions authorized by 18 U.S.C. § 3563(b)(7);

6   and the residency restriction and search condition agreed to in

7   Paragraph 2.

8        25.  The USAO agrees that, provided all portions of the sentence

9   are at or above the statutory minimum and at or below the statutory

10  maximum specified above, the USAO gives up its right to appeal any

11  portion of the sentence.

12                  <u>RESULT OF WITHDRAWAL OF GUILTY PLEA</u>

13       26.  Defendant agrees that if, after entering guilty pleas

14  pursuant to this agreement, defendant seeks to withdraw and succeeds

15  in withdrawing defendant's guilty pleas on any basis other than a

16  claim and finding that entry into this plea agreement was

17  involuntary, then (a) the USAO will be relieved of all of its

18  obligations under this agreement; and (b) should the USAO choose to

19  pursue any charge or any allegation of a prior conviction for a

20  felony drug offense that was either dismissed or not filed as a

21  result of this agreement, then (i) any applicable statute of

22  limitations will be tolled between the date of defendant's signing of

23  this agreement and the filing commencing any such action; and

24  (ii) defendant waives and gives up all defenses based on the statute

25  of limitations, any claim of pre-indictment delay, or any speedy

26  trial claim with respect to any such action, except to the extent

27  that such defenses existed as of the date of defendant's signing this

28  agreement.

1

### EFFECTIVE DATE OF AGREEMENT

2      27.   This agreement is effective upon signature and execution of

3  all required certifications by defendant, defendant's counsel, and an

4  Assistant United States Attorney.

5

### BREACH OF AGREEMENT

6      28.   Defendant agrees that if defendant, at any time after the

7  signature of this agreement and execution of all required

8  certifications by defendant, defendant's counsel, and an Assistant

9  United States Attorney, knowingly violates or fails to perform any of

10  defendant's obligations under this agreement ("a breach"), the USAO

11  may declare this agreement breached.  All of defendant's obligations

12  are material, a single breach of this agreement is sufficient for the

13  USAO to declare a breach, and defendant shall not be deemed to have

14  cured a breach without the express agreement of the USAO in writing.

15  If the USAO declares this agreement breached, and the Court finds

16  such a breach to have occurred, then: (a) if defendant has previously

17  entered guilty pleas pursuant to this agreement, defendant will not

18  be able to withdraw the guilty pleas, and (b) the USAO will be

19  relieved of all its obligations under this agreement.

20      29.   Following the Court's finding of a knowing breach of this

21  agreement by defendant, should the USAO choose to pursue any charge

22  or any allegation of a prior conviction for a felony drug offense

23  that was either dismissed or not filed as a result of this agreement,

24  then:

25          a.   Defendant agrees that any applicable statute of

26  limitations is tolled between the date of defendant's signing of this

27  agreement and the filing commencing any such action.

28

b.   Defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

c.   Defendant agrees that: (i) any statements made by defendant, under oath, at the guilty plea hearing; (ii) the agreed to factual basis statement in this agreement; and (iii) any evidence derived from such statements, shall be admissible against defendant in any such action against defendant, and defendant waives and gives up any claim under the United States Constitution, any statute, Rule 410 of the Federal Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal Procedure, or any other federal rule, that the statements or any evidence derived from the statements should be suppressed or are inadmissible.

<u>COURT AND PROBATION OFFICE NOT PARTIES</u>

30.   Defendant understands that the Court and the United States Probation Office are not parties to this agreement and need not accept any of the USAO's sentencing recommendations or the parties' agreements to facts or sentencing factors.

31.   Defendant understands that both defendant and the USAO are free to: (a) supplement the facts by supplying relevant information to the United States Probation Office and the Court, (b) correct any and all factual misstatements relating to the Court's Sentencing Guidelines calculations and determination of an appropriate sentence under the § 3553(a) factors, and (c) argue on appeal and collateral review that the Court's Sentencing Guidelines calculations and the sentence it chooses to impose are not error, although each party

17

1   agrees to maintain its view that the calculations in paragraph 18 are

2   consistent with the facts of this case.  While this paragraph permits

3   both the USAO and defendant to submit full and complete factual

4   information to the United States Probation Office and the Court, even

5   if that factual information may be viewed as inconsistent with the

6   facts agreed to in this agreement, this paragraph does not affect

7   defendant's and the USAO's obligations not to contest the facts

8   agreed to in this agreement.

9       32.  Defendant understands that even if the Court ignores any

10   sentencing recommendation, finds facts or reaches conclusions

11   different from those agreed to, and/or imposes any sentence up to the

12   maximum established by statute, defendant cannot, for that reason,

13   withdraw defendant's guilty pleas, and defendant will remain bound to

14   fulfill all defendant's obligations under this agreement.  Defendant

15   understands that no one -- not the prosecutor, defendant's attorney,

16   or the Court -- can make a binding prediction or promise regarding

17   the sentence defendant will receive, except that it will be within

18   the statutory maximum.

19                          NO ADDITIONAL AGREEMENTS

20       33.  Defendant understands that, except as set forth herein,

21   there are no promises, understandings, or agreements between the USAO

22   and defendant or defendant's attorney, and that no additional

23   promise, understanding, or agreement may be entered into unless in a

24   writing signed by all parties or on the record in court.

25              PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING

26       34.  The parties agree that this agreement will be considered

27   part of the record of defendant's guilty plea hearing as if the

28   entire agreement had been read into the record of the proceeding.

1    AGREED AND ACCEPTED

2    UNITED STATES ATTORNEY'S OFFICE
     FOR THE CENTRAL DISTRICT OF
3    CALIFORNIA

4    EILEEN M. DECKER
     United States Attorney
5

6    _____          5.27.16
                                           _____
7    MACK E. JENKINS                       Date
     Assistant United States Attorney
8

9    _____          5-27-16
                                           _____
10   JERMAINE HOUSTON                      Date
     Defendant
11

12

13   _____          5/27/16
                                           _____
14   DAVID SUTTON GEORGINA WAKEFIELD       Date
     Deputy Federal Public Defender
15   Attorney for Defendant
     Jermaine Houston

16

17

18

19

20

21

22

23

24

25

26

27

28

                          19

CERTIFICATION OF DEFENDANT

I have read this agreement in its entirety. I have had enough time to review and consider this agreement, and I have carefully and thoroughly discussed every part of it with my attorney. I understand the terms of this agreement, and I voluntarily agree to those terms. I have discussed the evidence with my attorney, and my attorney has advised me of my rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement. No promises, inducements, or representations of any kind have been made to me other than those contained in this agreement. No one has threatened or forced me in any way to enter into this agreement. I am satisfied with the representation of my attorney in this matter, and I am pleading guilty because I am guilty of the charges and wish to take advantage of the promises set forth in this agreement, and not for any other reason.

JERMAINE HOUSTON
Defendant

5-27-16
Date

20

<u>CERTIFICATION OF DEFENDANT'S ATTORNEY</u>

I am JERMAINE HOUSTON's attorney. I have carefully and thoroughly discussed every part of this agreement with my client. Further, I have fully advised my client of his rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement. To my knowledge: no promises, inducements, or representations of any kind have been made to my client other than those contained in this agreement; no one has threatened or forced my client in any way to enter into this agreement; my client's decision to enter into this agreement is an informed and voluntary one; and the factual basis set forth in this agreement is sufficient to support my client's entry of guilty pleas pursuant to this agreement.

_____     _____5/27/16_____
DAVID SUTTON GEORGINA WAKEFIELD         Date
Deputy Federal Public Defender
Attorney for Defendant
Jermaine Houston