1  HILARY L. POTASHNER (Bar No. 167060)
   Federal Public Defender
2  DAVID J. SUTTON (Bar No. 257630)
3  Deputy Federal Public Defender
   (E-Mail: David_Sutton@fd.org)
4  GEORGINA E. WAKEFIELD (Bar No. 282094)
5  Deputy Federal Public Defender
   (E-Mail: Georgina_Wakefield@fd.org)
6  321 East 2nd Street
7  Los Angeles, California 90012-4202
   Telephone: (213) 894-2854
8  Facsimile: (213) 894-0081

9
   Attorneys for Defendant
10 JERMAINE HOUSTON

11                  **UNITED STATES DISTRICT COURT**

12                  **CENTRAL DISTRICT OF CALIFORNIA**

13                         **WESTERN DIVISION**

| UNITED STATES OF AMERICA, | Case No. CR 14-00338-SJO-15 |
|---|---|
| Plaintiff, | DEFENDANT JERMAIN HOUSTON POSITION RE: SENTENCING; EXHIBITS |
| v. | Sentencing Date: November 7, 2016 |
| JERMAINE HOUSTON | Sentencing Time: 9:00 a.m. |
| Defendant. | |

Defendant Jermaine Houston through his attorney of record, Deputy Federal Public Defender David Joseph Sutton, hereby submits his position regarding sentencing.

                                    Respectfully submitted,

                                    HILARY L. POTASHNER
                                    Federal Public Defender

DATED: October 17, 2016    By */s/ David Joseph Sutton*
                              DAVID JOSEPH SUTTON
                              Deputy Federal Public Defender

# I.
# INTRODUCTION

Mr. Houston's acts in this case must be examined based on his overall actions throughout the life of the RICO and drug conspiracies. This reflection must recognize that Mr. Houston has already spent a substantial amount of his life in federal prison for the underlying conduct in this case. A truly balanced and fair sentence in this case will punish Mr. Houston for his actions and his continued criminality. However, a balanced sentence must also recognize that Mr. Houston has significant potential to succeed outside of prison. A mechanical application of the United States Sentencing Guideline would result in Mr. Houston being in criminal history category VI. However, Mr. Houston's criminal history is overstated because the calculation includes both dated convictions, and conduct that is part of both the RICO and drug conspiracies in this case. A variance to criminal history category III is appropriate in Mr. Houston's case. At criminal history category III, and a final base offense level of twenty two, the advisory Sentencing Guideline Range is 51-63 months in custody.

Mr. Houston respectfully requests that this Court sentence him to a total prison sentence of sixty-months in custody, on both counts to run concurrently; followed by two years of supervised release on count I of the indictment, and sixty-months of supervised release on count XII to run concurrently. Mr. Houston further requests that this Court make a recommendation that Mr. Houston participate in the Bureau of Prison's RDAP program.

/ / /

## II.

## MR. HOUSTON'S CRIMINAL HISTORY CALCULATION IS OVERSTATED; IT INCLUDES CONVICTIONS THAT ARE NEARLY THREE-DECADES OLD, AS WELL AS CONDUCT THAT IS INTEGRAL TO THE COUNTS OF CONVICTION.

**A. The Inclusion of Dated Convictions in Mr. Houston's Criminal History Calculation Results in an Artificially High Criminal History Calculation.**

Mr. Houston's criminal history is grossly overstated. The calculation of Mr. Houston's criminal history includes convictions for conduct that occurred in 1989, 1991, 1996, 1997, 1999--twenty seven to seventeen years ago. During this time period Mr. Houston was between the ages of fifteen and twenty five; today, Mr. Houston is forty three years-old. The last prior offense occurred nearly twenty years prior to the instant sentencing. The criminal history points from these offenses include several convictions for driving offenses. Further, the most serious conduct, which is also part of the instant offense, resulted in Mr. Houston spending over fifteen years of his life in prison. Compare Mr. Houston's conduct in this case after his release from prison, the sale of street level amounts of drugs, to his prior conduct and a variance under U.S.S.G. § 4A1.3(b)(1) to criminal history category III becomes necessary in this case.[1]

The dated convictions that increase Mr. Houston's criminal history from category III to category VI are: 1) a September 12, 1989 conviction for possession of a controlled substance, when Mr. Houston was fifteen years old (PSR ¶ 65); 2) a January 16, 1991, conviction for burglary, when Mr. Houston was eighteen-years old (PSR ¶ 66); 3) a conviction occurring on November 3, 1996 for child abandonment, when Mr. Houston was twenty three years old (PSR ¶ 68); 4) a conviction occurring on January 15, 1998, for driving on a suspended license, when Mr. Houston was twenty four years

---

[1] This requested variance is in combination and addition to the variance requested by Houston regarding the application of U.S.S.G. § 2E1.1 cmt.4 below.

old (PSR ¶ 70); 5) two convictions for driving under the influence, occurring when Mr. Houston was twenty four years old (PSR ¶¶ 72,73); and 6) Mr. Houston's conviction in the District of Minnesota, for conspiring to distribute cocaine and cocaine base, when Mr. Houston was twenty five years old. (PSR ¶ 74.)[2] Together these dated convictions account for twelve of Mr. Houston's seventeen criminal history points. But for these dated convictions Mr. Houston would only have five criminal history points, and be in criminal history category III.

United States Sentencing Guideline section 4A1.3(b)(1) states, "[i]f reliable information indicates that the defendant's criminal history category substantially over-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes, a downward departure may be warranted." U.S.S.G. § 4A1.3(b)(1). The Ninth Circuit examined the propriety of a variance under § 4A1.3(b)(1) stating, "[a]ge . . . becomes relevant when it causes a defendant's criminal history score significantly to overstate the seriousness of his criminal record." *United States v. Brown*, 985 F.2d 478, 482 (9th Cir. 1993). Several other courts across the country have elaborated upon the holding in *Brown*, addressing additional factors that a sentencing court should take into account when evaluating a variance in criminal history. *See United States v. Shoupe*, 988 F.2d 440, 447 (3rd Cir. 1993) (age and immaturity of the defendant at the time of prior offenses, the closeness in time of those offenses, and the age of those offenses in relation to the commission of the instant offense relevant to a court's analysis of a § 4A1.3(b)(1) variance); *see also United States v. Hammond*, 240 F.Supp.2d 872, 879 (E.D. Wis. 2003) (circumstances of prior offenses relevant and circumstances of the defendant's life at the time of the prior

---

[2] Mr. Houston separately argues that his conviction in the District of Minnesota should not be counted as criminal history, but rather relevant conduct per U.S.S.G. § 2E1.1 cmt n.4 in section B infra.

offenses are relevant factors to determine whether a variance is appropriate.) In Mr. Houston's case these factors support a variance to criminal history category III.

### 1. Mr. Houston Was Young and Immature at the Time of the Prior Convictions.

The six prior offenses that are included in Mr. Houston's criminal history calculation are clustered. These convictions occurred when Mr. Houston was between the ages of fifteen and twenty five. That Mr. Houston's actions as a fifteen-year-old, nearly thirty years ago, are included in his criminal history is patently unfair. Mr. Houston is a forty three-year-old man and has lived three decades since his juvenile conduct. Further, Mr. Houston must not be judged here by his actions as a young teenager or young-adult. Mr. Houston's childhood was not filled with opportunity and guided by mentorship. Rather, Mr. Houston grew up of 54th street, in the middle of Broadway Gangster Crip territory, albeit on a "safe street." However, Mr. Houston was raised in a community that was controlled and influenced by gangs. *See* PSR ¶ 103; *see also* Dkt # 1305, Fist Superseding Indictment pg. 6. ("The Broadway Crips is a multi-generational gang that originated in the 1970's and claimed a territory in South Los Angeles, California, which was created, at least in part, as a way for members to protect themselves from other African American gangs in the area.") Additionally, Mr. Houston grew up with an absent drug-addicted father, his mother held Mr. Houston's household together by constantly working. As a result Mr. Houston's mother could not be at home to supervise and guide Mr. Houston. PSR ¶ 102. Because of this precarious situation Mr. Houston was supervised by his older sister, Elaine, who is six years older than Mr. Houston. PSR ¶ 102. With little guidance Mr. Houston dropped-out of school, and as he puts it "he began making all the wrong decisions." PSR ¶ 103. Mr. Houston's poor decisions reached a pinnacle in 1999 when he was involved in large-scale cocaine and cocaine base distribution in Minnesota. PSR ¶ 74. Compare Mr. Houston's current criminal conduct since his release from federal prison, after serving a fifteen-and-half-

year sentence: Mr. Houston was selling small street-level amounts of crack cocaine, and pills.

### 2. Mr. Houston's Addiction to Drugs and Alcohol Contributed Significantly to His Prior Conduct.

Much of Mr. Houston's prior criminal history occurred during his late teens through his mid-twenties when his lack of maturity was exacerbated by drug and alcohol abuse. Mr. Houston began abusing marijuana, cocaine, and alcohol on a daily basis when he was eighteen years old. PSR ¶¶ 121 n.4, 122, 123. For instance, Mr. Houston's burglary conviction occurred at the same time that he began abusing cocaine on a daily basis. During that time Mr. Houston was purchasing $50 worth of cocaine per day. PSR ¶ 123. Further, Mr. Houston's driving under the influence convictions, both occurring within the same year, speak for themselves: at this time in his life Mr. Houston was heavily abusing drugs and alcohol. PSR ¶¶ 72, 73. However, this dangerous driving conduct has ceased. Since Mr. Houston's release from federal prison, he has not been accused of, or convicted of, drunk driving. Further, Mr. Houston recognizes that he is an addict. Indeed, during his interview Mr. Houston freely admitted that he still uses drugs, and indicated that he is interested in treatment to the United States Probation Office. PSR ¶ 126.

### 3. Many of Mr. Houston's Conviction are Relatively Petty Offenses.

The government may argue that the Mr. Houston's conviction for child abandonment is a serious matter that cannot be ignored because the crime involved a child. If such an argument is raised it would ordinarily have some strength. However, the nature of Mr. Houston's prior conviction initially resulted in summary probation, and included an order to seek employment. Further, the matter was a misdemeanor offense, where no jail time was initially imposed. PSR ¶ 68; *see also* Exhibit A, Minutes from 7CR11965. Mr. Houston only received a ninety-day sentence in that case after being convicted in the District of Minnesota for conspiracy to distribute

cocaine and cocaine base, he was not sentenced to jail time for conduct underlying his misdemeanor conviction.

The rest of Mr. Houston's dated criminal convictions are relatively petty and include a twenty-year-old conviction for driving while his license was suspended. As explained in greater detail below, the inclusion of Mr. Houston's federal conviction for conspiring to distribute cocaine and cocaine base in Minnesota in Mr. Houston's criminal history creates an absurd result in the advisory guideline calculation. The conduct in Minnesota is part of the underlying conduct that led to the counts of conviction in this case. Additionally, Mr. Houston's Minnesota conviction is the single greatest driving factor in determining both base offense levels for counts one and twelve of the indictment, and also serves as the conviction that predicates the 21 U.S.C. § 851 information in this case.

A true calculation of Mr. Houston's criminal history, and propensity to commit future crimes, must not include twenty to thirty-year-old convictions occurring when Mr. Houston was in his late-teens to mid-twenties. Especially where these crimes occurred very close in time to each other, were fueled by addiction, and in some cases, were petty driving offenses. Mr. Houston is more properly in criminal history category III.

**B. The Inclusion of Mr. Houston's Prior Federal Conviction For Conspiring to Distribute Cocaine and Cocaine Base in His Criminal History Calculation and as a Basis for the Base Offense Level in this Case Warrants a Criminal History Category Variance.**

Mr. Houston's conduct in Minnesota must be excluded from the calculation of his criminal history despite this conviction's presumptive inclusion under the Sentencing Guidelines. The United States Sentencing Commission establishes a base offense level under § 2E1.1 that is either nineteen or the higher guideline of the most serious corresponding RICO act committed. See U.S.S.G. § 2E1.1(a)(1)-(2). Here, the greater base offense level is § 2D1.1 due to the conduct that led to Mr. Houston's

conviction in the District of Minnesota for violating 21 U.S.C. § 846. Mr. Houston was sentenced to fifteen-and-a-half years of custody for his role in distributing approximately 210 grams of cocaine and cocaine base. Thus, the corresponding base offense level of 24 already takes into account Mr. Houston's conduct since the quantity of cocaine base involved in the prior case is the greatest driving factor in establishing the current base offense level. Indeed, without the inclusion of the cocaine base from Mr. Houston's prior federal case, the base offense level would be nineteen--the lowest level possible under U.S.S.G. § 2E1.1--because the approximately 7.8 grams of crack cocaine, and pharmaceuticals that Mr. Houston possessed would result in a base offense level of 18 under § 2D1.1. Thus, Mr. Houston's post prison conduct would be subject to a base offense level of 19--the lowest possible offense level under the RICO guideline. After acceptance of responsibility, Mr. Houston would be subject to an advisory sentencing guideline range of 27-33 months or, 46-57 months, depending on whether this Court finds that Mr. Houston falls into criminal history category III or VI.

Here, using Mr. Houston's conduct in Minnesota to establish his base offense, his criminal history, as well as already having served a fifteen-and-a-half years prison sentence results in a triple punishment. Such a result is draconian, and unwarranted. Mr. Houston's post-prison conduct is that of a street-level drug dealer rather than a wholesale drug-distributor. Accordingly, this Court should follow commentary note four of § 2E1.1, which states:

> Certain conduct may be charged in the count of conviction as part of a "pattern of racketeering activity" even though the defendant has previously been sentenced for that conduct. Where such previously imposed sentence resulted from a conviction prior to the last overt act of the instant offense, treat as a prior sentence under § 4A1.2(a)(1) and not as part of the instant offense. This treatment is designed to produce a result consistent with the distinction between the instant

offense and criminal history found throughout the guidelines.

If this treatment produces an anomalous result in a particular case, a guideline departure may be warranted

U.S.S.G. 2E1.1 cmt n.4. In order to achieve the overarching goal of sentencing, a sentence that comports with 18 U.S.C. § 3553(a)(2), this Court must not include Mr. Houston's conviction and resulting fifteen-and-a-half year prison sentence in the criminal history computation. Mr. Houston forfeited a decade and a half of his liberty for these acts, the conduct forms a substantial part of the current offenses of convictions, and the conduct is the greatest factor that establishes the base offense level in this case, these actions must not serve to enhance his criminal history.

## III.
## THE 3553(a) FACTORS SUPPORT A SIXTY-MONTH SENTENCE

### A.  The History and Characteristics of Mr. Houston

Mr. Houston's offenses and the narrative which led to the conduct are all too common. Mr. Houston grew up in a single-parent home, in a neighborhood dominated and surrounded by the Broadway 52 Crips. ¶¶ 102, 103. Mr. Houston's father was an addict during much of Mr. Houston's childhood, and although Mr. Houston grew up on a "safe street," he grew up in a climate of drugs and gun violence. Unsurprisingly, Mr. Houston became a member of the Broadway 52 Crips as a teenager.

Despite getting involved with the Broadway 52 Crips at a young age, Mr. Houston has a history of hard work and success both in and out of the prison setting. However, the negative influences in Mr. Houston's life, his issues with addiction, and up until this point, his inability to confront and correct these issues have brought Mr. Houston before the Court. Indeed, prior to being arrested, Mr. Houston was successfully working in construction. He is a member of Local 2361, a carpenter's union, and has substantial experience in drywall and framing. For instance, Mr. Houston worked on the recent rehabilitation of Dodger Stadium; he also worked as

both a metal framer and wood framer, and was steadily employed until his recent incarceration. PSR ¶¶ 131-135.

Mr. Houston's exhibits the same strong work-ethic while he is incarcerated. Rather than sitting idle while in prison Mr. Houston worked consistently as a floor-buffer and as an emergency plumber while he was in prison for a decade-and-a-half. PSR ¶¶ 136-137. Similarly, Mr. Houston has jumped at every opportunity to enrich himself while he has been incarcerated. Mr. Houston attended a mock job fair while he was incarcerated at FCI Lompoc, and he has been taking business and marketing classes during his current incarceration. PSR ¶ 129. Mr. Houston has both the drive and the ability to achieve. He is by no means, incorrigible or a hardened criminal. Rather, Mr. Houston must confront his criminal conduct, his immaturity, and truly focus on his positive traits in order exploit his true potential.

In order to achieve this goal Mr. Houston must also battle his issues addiction as well as distance himself from the most damaging influences in his life: the members of Broadway 52 Crips and the neighborhood where he was raised. A sixty-month sentence, a RDAP recommendation, and the stipulated condition of supervised release requiring Mr. Houston to stay-away from Broadway 52 Crips areas will achieve these goals. Mr. Houston will finally have the tools and the Court-mandated motivation to fully and successfully reintegrate into society upon his release from prison.

Mr. Houston's working past, both in and out of prison, show that has the tools and work ethic in place to succeed. The sole question is whether Mr. Houston can extricate himself from negative influences and fight the temptation to lead a half productive life while also engaging in criminal conduct. A sixty-month sentence is both a significant punishment and spur to correct Mr. Houston's behavior. The requested sentence is significant in that Mr. Houston has already spent a substantial amount of time in custody as a result of the instant conduct. Sixty additional months will serve as a sharp and painful reminder that Mr. Houston must remain crime free or else risk further forfeiting his life to extended prison sentences. Furthermore, the

stipulated condition of supervised release requiring Mr. Houston to stay away from Broadway Crip territory will protect the public from Mr. Houston and allow his positive attributes to flourish. Mr. Houston will be free from negative influences, the opportunity to earn "fast money" through selling drugs, and instead will focus on his family and making honest living through hard work.

### B. The Nature and Circumstances of Mr. Houston's Offenses Support a Sixty-Month Sentence

Mr. Houston's participation in Broadway 52 Crips has been limited to drug trafficking. Indeed, the conduct in this case (which also includes conduct from his federal matter in Minnesota) is limited to the sale of cocaine, cocaine base, pills, and marijuana. In Minnesota, in 1999, Mr. Houston along with others would receive and store wholesale amounts of cocaine and cocaine base in a freezer at his apartment. Mr. Houston would then distribute these drugs to other Broadway Crips dealers. PSR ¶ 74. After serving a lengthy prison sentence for this conduct, Mr. Houston sold 7.8 grams of crack cocaine to a confidential informant, possessed pharmaceuticals, and marijuana for sale at his home. PSR ¶¶ 27, 32. Mr. Houston also ordered street level amounts of crack cocaine, and participated in Broadway Crips meetings where he discussed violence. PSR ¶¶ 26, 28-29.

However, Mr. Houston's discussion of violence at Broadway Crips meetings is in stark contrast to Mr. Houston's actual actions when faced with the real threat of violence. Despite Mr. Houston's statements during meetings, he actively sought to avoid violence. When Mr. Houston learned that the Broadway Crips intended to kill one of its own members, unbeknownst to Mr. Houston a confidential informant, Mr. Houston warned this individual of the impending danger. Mr. Houston told the informant that the informant needed to leave the neighborhood immediately. Mr. Houston had no clue that his actions were being documented by the government when he warned this individual. Rather, Mr. Houston's actions were altruistic, he attempted

to protect another person's life. *See* Exhibit B, FBI 302-Report; *see also* PSR ¶ 41 ("BGC member #1 reported that Houston warned BGC member # 1 of a future attack on the life of theBGC member #1 and his brother.)

Mr. Houston's post-prison drug-dealing in this case was largely fueled by Mr. Houston's long standing poly-substance abuse and addiction. Mr. Houston sums up his behavior best, stating that he had "one foot on the right side of life and the other foot on the wrong side of life." *See* Houston Letter. Initially, Mr. Houston had made substantial efforts to rehabilitate himself after his release from federal prison, he had obtained full employment and was attempting to mend strained relationships with his family members. However, Mr. Houston was also heavily using alcohol, marijuana, cocaine, and ecstasy heavily during this time period. Mr. Houston's union and non-union construction work allowed him to support himself, but his wages did not support his addiction. As a result he began to sell street-level amounts of crack cocaine, pills, and marijuana. These actions, along with his membership and participation in gang meetings compromise the entirety of Mr. Houston's post-prison conduct.

A sixty-month sentence punishes Mr. Houston's post release conduct, and also addresses Mr. Houston's failure to rehabilitate after serving a substantial prison sentence. Here, sixty months in custody is a significant deterrent. As a result of his conduct Mr. Houston will have been incarcerated for twenty-one years in total. Mr. Houston is forty three years-old, as a result of his conduct he will have spent nearly half of his life in federal institutions. Accordingly, a sixty-month sentence provides a significant punishment for the underlying conduct. A sixty-month sentence is also a strong deterrent against future transgressions, Mr. Houston cannot afford to lose more of his life to incarceration.

**C. A Sixty-Month Sentence in This Case is Strong Punishment and Deterrent**

A sentence of sixty-months with a recommendation that Mr. Houston participate in RDAP, is an appropriate, balanced, and fair sentence given Mr. Houston's conduct. A sixty-month sentence is three months below a high-end sentence, should the Court

1  adopt Mr. Houston's requested variance.  A sentence near the high-end of criminal
2  history category III at base offense level twenty two recognizes the seriousness of Mr.
3  Houston's conduct, especially his continued conduct after his release from prison.  As a
4  result of the most serious conduct committed as part of both the RICO and drug
5  conspiracies Mr. Houston has already been incarcerated for over fifteen years.  Setting
6  Mr. Houston's previous conduct in Minnesota aside, his post prison-release conduct
7  would not result in a five year mandatory minimum, and the corresponding base
8  offense level would be nineteen.  In isolation this conduct alone would not warrant a
9  high-end sentence either.  Thus, an additional five years in custody is a significant
10 punishment.  The sentence balances his past prison sentence, while also providing a
11 more severe sentence than what would be expected for Mr. Houston's post-release
12 conduct.  Accordingly, sixty months in prison addresses and punishes Mr. Houston's
13 continued criminality and his inability to reform upon release from prison.
14 / / /

## IV.
## CONCLUSION

There is no need to warehouse Mr. Houston for an extended period of time. He has the ability to succeed, but must be punished and deterred for his shortcomings. A sixty month sentence with a drug treatment component achieves the perfect tension of punishment, deterrence, protection of the public, while providing Mr. Houston additional rehabilitative tools. The requested sentence also recognizes that Mr. Houston has demonstrated that he has the character and the ability to turn his life around upon release. Accordingly, Mr. Houston respectfully requests that this Court sentence him to a total sentence of sixty-months in custody, XXX years of supervised release, and that the Court make a recommendation that Mr. Houston participate in the Bureau of Prison's RDAP drug treatment program.

Respectfully submitted,

HILARY L. POTASHNER
Federal Public Defender

DATED: October 17, 2016                By */s/ David Joseph Sutton*
                                          DAVID JOSEPH SUTTON
                                          Deputy Federal Public Defender

# PROOF OF SERVICE

I, **Rosalinda Lozano**, declare that I am a resident or employed in Los Angeles County, California; that my business address is the Office of the Federal Public Defender, 321 East 2nd Street, Los Angeles, California 90012-4202, Telephone No. (213) 894-2854; that I am over the age of eighteen years; that I am not a party to the action entitled above; that I am employed by the Federal Public Defender for the Central District of California, who is a member of the Bar of the State of California, and at whose direction I served a copy of:

DEFENDANT JERMAIN HOUSTON POSITION RE: SENTENCING; EXHIBITS

on the following individual(s) by:

[X] Placing same in a sealed envelope for collection and interoffice delivery addressed as follows:

[ ] Placing same in an envelope for hand delivery addressed as follows:

[ ] Placing same in a sealed envelope for collection and mailing via the United States Post Office addressed as follows:

[X] Via E-mail addressed as follows:

Pamela Chen
United States Probation Officer
Pamela_Chen@cacp.uscourts.gov

This proof of service is executed at Los Angeles, California, on October 17, 2016.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

*Rosalinda Lozano* .
**Rosalinda Lozano**

14