1                    UNITED STATES DISTRICT COURT

2          CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

3             HONORABLE S. JAMES OTERO, U.S. DISTRICT JUDGE

4

5   UNITED STATES OF AMERICA,

6                   Plaintiff,

7       vs.                              Case No. CR 14-338(B)-SJO

8   MARQUIS SHAW, JOSHUA PEREZ AND
    ANTHONY INGRAM,
9
                    Defendants.
10  _____/

11

12

13               REPORTER'S TRANSCRIPT OF TRIAL PROCEEDINGS
                              TRIAL DAY 1
13                    TUESDAY, FEBRUARY 6, 2018
                              12:30 P.M.
14                     LOS ANGELES, CALIFORNIA

15

16

17

18

19

20

21

22

23   _____

24            TERRI A. HOURIGAN, CSR NO. 3838, CCRR
               FEDERAL OFFICIAL COURT REPORTER
               350 WEST FIRST STREET, ROOM 4311
25             LOS ANGELES, CALIFORNIA  90012
                        (213) 894-2849


                      UNITED STATES DISTRICT COURT

```
 1                      APPEARANCES OF COUNSEL:

 2

 3    FOR THE PLAINTIFF:

 4        NICOLA T. HANNA
          United States Attorney
 5        BY:  MAX SHINER
               WILSON PARK
 6             ARON KETCHEL
          Assistant United States Attorneys
 7        United States Courthouse
          312 North Spring Street
 8        Los Angeles, California  90012

 9

10    FOR THE DEFENDANT:  MARQUIS SHAW

11        LAW OFFICES OF RICHARD W. RAYNOR
          BY:  RICHARD W. RAYNOR
12        Attorney at Law
          800 South Pacific Coast Highway, Suite 8-284
13        Redondo Beach, California  90277

14    FOR THE DEFENDANT:  JOSHUA PEREZ

15        LAW OFFICES OF HUMBERTO DIAZ
          BY:  HUMBERTO DIAZ
16        Attorney at Law
          714 West Olympic Boulevard, Suite 450
17        Los Angeles, California  90015

18    FOR THE DEFENDANT:  ANTHONY INGRAM

19        EISNER GORIN LLP
          BY:  ALAN EISNER
20        Attorney at Law
          14401 Sylvan Street, Suite 112
21        Van Nuys, Caifornia  91401

22

23

24

25
```

```
 1          LOS ANGELES, CALIFORNIA; TUESDAY, FEBRUARY 6, 2018

 2                            12:30 P.M.

 3                            --oOo--

 4

 5          THE COURT:  It appears we're all ready, would you

 6   allow the jurors to come back in, please?

 7                      (Brief recess.)

 8          THE COURTROOM DEPUTY:  It appears everyone is back

 9   now, so I will bring the judge out.

10      Please remain seated and come to order.  This Court is

11   again in session.

12          THE COURT:  Okay.  We're back on the record in the

13   United States versus Ingram, et al matter.

14      We have all perspective jurors present and we are

15   continuing with the questioning of the jury.

16      Based on the questions I have asked this morning, are

17   there any additional responses that any of the prospective 18

18   members in the jury box would like to add or offer?  Any

19   additional responses?

20      Yes, we have Ms. McCormack.

21          PROSPECTIVE JUROR:  One of the programs that I did

22   was with the City of Santa Monica.  I did work with some young

23   adults who were gang-involved and/or affiliated.

24          THE COURT:  This is a program with the City of Santa

25   Monica?
```

```
 1                    PROSPECTIVE JUROR:  Yes.
 2               THE COURT:  How long ago was what?
 3                    PROSPECTIVE JUROR:  That was probably back in 2003
 4     to 2005.
 5               THE COURT:  What was the nature of your involvement?
 6                    PROSPECTIVE JUROR:  I was a case manager.
 7               THE COURT:  What was the program?
 8                    PROSPECTIVE JUROR:  It was a trade intern program,
 9     so they learn a trade and try to get them employment.
10               THE COURT:  How long did you participate in that?
11                    PROSPECTIVE JUROR:  It was for about three or four
12     years.
13               THE COURT:  The age group involved?
14                    PROSPECTIVE JUROR:  Anywhere from 18 to 30.
15               THE COURT:  And do you recall the names of the gangs
16     that may have been involved in that program?
17                    PROSPECTIVE JUROR:  Santa Monica.
18               THE COURT:  Is there anything that you heard or
19     discussed or learned that would influence your ability to -- or
20     make it difficult for you to be fair in this case?
21                    PROSPECTIVE JUROR:  No.
22               THE COURT:  Did you have contact with law
23     enforcement officers in that program?
24                    PROSPECTIVE JUROR:  Some, yes.
25               THE COURT:  And were these officers who worked in
```

```
1    any type of gang detail?
2              PROSPECTIVE JUROR:  No, not at the time.  They
3    worked at a substation in the vicinity.
4              THE COURT:  Okay.  As I understand, the goal of the
5    program was to provide skill sets to allow persons
6    participating to acquire employment.
7              PROSPECTIVE JUROR:  Correct.
8              THE COURT:  Was it successful overall?
9              PROSPECTIVE JUROR:  For most, but not all.
10             THE COURT:  Okay.  Thank you.
11        Any additional information from anyone?
12        I asked previously if there was anyone who has ever had a
13   bad experience with law enforcement officer or a law
14   enforcement agency, so let me just expand the question.
15        Is there anyone who has any negative viewpoints or
16   opinions or feelings regarding law enforcement officers or law
17   enforcement agencies, just general views.
18        Anyone of the 18 prospective jurors?
19        No hands are raised.
20        Is there anyone who has ever lodged a complaint, again,
21   this applies to yourself, any family members or close friends,
22   lodged a complaint or any type of lawsuit, a complaint being a
23   verbal complaint or written complaint involving a law
24   enforcement officer or law enforcement agency?
25        Okay.  No hands are raised.
```

1          I read from the joint statement of the case and several of

2     the charges or counts include sales and possession and

3     distribution of controlled substances.

4          Is there anyone who has any prior experience involving

5     controlled substances of any type?  Crack cocaine, cocaine,

6     methamphetamine, any other type of controlled substances,

7     marijuana, anything of that sort?

8          Let's start with the back row.

9          We go to Juror No. 1, Ms. Mercer.  I'm assuming, that is

10    in conjunction or in connection with your prior degree in --

11          PROSPECTIVE JUROR:  Actually, no.  My own brother

12    was addicted and we had -- I had to get him help, and he is now

13    recovered for quite a few years, but my doctor also had me at

14    one point on a combination of Theophyline and Ephedrine, so

15    that is my experience with it.

16          THE COURT:  I'm not sure, what substances --

17    controlled substances were you taking?

18          PROSPECTIVE JUROR:  Theophyline and Ephedrine.

19          THE COURT:  So I'm not sure, were you concerned

20    about whether it was appropriate for the doctor to prescribe

21    the substances?

22          PROSPECTIVE JUROR:  It was basically speed, which

23    is, I understand another term for cocaine or something along

24    that line, or does something similar to that.

25          THE COURT:  Yeah, and this was treating you for a

1  medical condition?

2          PROSPECTIVE JUROR:  Yes.

3          THE COURT:  How long ago was that?

4          PROSPECTIVE JUROR:  About 16 years ago.

5          THE COURT:  And your brother who was -- had a

6  substance abuse issue, how long ago was that?

7          PROSPECTIVE JUROR:  Wow, when do they take you out

8  of the military?  He has been married 15 years, so it's got to

9  be 20 years or plus.

10          THE COURT:  Was he ever arrested?

11          PROSPECTIVE JUROR:  No.

12          THE COURT:  And the substance involved was what?

13          PROSPECTIVE JUROR:  I believe it was cocaine or

14  crack.

15          THE COURT:  Did you ever see him use any substance?

16          PROSPECTIVE JUROR:  No.

17          THE COURT:  Did -- were you ever around him when he

18  was under the influence?

19          PROSPECTIVE JUROR:  Yes.

20          THE COURT:  And again, is there anything about those

21  experiences that would make it difficult for you to be a juror

22  in this proceeding here?

23          PROSPECTIVE JUROR:  No.

24          THE COURT:  Thank you.

25        Anyone else in the back row?  Front row?  We have one on

```
 1   the front row.
 2        We go to Ms. Mathews.
 3             PROSPECTIVE JUROR:  I have been in recovery.  I have
 4   been sober for 33 years off of alcohol and drugs.
 5             THE COURT:  That's quite a feat, so congratulations.
 6   Any substance related to the substances I have mentioned here
 7   so far?
 8             PROSPECTIVE JUROR:  Yes.
 9             THE COURT:  And were you ever arrested, charged, or
10   convicted of possession?
11             PROSPECTIVE JUROR:  No.
12             THE COURT:  Okay.  Did you have acquaintances or
13   friends who were arrested, charged, or convicted?
14             PROSPECTIVE JUROR:  Yes.
15             THE COURT:  And do you have an opinion one way or
16   the other as to whether they were treated fairly by law
17   enforcement?
18             PROSPECTIVE JUROR:  I'm sure they deserved it.
19             THE COURT:  Okay.  Any part of your experience that
20   would make it difficult for you to be a juror here?
21             PROSPECTIVE JUROR:  No.
22             THE COURT:  You could be fair to the government and
23   also fair to the defendants?
24             PROSPECTIVE JUROR:  Yes.
25             THE COURT:  Anyone else?  We go to Mr. Garman.
```

1              PROSPECTIVE JUROR:  Just that my brother uses

2    marijuana frequently.  It's one of the controlled substances.

3              THE COURT:  Does he have a medical marijuana card

4    prescription, if you know?

5              PROSPECTIVE JUROR:  To the best of my knowledge, he

6    has had one for the last many years.  Does he currently?  I

7    don't know.

8              THE COURT:  Do you think that that matter or the

9    fact that he is using or possessing marijuana would influence

10   your decision-making here?

11             PROSPECTIVE JUROR:  No.

12             THE COURT:  Is there anyone who has any strong

13   views, opinions, one way or the other, regarding laws

14   concerning or the possession, regulation, distribution, sales

15   of controlled substances -- anyone who has strong opinions one

16   way or the other.  Back row, front row?

17        No hands are raised.

18        So I ask generally regarding prior experience with

19   firearms, either handguns or long guns, is there anyone who has

20   had any negative experiences you have not otherwise disclosed

21   involving firearms?  Any negative experience involving firearms

22   you have not otherwise exposed?

23        Is there anyone who has -- I need the juror who just

24   arrived.  I'm going to need your name, please?

25             PROSPECTIVE JUROR:  Bob Pauly.

1          THE COURT:  Thank you.  Any strong views one way or

2    other regarding laws regulating the use, possession,

3    distribution, sales of firearms.

4        Is there anyone who has strong views one way or the other?

5        We have Ms. Cohen with her hands up.

6          PROSPECTIVE JUROR:  I have no questions.

7          THE COURT:  Okay.  Is there anyone who belongs to

8    any organizations such as the NRA or other organizations that

9    takes positions regarding laws concerning firearms?

10       No hands raised.

11       Is there anyone -- is there anyone on the jury, who, if

12   you have otherwise not disclosed -- who has ever used a firearm

13   or fired a firearm?

14       Okay.  We have Juror No. 1, Ms. Mercer.

15       Would you tell us about that experience, please?

16          PROSPECTIVE JUROR:  I was quite young.  My uncle was

17   a police officer years ago.  He is now retired.

18       But when we were up at the cabin, he taught us -- he let

19   us shoot his police gun, but that is the only time that I have

20   done that.  That was probably -- I was probably 5 or 6.

21          THE COURT:  Okay.  So when you say "use," did you

22   shoot it yourself?

23          PROSPECTIVE JUROR:  Yes.

24          THE COURT:  It was a handgun?

25          PROSPECTIVE JUROR:  Yes.

1           THE COURT:  Do you recall whether it's a revolver or

2    not?

3           PROSPECTIVE JUROR:  No.  It was very strong and sent

4    me down because I was so little.

5           THE COURT:  Anyone else in the back row?  We go all

6    the way over to Ms. Buchanan.

7           PROSPECTIVE JUROR:  Yeah.  As a family, we have

8    always been -- we belong to the Winchester Gun Club with my

9    husband and my sons -- not always -- but as they were older, my

10   husband also is a range assistant up there, so we just practice

11   safe target practice.

12          THE COURT:  And so what firearms do you use?

13          PROSPECTIVE JUROR:  A .22.  And a rifle that is

14   just, you know, like a .22 rifle, is what it is.  It's just

15   small bullets for target practice.

16          THE COURT:  Okay.  Thank you.

17       Anyone else on the back row?

18       Well, Mr. Teasley, you have disclosed that you have been

19   in the military and you have training.

20       Do you have other experience with firearms?

21          PROSPECTIVE JUROR:  Yes.  Your Honor.

22          THE COURT:  Would you pass that to Mr. Teasley,

23   please?

24          PROSPECTIVE JUROR:  Yes, I have one.

25          THE COURT:  You have a firearm?

```
 1                PROSPECTIVE JUROR:  Yes, Your Honor.

 2                THE COURT:  Okay.  And then we had more responses

 3   down there.

 4                PROSPECTIVE JUROR:  Just with a group of friends to

 5   the LAX Firing Range to learn.

 6                THE COURT:  The LAX Firing Range?

 7                PROSPECTIVE JUROR:  Yes.

 8                THE COURT:  Are you talking about the airport?

 9                PROSPECTIVE JUROR:  It's near the airport.

10                THE COURT:  Is it a law enforcement firing range or

11   a private?

12                PROSPECTIVE JUROR:  I think it's private.

13                THE COURT:  You have been down there to fire

14   weapons?

15                PROSPECTIVE JUROR:  Yes.  Just once.

16                THE COURT:  Handgun?

17                PROSPECTIVE JUROR:  Yes.

18                THE COURT:  Was it indoor or outdoor?

19                PROSPECTIVE JUROR:  Indoor.

20                THE COURT:  And do you recall what type of weapon

21   you used?

22                PROSPECTIVE JUROR:  No.

23                THE COURT:  Semiautomatic or revolver; do you

24   remember?

25                PROSPECTIVE JUROR:  Semiautomatic.
```

1          THE COURT:  Thank you.  Anyone else?

2      We go to the back row, please, let's start -- continue

3  with the back row.

4          PROSPECTIVE JUROR:  Just from the Boy Scouts, and

5  you can imagine how long ago that was.

6          THE COURT:  Okay.

7          PROSPECTIVE JUROR:  A .22 rifle, and a .38 handgun.

8          THE COURT:  Any aspect of that experience that would

9  influence your decision-making here?

10          PROSPECTIVE JUROR:  No.

11          THE COURT:  Okay.  Anyone else in the back row?

12          PROSPECTIVE JUROR:  I also have a .38 and a .22.

13          THE COURT:  Okay.  Let's move to the front row, and

14  we go to Mr. Garman again.

15          PROSPECTIVE JUROR:  I own a 9 mm handgun.

16          THE COURT:  I assume you have used it?

17          PROSPECTIVE JUROR:  Yes.

18          THE COURT:  For target practice?

19          PROSPECTIVE JUROR:  Target practice in Ventura

20  County.

21          THE COURT:  Anyone else?

22      Is there anyone, yourself, family members, or close

23  friends who has ever been a member of any type of street gang

24  whether it's an associate-type membership or actually a member

25  of a gang?

14

1           Anyone who has ever been a member, yourself, or have

2     family members or close friends?

3           No hands are raised.

4           If you have not otherwise disclosed, is there anyone who

5     has ever had any type of negative experience with a gang member

6     or a gang?  Any negative experience with a gang member or a

7     gang?

8           No hands are raised.

9           The case here involves a multi-year investigation by

10    federal law enforcement officers, including the FBI, and the

11    FBI, I think, in recent weeks, months, has been in the news a

12    lot.

13          Is there anyone who has ever heard or read anything that

14    has influenced your viewpoints regarding the Federal Bureau of

15    Investigations one way or the other?

16          Does anyone have any negative experiences with the FBI?

17          No hands are raised.

18          I believe -- one of the government witnesses in this case,

19    I believe, it's Mr. Hamilton, Special Agent Hamilton, Special

20    Agent Hamilton, I believe has prior employment with CIA.

21          Is there anyone who has negative views or views one way or

22    the other regarding the CIA?

23          No hands are raised.

24          The investigation in this case involved the use of various

25    techniques -- investigation techniques including wiretaps, the

```
1    use of video, cameras, audio recordings, the use of undercover
2    agents, the use of informants, the use of other investigative
3    techniques.
4        Is there anyone who believes or feels that the government
5    should not be allowed to use these types of techniques to
6    investigate the criminal activity?
7        Does anyone have strong views on that?
8        No hands are raised.
9        The investigation also included recordings that were
10   secret video recordings and audio recordings and GPS tracking.
11       Does anyone have any concerns about those types of
12   techniques to investigate criminal activity?
13       No hands are raised.
14       Is there anyone who has ever applied to be employed with
15   any law enforcement agency -- applied for employment or has
16   been employed with any law enforcement agency involving
17   yourself, close family members, or close friends?
18       Back row, front row?
19       We go to Juror Number 12.  Would you pass the microphone
20   please, Ms. McCormack.
21            PROSPECTIVE JUROR:  My mother worked in law
22   enforcement for 30 years.
23            THE COURT:  In what capacity?
24            PROSPECTIVE JUROR:  As an officer.  It was
25   part-time, a small town in Massachusetts.
```

```
 1              THE COURT:  Were they a local city police force?

 2              PROSPECTIVE JUROR:  A town.

 3              THE COURT:  Town police force?

 4              PROSPECTIVE JUROR:  Yeah.

 5              THE COURT:  Is there anything that you saw discussed

 6   that would influence your decision-making here?

 7              PROSPECTIVE JUROR:  No.

 8              THE COURT:  You are going to hear from law

 9   enforcement officers in the case and federal agents in the

10   case.

11       Do you think you may be biased in favor of law enforcement

12   because of the relationship between yourself and your mother?

13              PROSPECTIVE JUROR:  No.

14              THE COURT:  And her being a law enforcement officer?

15              PROSPECTIVE JUROR:  No.

16              THE COURT:  None.  I believe we have a couple of

17   hands -- we have a hand raised.  Ms. Buchanan.

18              PROSPECTIVE JUROR:  My husband was a police officer

19   before I met him.  I don't know if that matters.  It was before

20   we were married.

21              THE COURT:  What agency, do you know?

22              PROSPECTIVE JUROR:  It was Santa Barbara Police

23   Department.

24              THE COURT:  How long ago?

25              PROSPECTIVE JUROR:  It was 1970 -- it would be the
```

1  early 80s, maybe.

2            THE COURT:  Okay.  Did you know him at the time?

3            PROSPECTIVE JUROR:  I didn't know him.  That's why I

4  didn't think about it earlier.  It was before I knew him.

5            THE COURT:  Well, would that fact make it difficult

6  or influence your decision-making here?

7            PROSPECTIVE JUROR:  No.

8            THE COURT:  Thank you.

9      We go all the way over to Juror No. 1, Ms. Mercer.  I need

10  the microphone, please.

11            PROSPECTIVE JUROR:  I work with deputy sheriffs in

12  the courthouse, so some of them are close friends.

13            THE COURT:  Okay.  When you say "close friends," do

14  you socialize at lunch or after work?

15            PROSPECTIVE JUROR:  Yes.

16            THE COURT:  Both.  And do you -- is there anything

17  that is ever discussed that would influence your

18  decision-making here?

19            PROSPECTIVE JUROR:  No.

20            THE COURT:  Can you set that aside and decide the

21  case based on the evidence received and the law the Court

22  instructs?

23            PROSPECTIVE JUROR:  Yes.

24            THE COURT:  So, I think I asked whether anyone has

25  ever been a victim of any type of crime of violence, and that

```
 1    information has been disclosed.
 2         Has anyone ever witnessed a criminal act involving
 3    violence?
 4         Has anybody been a witness to a criminal act involving
 5    violence?
 6         No hands are raised.
 7         Has anyone ever had a handgun or other type of firearm
 8    drawn on them where someone has pointed a weapon at you that
 9    you have not otherwise disclosed.  Any other type of weapon
10    pointed or brandished, if you have not otherwise disclosed?
11         Ms. Mercer?
12             PROSPECTIVE JUROR:  One of my friend's brother
13    jokingly held one towards my head one evening.
14             THE COURT:  And what was your reaction?
15             PROSPECTIVE JUROR:  I left.  I was scared.  I left
16    the house as soon as it happened.
17             THE COURT:  Did you report it to anyone?
18             PROSPECTIVE JUROR:  No.
19             THE COURT:  Was your brother present?
20             PROSPECTIVE JUROR:  No.  It was my girlfriend's
21    brother, so she was present, and it was Halloween evening, and
22    he pulled one of his guns and stuck it next to my head.
23             THE COURT:  Okay.  Anyone else?  Has anyone ever
24    participated or belonged to any organization whose purpose or
25    mission is to keep the neighborhood safe?
```

1        Has anyone belonged to any type of organization of that

2   nature?  Yes?

3        Mr. Teasley?

4            PROSPECTIVE JUROR:  Neighborhood watch?

5            THE COURT:  Yes.  What is your involvement with

6   neighborhood watch?

7            PROSPECTIVE JUROR:  Just being aware.

8            THE COURT:  Have you ever been involved in

9   organizing a neighborhood watch yourself?

10           PROSPECTIVE JUROR:  It was already organized.  It

11  was organized when I got there.

12           THE COURT:  Do you have regular meetings?

13           PROSPECTIVE JUROR:  Yes.

14           THE COURT:  In any of those meetings, are there any

15  discussions regarding burglaries or robberies?

16           PROSPECTIVE JUROR:  Yes.

17           THE COURT:  Have any of the members of your group

18  been victims of either a burglary or robbery?

19           PROSPECTIVE JUROR:  I was.

20           THE COURT:  And did you disclose that already?

21      What happened to you?

22           PROSPECTIVE JUROR:  We were away, and someone broke

23  in.

24           THE COURT:  So you were burglarized?

25           PROSPECTIVE JUROR:  Yes, burglarized.

**UNITED STATES DISTRICT COURT**

```
 1              THE COURT:  Did you report that to the police?

 2              PROSPECTIVE JUROR:  Yes.

 3              THE COURT:  And do you feel or believe that that

 4    would influence your decision-making here?

 5              PROSPECTIVE JUROR:  No.

 6              THE COURT:  Anyone else been a victim of burglary

 7    where your home is burglarized?

 8         Ms. Mercer?

 9              PROSPECTIVE JUROR:  I was an elected official for

10    the neighborhood counsel for a year.

11         I worked with the neighborhood in the specific area with

12    different issues and one was crime.

13              THE COURT:  How long ago was that?

14              PROSPECTIVE JUROR:  Six years ago.

15              THE COURT:  Any part of that experience you believe

16    the lawyers should know about to determine whether or not you

17    should be a juror in this case?

18              PROSPECTIVE JUROR:  No.

19              THE COURT:  I just wonder, so I am going to repeat

20    or ask again a couple of questions that I have asked this

21    morning, and again, this applies to yourself, members of your

22    family, or close friends, so if your memory has been refreshed,

23    please provide the information.  Error on the side of caution

24    by disclosing everything.

25         Is there anyone who has ever been arrested, charged, or
```

1  convicted of any type of criminal offense including any type of

2  vehicle code offense, a misdemeanor vehicle code offense,

3  applying to yourself, any family members, or close friends, if

4  you have not otherwise disclosed.

5          PROSPECTIVE JUROR:  Do I understand it correctly,

6  does that include speeding tickets?

7          THE COURT:  It could.  Speeding tickets are

8  generally infractions, so the question is focused on

9  misdemeanor offenses.  If it's a reckless driving, it could be

10  a misdemeanor.

11         PROSPECTIVE JUROR:  No.

12         THE COURT:  Ms. Mercer?

13         PROSPECTIVE JUROR:  A DUI from my cousin, probably

14  18 years ago.

15         THE COURT:  Were you present when that occurred,

16  Mr. Garman?

17         PROSPECTIVE JUROR:  No.

18         THE COURT:  Is it he or she?

19         PROSPECTIVE JUROR:  He.

20         THE COURT:  Did he discuss the incident with you?

21         PROSPECTIVE JUROR:  He was in my courthouse for the

22  arraignment.  But no, he did not discuss the issue with me.

23         THE COURT:  Is there any part of that experience

24  that would influence you here?

25         PROSPECTIVE JUROR:  No.

```
1              THE COURT:  The government in this case has alleged
2     -- these are allegations again -- that the defendants are
3     members of the Five Deuce Broadway Crips gang.
4          The government alleges that this gang constitutes a
5     criminal enterprise whose members and associates engage, among
6     other things, various criminal activities, including narcotics
7     trafficking.  So those are the government's allegations in this
8     case.
9          It has to be made clear that mere membership in a gang is
10    not -- is not a crime.
11         Mere membership in a gang is not a crime.  The government
12    must establish that the Broadway Gangster Crips is a criminal
13    enterprise, and all of this will be explained to you in detail
14    in terms of the law moving forward, but mere membership in a
15    gang is not a criminal -- is not a crime.
16         Is there anyone who is concerned about their ability to
17    follow the law in that respect?
18         Is there anyone who -- involving yourself, family members,
19    or close friends who reside in any area or close to any area
20    that is what you would describe as gang-controlled territory?
21         No hands are raised.
22         Okay.  I have a couple of just final questions.
23         Please volunteer the information.  Is there any other
24    information you believe the lawyers should know about to
25    determine whether or not you should be a juror in this case
```

1    that you have not otherwise disclosed?

2         Is there any other information you believe that the Court

3    or counsel should know about in determining whether you should

4    be a juror in this case?

5         Is there any -- any additional information regarding any

6    type of medical condition you would have that could impact your

7    ability to be a juror in this case that you haven't otherwise

8    disclosed that the Court should be aware of?

9         With that, let me call counsel to sidebar.

10                          (Sidebar begins.)

11              THE COURT:  Okay.  Let's start with a follow-up

12   question.

13              MR. SHINER:  You wanted to go to through the witness

14   list, correct?

15              THE COURT:  We should do that.  Any follow-up

16   questions?

17              THE COURTROOM DEPUTY:  Excuse me, can they state

18   their names so the reporter can know who they are?

19              THE COURT:  We have a new reporter.

20              MR. SHINER:  This is Max Shiner speaking.

21              THE COURT:  So we need to have the lawyers list the

22   witnesses to be called before we get to that.  Are there any

23   additional questions or follow-up questions?

24        I would like to call Ms. Mercer to sidebar because she

25   indicated that she has a doctor's appointment this afternoon

```
 1    that she can't miss.  So I think we need to discuss that at

 2    sidebar.

 3         Okay.  Ms. Mercer, would you come to the sidebar, please?

 4              MR. RAYNOR:  Could I have just a moment to grab my

 5    computer?

 6              THE COURT:  Yes.

 7         You indicated you have a doctor's appointment this

 8    afternoon?

 9              PROSPECTIVE JUROR:  Yes.

10              THE COURT:  So, if you could tell us the nature of

11    the appointment?

12              PROSPECTIVE JUROR:  It's pulmonology.

13              THE COURT:  Is it an appointment you just must make?

14              PROSPECTIVE JUROR:  I could cancel it, but it's

15    taken six weeks to get in.

16              THE COURT:  I'm going to leave it up to you.  It

17    will be difficult to excuse everyone --

18              PROSPECTIVE JUROR:  I understand.

19              THE COURT:  -- to allow you to attend the

20    appointment at the same time.  I recognize doctor's

21    appointments can be very important, so if you are requesting to

22    be excused, I will certainly entertain that.

23              PROSPECTIVE JUROR:  It's entirely up to the staff

24    and you.

25              THE COURT:  Okay.  Then with that, thank you.
```

1        I would like to bring Ms. Valenzuela up here, in Seat

2    Number 8.  She indicated she could participate, but I'm

3    concerned she may not be able to be compensated for five weeks

4    on the jury.  Even though she said she could participate, I

5    wanted to inquire.

6        Ms. Valenzuela, will you come forward, please?

7        Just very quickly, you said you could participate.  This

8    is going to be a five-week case.

9        Does your employer compensate you for your time on the

10   jury?

11           PROSPECTIVE JUROR:  They compensate me for the first

12   week.

13           THE COURT:  So, you are not going to -- it's going

14   to be a five-week jury trial.

15           PROSPECTIVE JUROR:  I can't get fired.

16           THE COURT:  But can you participate in a case that

17   is going to last five weeks even though you are not going to be

18   compensated for that?

19           PROSPECTIVE JUROR:  It's fine.

20           THE COURT:  You can.  Thank you.

21       Then, do you wish to be heard further on this, Ms. Cohen?

22   I didn't want her to respond to additional questions.  I'm

23   concerned that her responses may influence other jurors.

24           MR. SHINER:  From the government's point of view, I

25   don't know if she's a juror that would be unfair, I would agree

 1   that she has a hardship cause.

 2          THE COURT:  Well, she also indicated that -- she

 3   raised her hand when I asked if there would be anyone who would

 4   find it difficult to follow the principles of the law,

 5   including holding the government up to the burden of proof and

 6   she had her hand raised.

 7          MR. SHAW:  We move for cause, if everyone joined.

 8          THE COURT:  Does everyone agree?

 9          MR. SHINER:  We would join for hardship.

10          THE COURT:  I will grant that for cause.  And let's

11   have counsel read the witness list.

12          MR. SHINER:  We have a cause challenge for

13   Mr. Ortiz.

14          THE COURT:  Mr. Ortiz, you cannot understand

15   everything that has been said.

16       Let's have you -- can you do it at sidebar with the

17   microphone?

18          THE COURTROOM DEPUTY:  I will get one.

19          MR. RAYNOR:  I wanted to again request that we have

20   a request that No. 4 had to do with an ex-felon still having

21   the right -- we had a voir dire question about an ex-felon

22   having the right to self-defense.  It was not -- it was

23   Question No. 4.

24                    (End of sidebar.)

25          THE COURT:  The lawyers are going to sidebar

```
 1   identify their witnesses to be called.  They are going to read
 2   a list of the names.  These are witnesses who may be called,
 3   they may not all be called.  They are potential witnesses, so
 4   the question is whether anyone recognizes any of the names that
 5   are going to be mentioned here, and we're going to start with
 6   counsel for the government?
 7          MR. SHINER:  FBI Special Agent Ross Hansberger.
 8       FBI Agent Minh Truong.
 9       Andrew Williams.
10       LAPD Detective Tommy Thompson.
11       LAPD Detective Brad Michel.
12       Los Angeles Sheriff's Department Deputy Stone.
13       Los Angeles Sheriff's Department Deputy Hernandez.
14       LAPD Officer Dadisho.
15       LASD Deputies DeJong and J. Perez.
16       Monica Muennich.
17       Jerry Steck.
18       Mark Harrison.
19       LASD Detective Phillip Guzman.
20       LASD Deputy Mario Cortez.
21       Los Angeles Sheriff's Department Investigator Vandershaff.
22       Los Angeles Sheriff's Department Eric Sieger.
23       Los Angeles Sheriff's Department Sergeant Duffy.
24       Los Angeles Sheriff's Department Kimberly Ponce.
25       Los Angeles Sheriff's Department Deputy Don Steck.
```

1        Los Angeles Sheriff's Department Deputy A. Alvarez.

2        Los Angeles Sheriff's Department Detective Rewald.

3        Los Angeles Sheriff's Department Criminalist Christine

4    Pinto.

5        David Petterez.

6        Beverly Hills Police Department Officer Dufour.

7        Los Angeles Sheriff's Department Examiner Fred Roberts.

8        Los Angeles Sheriff's Department Firearms Examiner, James

9    Carroll.

10       Los Angeles Sheriff's Department Firearms Examiner Jeff

11   Walley.

12       Coroner, Dr. Stephen Scholtz.

13       Larry Shields.

14       Vale Walker.

15       Los Angeles Sheriff's Department Sergeant Joseph Purcell.

16       Victoria Wellington.

17       Jacqueline Ann Kerrigan.

18       Antwan Collins.

19       Los Angeles Police Department Detective Chris Marsden.

20       Travone Jones.

21       Los Angeles Police Department Officer Wampler.

22       Los Angeles Police Department Officer Gamero.

23       Los Angeles Police Department Officer Gutierrez.

24       Los Angeles Police Department Officer Macias.

25       Los Angeles Police Department Sergeant Enrique Atilano.

UNITED STATES DISTRICT COURT

```
 1          Los Angeles Department Officer Lance Novak.

 2          Domingo Marcos.

 3          Alverado Martinez.

 4          Los Angeles Police Department Officer Alfred Garcia.

 5          Los Angeles Sheriff's Department Deputy Madrid.

 6          Los Angeles Police Department Officer Williams.

 7          Los Angeles Police Department Officer Brito.

 8          Los Angeles Police Department Criminalist Viegas.

 9          Jennifer Viegas.

10          Los Angeles Police Department Officer Calderon.

11          Dominca Jackson.

12          Los Angeles Police Officer Bodell.

13          Albert Cornejo.

14          Santiago Martinez.

15          LA Police Department Brett.

16          LA Detective Crossen.

17          LAPD Officer Gonzalez.

18          Los Angeles Police Department Detective Yung Mun.

19          Dr. J Daniel Augustine.

20          Jeffrey Bass.

21          Los Angeles Police Department Detective Sean Hansen.

22          Los Angeles Police Department Officer Cooney.

23          Brian Cooney.

24          Los Angeles Police Department Officer Brian Schilling.

25          Los Angeles Police Department Officer Guerrmo Garcia.
```

```
 1          Los Angeles Police Department Criminalist Allison
 2     Manfreda.
 3          Timothy Sawyer.
 4          Nebraska State Patrol Investigator Rich Lutter.
 5          Dennis Jarrott from LAPD.
 6          DA Chemist, Lane Higgins.
 7          FBI Special Agent Christine Fenn.
 8          FBI Special Agent Kevin Shatt.
 9          California Department of Corrections Officer Jason Marks.
10          ATF Special Agent David Hamilton.
11              THE COURT:  Thank you.  Next?  Mr. Raynor.
12              MR. RAYNOR:  Thank you, Your Honor.
13          Defense Investigator Ed Solis.
14          Los Angeles County Coroner Criminalist Steven Dowel.
15          Los Angeles County Coroner Investigator retired, Gary
16     Kellerman.
17          Jacquelin Kerrigan.
18          Los Angeles Superior Court Judge Kathryn Mater.
19          Los Angeles Sheriff's Department Deputy McCullough.
20          Monica Munich.
21          Retired Los Angeles County Public Defender Investigator
22     Craig Peters.
23          And Los Angeles Sheriff's Department Deputy Mario Rodarte,
24     retired.
25              THE COURT:  Mr. Eisner.
```

31

1        MR. EISNER:  Thank you, Your Honor.

2    John Jencks, drug expert.

3        Martin Flores.

4        Dr. Bill Sanders.

5    Carol Miller, Department of Transportation.

6    Evelyn Martinez, Pacifica Companies.

7    Tammy Scott.

8    And Eric Taylor.

9        THE COURT:  Mr. Diaz?

10       MR. DIAZ:  No.

11       THE COURT:  Are these all of the witnesses to

12   disclose?

13       Those are the witnesses that may be called in the case.

14   It doesn't mean if their names would were read they will

15   actually be called.

16       Is there anyone in the courtroom that recognizes any of

17   the names?

18       We have one person.  Would you state your name, sir?

19       PROSPECTIVE JUROR:  Bob Garrett for Los Angeles

20   Police Department.  I recognize probably about four or five

21   from the first gentlemen.

22       THE COURT:  Okay.  Thank you.  We will come back to

23   that.  Then we have hands that are raised.

24       PROSPECTIVE JUROR:  Mark Harris.  I know Mark

25   Harris.

1          I don't know if it's the same one.  And the last name of

2     Rewald, I believe was a police officer or detective or

3     something.

4          That is my mother's maiden name.  So my grandfather had

5     many brothers who had children who I don't know -- not that I'm

6     aware of.

7               THE COURT:  Anyone else?  We will go to

8     Ms. McDermott.

9               PROSPECTIVE JUROR:  There is a chance that some of

10    the LAPD officers, including, I think, I recognize the name of

11    Officer Gutierrez, he appears before us, but I can't say for

12    sure.

13              THE COURT:  Was there any aspect of that appearance

14    that would influence your decision-making here if they are

15    called as witnesses?

16              PROSPECTIVE JUROR:  I don't think so.

17              THE COURT:  And then in reference to Ms. Mathews.

18    The name again that you recall?

19              PROSPECTIVE JUROR:  Rewald was my mom's maiden name.

20              THE COURT:  Then there was another person.

21              PROSPECTIVE JUROR:  Mark Harris.

22              THE COURT:  What is relationship with Mark Harris?

23              PROSPECTIVE JUROR:  I know him.  He's a guitar

24    teacher.

25              THE COURT:  It's Mark Harrison.  And Detective James

```
 1   Rewald?
 2              PROSPECTIVE JUROR:  That could be a cousin that I'm
 3   not aware of.
 4              THE COURT:  Anything is possible, I guess.
 5              PROSPECTIVE JUROR:  Anything is possible.
 6              THE COURT:  Yes.  Did I hear a response?  There is
 7   another question I want to -- an issue I want to raise.
 8         One issue that could be presented in the course of the
 9   trial is the issue of self-defense.
10         And so the Court, if that is presented, the Court is going
11   to instruct you on the law that applies regarding self-defense.
12         The law would apply to anyone irrespective of whether they
13   are a member or happen to be a member of a gang or have a prior
14   conviction.
15         Is there anyone who would find it difficult to follow the
16   Court's instruction on the issue of self-defense if the person
17   who used it, self-defense, was a member of the gang or had a
18   prior conviction.
19         Is there anyone who would find it difficult to follow the
20   Court's instruction on the law?
21         No hands are raised here.
22         I would like to see Juror No. 4, Ms. Escalante.  Would you
23   come to sidebar?
24                        (Sidebar begins.)
25              THE COURT:  Ms. Escalante, would it be difficult for
```

1    you to get to court?  I can't excuse you based on that alone,

2    but if you have additional information to share which may arise

3    to an extreme hardship that would cause the Court to excuse

4    you, so do you have additional information?

5            PROSPECTIVE JUROR:  I don't have a job so I have to

6    borrow money.

7            THE COURT:  Do you understand that if you are

8    selected as a juror in the case, there is some compensation for

9    you, I think.  The Court -- I think can increase it to $50 a

10   day.  Would that still cause you to experience an extreme

11   financial hardship?

12           PROSPECTIVE JUROR:  It's hard to tell how much the

13   train costs.  And then I don't know how many weeks this would

14   be, because I know it's $12 for me to come here and go home.  I

15   don't know if the government would cover it.

16           THE COURT:  So you are not working at the present

17   time?

18           PROSPECTIVE JUROR:  No.

19           THE COURT:  Do you have any other means of support

20   besides yourself?

21           PROSPECTIVE JUROR:  I ask my dad for money.

22           THE COURT:  So what you are saying it would be an

23   extreme financial hardship for you to remain on this case if

24   you are selected as a juror?

25           PROSPECTIVE JUROR:  Yes.

```
 1                    THE COURT:  Thank you.
 2          Then may I have Mr. Ortiz.
 3          Would you come to the sidebar please.
 4                    MR. SHINER:  While we're waiting, Your Honor, I
 5   believe Juror Number 9 misheard us.  It was Officer Peterrez
 6   with a "P."  I would like to clarify if that was the person
 7   that she is referring to that came before her court.
 8                    THE COURT:  Mr. Ortiz, you indicated you had some
 9   difficulty understanding what is being said in Court.  Yes?
10                    PROSPECTIVE JUROR:  Yes.
11                    THE COURT:  So have you been able to understand
12   everything I have said so far?
13                    PROSPECTIVE JUROR:  Well, you are talking --
14                    THE REPORTER:  I'm sorry, I didn't understand him.
15                    THE COURT:  If you would repeat in your microphone.
16                    PROSPECTIVE JUROR:  You are asking the questions if
17   some people have some in some cases.
18                    THE COURT:  Have you been able to understand me when
19   I was speaking in English?
20                    PROSPECTIVE JUROR:  Not everything.
21                    THE COURT:  Okay.  Thank you.  Thank you very much.
22          Okay.  That is confirmed that Mr. Ortiz is not able to
23   understand English and should be excused.
24          Any objections?
25                    MR. SHINER:  No objection.
```

36

1            THE COURT:  Then Ms. Cohen, no objection?

2            MR. SHINER:  No objection.

3            THE COURT:  Ms. Cohen, thank you very much.

4    Mr. Ortiz, you are excused.  Thank you very much.

5        Ms. Escalante had significant financial hardship so the

6    Court intends to excuse her for financial hardship.

7        Does anyone wish to be heard on that?

8            MR. EISNER:  I do, Your Honor.  The Court is going

9    to give her $50.  I understand there is some costs in

10   transportation, but with my math, she is coming out ahead if

11   she sits here rather than being unemployed.

12           THE COURT:  I assume she's looking for employment at

13   this time.  It's $12 either way for the Metro, so you object?

14           MR. RAYNOR:  Yes.

15           MR. EISNER:  Yes.

16           THE COURT:  Ms. Escalante, would you come back

17   please?

18       I will let you inquire.

19       Counsel has some questions -- some additional questions.

20           MR. EISNER:  So did you take the public

21   transportation today?

22           PROSPECTIVE JUROR:  Yes.

23           MR. EISNER:  It's $12 each way?

24           PROSPECTIVE JUROR:  No.  It's $12 the whole day.

25           MR. EISNER:  It's $12 for roundtrip, okay.

```
 1              PROSPECTIVE JUROR:  Yes.

 2              MR. EISNER:  Are you actively looking for work now?

 3              PROSPECTIVE JUROR:  Yes.

 4              MR. EISNER:  Do you have actually appointments set

 5    up over the next month?

 6              PROSPECTIVE JUROR:  I have applied to few positions

 7    so it depends if they call me, then yeah.

 8              MR. EISNER:  Okay.  And on those positions can you

 9    meet them over the weekend for the job?

10              PROSPECTIVE JUROR:  I don't know about the weekend.

11    It says a specific date that they have interviews, I can show

12    you what I mean, but.

13              MR. EISNER:  Okay.  All right.  I don't have any

14    further questions.  Thank you.

15              THE COURT:  Thank you.

16         Do you wish to be heard further on financial hardship?

17              MR. EISNER:  No, I will submit, Your Honor.

18              THE COURT:  Okay.  Then the Court is going to

19    conclude that it would be an extreme hardship on Ms. Escalante.

20    She's unemployed and looking for work in the process of having

21    job interviews and she cannot afford to be on a jury that will

22    last five weeks.

23         Ms. Escalante.  Thank you very much.  You are excused.

24         Do we need to inquire of Ms. McDermott?

25         Do you want to clarify?
```

```
 1              MR. SHINER:  Yes, I want to clarify.
 2              THE COURT:  Ms. McDermott, would you come to sidebar
 3     please?
 4          There is some follow-up questions.
 5              MR. SHINER:  Good afternoon.  I believe you said it
 6     was Officer Gutierrez; is that correct, that came before your
 7     court?
 8              PROSPECTIVE JUROR:  I believe so.  It was last year.
 9              MR. SHINER:  Was it a defendant or witness?
10              PERSPECTIVE JUROR:  I think he would have been a
11     witness.  But we had -- there was just one defendant in that
12     case, but a number of other witnesses at the table.
13              MR. SHINER:  I don't think we read off Gutierrez.
14     It was Petterez.
15              PROSPECTIVE JUROR:  I might have misheard, no.
16              MR. SHINER:  What was the result of that?
17              PROSPECTIVE JUROR:  It was a jury trial.
18     they found --
19              THE COURT:  Don't disclose that.
20              PROSPECTIVE JUROR:  Sorry.
21              MR. SHINER:  That's fine.
22              PROSPECTIVE JUROR:  Don't disclose that.  Thank you.
23              THE COURT:  So we go to -- let's go back to any
24     additional questions.
25          Government?  Does the government have any additional
```

1   questions?

2           MR. RAYNOR:  This is Richard Raynor.

3       As to Number 16, The Court had inquired generally about

4   law enforcement, but not specifically.  There is a lot of LAPD

5   witnesses, and just to ask her about the cumulative effect that

6   some of the witnesses are from LAPD, whether she thinks that

7   might affect her ability to be fair in the case.

8           THE COURT:  That is?

9           MR. RAYNOR:  16, Irene Garcia.

10                      (Sidebar ends.)

11          THE COURT:  Ms. Garcia.  Just a couple of questions.

12  There may be a number of witnesses in this case who are

13  affiliated or members of the Los Angeles Police Department.

14          PROSPECTIVE JUROR:  Yes.

15          THE COURT:  If at the conclusion -- and you may hear

16  from those persons.

17      If at the conclusion of this case, it was your belief that

18  the government had failed to prove their case beyond a

19  reasonable doubt to your satisfaction, would you have any

20  concerns about returning a verdict in favor of the defendant if

21  the government had failed to prove their case, in light of the

22  fact you have friends who are members of the Los Angeles Police

23  Department?

24          PROSPECTIVE JUROR:  Well, if the evidence showed

25  correctly, then no, I would do my best to have an open judgment

**UNITED STATES DISTRICT COURT**

```
 1    on it.
 2              THE COURT:  Okay.  Thank you very much.  Any
 3    additional questions?
 4              MR. RAYNOR:  No, Your Honor.
 5              THE COURT:  I have a concern about No. 1.
 6              MR. DIAZ:  Her brother was an addict.
 7              THE COURT:  We will go to motions for cause.
 8    Government?
 9              MR. SHINER:  As to any of the jurors?
10         Pass for cause.
11              THE COURT:  Defense?
12              MR. DIAZ:  Your Honor, as to Juror Number 6, this is
13    Humberto Diaz.
14              THE COURT:  Mr. Garcia?
15              MR. DIAZ:  Yes.
16              MR. RAYNOR:  We would join on that.
17              MR. DIAZ:  At one time I think she hesitated when
18    she was asked if she would be fair, she said something like I
19    could try or something like that.  For somebody to take that
20    long to give an answer who wants to do the best she can, but
21    she is still hesitating about it.
22              MR. EISNER:  I want to join in that, Your Honor, I'm
23    mindful that she answered that she would try to be fair, but at
24    one point she said, I will do my best, when asked.
25         I know that is all we can expect, but well, I don't think
```

**UNITED STATES DISTRICT COURT**

that is all we should expect.  I think she equivocated on a

couple of questions that called for sort of an unbiased view,

and I just ask you to consider that she's been with LAPD for

34 years.  She participated in training.  I will submit.

THE COURT:  Does the government wish to be heard?

MR. SHINER:  Yes.  I don't think she equivocated.  I

think she paused to thoughtfully consider the questions.  She

said that she would do the best she could.  That is what the

Court repeatedly asks of the jurors, and so I will submit.

THE COURT:  Okay.  The Court is satisfied that she

has indicated to the best of her ability she could be fair,

objective, and impartial if the government fails to prove her

case, return a verdict in favor of the defendant, and she

answered that in the affirmative and clearly.  So the motion

would be denied.

Additional motion for cause?  Defense?

MR. EISNER:  Yes, Your Honor.  Defendant moves to

excuse the juror in Seat No. 1.  She talked specifically about

her brother being addicted to cocaine.  You have heard charges

in this case.  There is some 200-odd overt acts that talk about

narcotics being sold.

In addition to that, she suffered addiction due to a

doctor's prescription.  I think it's close to home.  She also

talked about familiarity with gangs in the context of her job,

but it's mostly the fact of her brother being addicted to crack

1    cocaine, which is the central issue in this case.

2        The government alleged that this gang distributed crack

3    cocaine throughout Los Angeles for over 20 years.  I will

4    submit it.

5            MR. RAYNOR:  Join.

6            MR. DIAZ:  I join, Your Honor.  This is Mr. Diaz.  I

7    think the fact that her familiarity with gangs she's pretty

8    much the only person who has got that familiarity.  That has

9    got to be a negative familiarity given what she does for a

10   living, Your Honor.

11           THE COURT:  I think she's indicated clearly that she

12   could be fair, objective, and follow the law, and fairly

13   evaluate the evidence, so the motion to excuse her for cause

14   will be denied.  That's why we have preemptories.

15       Any additional motions?

16           MR. RAYNOR:  Pass for cause.

17           MR. DIAZ:  Pass for cause.

18           THE COURT:  Exercise of preemptory challenges.  The

19   government -- the presumption is the jury is always the first

20   12.

21       We're going to reseat the jurors until we have 12.  Stay

22   at sidebar.

23                    (Sidebar ends.)

24           THE COURTROOM DEPUTY:  Ladies and gentlemen, I'm

25   going to reseat a couple of you.

**UNITED STATES DISTRICT COURT**

1    Ms. Mathews, would you please take the No. 4 seat right

2    behind you, and Ms. Wang, would you take the next seat over?

3       So 14 goes to seat five.

4            THE COURT:  So Ms. Mathews is now in seat No. 4, and

5    Ms. Wang is now seated in No. 5.

6            MR. SHINER:  Mathews is 4.

7                       (Sidebar begins.)

8            THE COURT:  That is the presumptive jury, the first

9    12.

10           MR. SHINER:  Government, we would move to excuse

11   Juror Number 8, Ms. Valenzuela.

12           THE COURT:  Juror Number 8, Ms. Valenzuela is

13   excused.  Thank you very much.

14      A female Latino.  Juror Number 8 is excused.

15      And we go Mr. Lopez.  Would you take that seat, please,

16   Number 8.

17           MR. EISNER:  Juror Number 14, Ms. Wang.

18           THE COURT:  Asian, female.  Ms. Wang is excused.

19   All join?

20           MR. RAYNOR:  Yes, Your Honor.

21           MR. DIAZ:  Yes.

22           MR. EISNER:  They have to be joined, right, Your

23   Honor?

24           THE COURT:  Not necessarily.

25           MR. EISNER:  All right.

```
1                      (Sidebar ends.)
2            THE COURT:  Ms. Wang is excused.  Thank you very
3    much.
4        Ms. Garcia, would you please take that seat.
5        Defense?
6                      (Sidebar begins.)
7            MR. EISNER:  Your Honor, the defense would like to
8    thank and ask the Court to excuse the juror seated in Number 5,
9    Ms. Garcia.
10           THE COURT:  Ms. Garcia is excused.  Thank you very
11   much.  And, Mr. Garman, would you take that seat.
12       Okay.  The next is with the government.
13           MR. SHINER:  I would ask to thank and excuse Juror
14   Number 8, Your Honor.  That is Ms. McCormack.
15           THE COURT:  Yes.  She is a white female.
16   Ms. McCormack is excused.  Thank you very much.
17           THE COURTROOM DEPUTY:  We will call seven.
18           THE COURT:  We will start the process again.  He's
19   going to call seven.
20           MR. SHINER:  Did we state that Garcia was a female
21   Hispanic?
22           THE COURT:  Yes.
23           MR. SHINER:  It's defendant's second strike.
24           THE COURT:  Yes.  Let's put that on the record,
25   female Hispanic.
```

```
1              MR. SHINER:  Thank you.
2                        (Sidebar ends.)
3              THE COURT:  Okay.  The clerk is going to call seven
4    additional prospective jurors.
5              THE COURTROOM DEPUTY:  As I call your name, please
6    come forward.  Juror 19, Shirley Gladden.  Would you please
7    come forward?
8         Juror Number 20, WanJu Lin.
9         Juror 21, Ann Maron.
10        Juror Number 22, Diane Kaluzok.
11        Juror Number 23, Santo Arora.
12        Juror Number 24, Michael Skulick.
13        Juror Number 25, Paul Lee.
14        Would you please come forward?
15             THE COURT:  Okay.  We have a new group of seven, so
16   most of my questions are going to be directed to the new group.
17        We will start with Ms. Gladden.
18        Would you answer the questions on the monitor, please?
19             PROSPECTIVE JUROR:  My name is Shirley Gladden.  I
20   reside in Los Angeles.  I'm married.  I am retired from the
21   phone company.  And I have my husband, he's from MTA, and he is
22   retired.
23        I have three children.
24        I have several prior experiences in jury duty.
25             THE COURT:  Both civil and criminal?  Yes.
```

1              PROSPECTIVE JUROR:  (Nodding.)

2              THE COURT:  I need a response.

3              PROSPECTIVE JUROR:  Yes.

4              THE COURT:  Any case similar to this one here?

5              PROSPECTIVE JUROR:  No.

6              THE COURT:  Is there any part of your prior jury

7   experience in other matters that would influence your

8   decision-making in this case here?

9              PROSPECTIVE JUROR:  No.

10             THE COURT:  Can you set those matters aside, and

11  decide this case based on the evidence received in this matter,

12  and the laws the Court would provide at the conclusion of the

13  case?

14             PROSPECTIVE JUROR:  Yes.

15             THE COURT:  Thank you.  I'm sorry, and Ms. Gladden,

16  can you be a juror in this case and be fair to all of the

17  parties?

18             PROSPECTIVE JUROR:  Yes.

19             THE COURT:  Thank you.

20             PROSPECTIVE JUROR:  Hi, my name is WanJu Lin.  I

21  live in San Marino.

22       And I'm married, and my husband is a aerospace engineer.

23       I have a two children, one in high school, one in fifth

24  grade.

25       And I never do the jury duty before.

**UNITED STATES DISTRICT COURT**

```
 1              THE COURT:  What is your occupation?

 2              PROSPECTIVE JUROR:  I'm just a housewife.

 3              THE COURT:  Well, I'm sure that is a lot.

 4          Can you participate and be fair to the parties?

 5              PROSPECTIVE JUROR:  I'm afraid I can't, because I

 6     have to fly out on February 16th to Dallas, because this is

 7     Chinese New Year and my family is from Taiwan.  We have to meet

 8     together at my sister's house, so, yeah.

 9              THE COURT:  So that's a personal matter.  That is

10     not going to cause me to excuse you.

11          How long will you be gone?

12              PROSPECTIVE JUROR:  Five days for over there.  But

13     after that, my family will come here to stay at my house.

14              THE COURT:  To visit you?

15              PROSPECTIVE JUROR:  I would like to do it, but can I

16     postpone to the next case?

17              THE COURT:  Well, I will have further inquiry at

18     sidebar here to see if there is an economic hardship or other

19     significant hardship.

20              PROSPECTIVE JUROR:  Thank you.

21              THE COURT:  But other than that, is there any other

22     issues you need to address?

23              PROSPECTIVE JUROR:  Actually, I can communicate

24     before the case when you describe.  I have no idea, because my

25     English is not that good to like understand all of the
```

1    vocabulary.

2            THE COURT:  So fair enough.  So your language native

3    language is?

4            PROSPECTIVE JUROR:  It's Chinese.  Mandarin.

5            THE COURT:  Mandarin?

6            PROSPECTIVE JUROR:  Yes.

7            THE COURT:  How long have you been proficient in

8    English?

9            PROSPECTIVE JUROR:  You mean learning English?

10           THE COURT:  How long have you been speaking English?

11           PROSPECTIVE JUROR:  How long.  It's quite long,

12   because I use Chinese more than English, so that's why my

13   English -- it's over ten years, but it's not a lot of

14   opportunity for me to, like, use the difficult words.

15           THE COURT:  Okay.  And just to be clear, have you

16   been able to understand everything I have said here so far?

17           PROSPECTIVE JUROR:  Not really, yeah.

18           THE COURT:  Okay.  Thank you.  Next?

19           PROSPECTIVE JUROR:  Hello.  My name is Ann Maron.  I

20   live in Mar Vista.

21       I'm unmarried.

22       I'm an attorney.  I have no children.  And I have been

23   called to jury service, but never served on a panel.

24           THE COURT:  Okay.  The area of law you practice in?

25           PROSPECTIVE JUROR:  I'm an executive vice president

1   and general counsel for Game Show Network Television.  So it's

2   a mix of entertainment, corporate, human employment matters, et

3   cetera.

4            THE COURT:  Okay.  And have you ever been in any

5   other sector of law?

6            PROSPECTIVE JUROR:  No.  I have always worked in

7   entertainment.

8        The one thing I would like to add, though, during law

9   school, I went to night school, so I worked as contract

10  employee for the IRS's criminal investigation division.

11           THE COURT:  How long was that for?

12           PROSPECTIVE JUROR:  That was for four years.

13           THE COURT:  What years did that cover?

14           PROSPECTIVE JUROR:  It ended in 2001, so it was a

15  long time ago.

16           THE COURT:  You worked with IRS agents?

17           PROSPECTIVE JUROR:  Yes.

18           THE COURT:  Did you ever appear in Court?

19           PROSPECTIVE JUROR:  No.

20           THE COURT:  And ever worked with any agents with the

21  Federal Bureau of Investigation?

22           PROSPECTIVE JUROR:  IRS had many joint

23  investigations, but I didn't deal with FBI agents.

24           THE COURT:  Can you participate in this case and be

25  fair to the parties?

```
 1                    PROSPECTIVE JUROR:  Yes.
 2                    THE COURT:  To the best of your ability?
 3                    PROSPECTIVE JUROR:  Yes.
 4                    THE COURT:  Your duties on a day-to-day basis are
 5       they more focused on the business side or the legal side?
 6                    PROSPECTIVE JUROR:  Both, it's business and legal
 7       affairs.
 8                    THE COURT:  Thank you.  Next?
 9                    PROSPECTIVE JUROR:  Hello, my name is Diane Kaluzok.
10       I live in Lakewood.
11           I'm single.  Medical assistant in healthcare, outpatient
12       clinic.  I have served -- no children.
13           I have served on a jury in the past, criminal, and we came
14       to a verdict.
15                    THE COURT:  Any case similar to this one here?
16                    PROSPECTIVE JUROR:  No.
17                    THE COURT:  Any part of that case -- aspect of that
18       case that would influence your decision-making here?
19                    PROSPECTIVE JUROR:  No.
20                    THE COURT:  Can you be fair to the parties and also
21       participate in this case?
22                    PROSPECTIVE JUROR:  Yes.
23                    THE COURT:  Thank you.  Next?
24                    PROSPECTIVE JUROR:  Hello, my name is Antokla Kolan.
25       I live in Encino, San Fernando Valley.
```

```
 1          I'm married.  And I'm an accountant and tax preparer.
 2          My wife is a retired housewife.  I have four kids.  Two
 3    live out of state and two live separately from us.
 4          I haven't served on a jury so far, but I was called a
 5    couple of times but I was not selected.
 6               THE COURT:  Do you have adult children?
 7               PROSPECTIVE JUROR:  Yes.
 8               THE COURT:  Occupations?
 9               PROSPECTIVE JUROR:  One is a CPA, one is a doctor.
10    And the other one is IT field and my daughter is accountant
11    also.
12               THE COURT:  Okay.  And can you participate in this
13    case and be fair to all of the parties?
14               PROSPECTIVE JUROR:  I will be fair, but five weeks
15    is a long time for me, sir, away from business.  It's going to
16    suffer.  So can I ask if I can be excused?
17               THE COURT:  When you say "away from business," you
18    are talking about your business?
19               PROSPECTIVE JUROR:  Yes.
20               THE COURT:  Okay.  And do you have employees?
21               PROSPECTIVE JUROR:  Yes.
22               THE COURT:  How many employees do you have?
23               PROSPECTIVE JUROR:  Six.
24               THE COURT:  Okay.  We will discuss that at sidebar
25    later on.
```

```
 1              PROSPECTIVE JUROR:  Thank you.

 2              THE COURT:  Next?

 3              PROSPECTIVE JUROR:  Hello, my name is Michael

 4    Schulick.  I live in El Segundo.

 5         I am single.  I'm a service advisor for the manufacturer

 6    of Porsche.

 7         I'm not married.  I have never served on a jury.

 8              THE COURT:  Okay.  Do you have a technical

 9    background in mechanics engineering?

10              PROSPECTIVE JUROR:  I used to work at the Apple

11    store.

12              THE COURT:  So, the questions I have asked so far,

13    any questions that stand out in your mind that you would want

14    to respond to?

15              PROSPECTIVE JUROR:  No, sir.

16              THE COURT:  Can you be fair to the parties and also

17    participate in this case?

18              PROSPECTIVE JUROR:  Yes, on both.

19              THE COURT:  Yes, on both.  Thank you.

20         We go to Mr. Lee.

21              PROSPECTIVE JUROR:  My name is Paul Lee.  I live in

22    Century City.  I am currently single.

23         I work as a counselor at Traver project which is a

24    non-profit focusing on suicide prevention.

25         This is my first time serving ever, and that is about it.
```

1            THE COURT:  So you are a counselor in a suicide

2     prevention center?

3            PROSPECTIVE JUROR:  Yes, Your Honor.

4            THE COURT:  And what training do you have in

5     reference to that -- in psychology, psychiatry?

6            PROSPECTIVE JUROR:  No, just good at talking with

7     people.

8            THE COURT:  And how long have you been so employed?

9            PROSPECTIVE JUROR:  It's been one year now.

10            THE COURT:  Any other prior occupations?

11            PROSPECTIVE JUROR:  No, student.

12            THE COURT:  And your area of study as a student?

13            PROSPECTIVE JUROR:  I studied film.

14            THE COURT:  Can you participate in this case and be

15     fair to the parties, to the best of your ability?

16            PROSPECTIVE JUROR:  I don't believe so.

17            THE COURT:  And so, the no is to question one or

18     question two or both?

19            PROSPECTIVE JUROR:  To No. 2.

20            THE COURT:  So you are concerned about your ability

21     to be fair to the parties?

22            PROSPECTIVE JUROR:  No, I could be fair to the

23     parties, but for serving on the jury, I don't believe I could.

24            THE COURT:  Okay.  So the length of the jury service

25     is a concern?

54

```
 1              PROSPECTIVE JUROR:  Yes.  I'm pretty broke right now
 2   so I can't be working while I do jury.
 3              THE COURT:  So what you are saying is, I'm assuming,
 4   it would be a significant economic hardship for you to be on
 5   this jury and miss work?
 6              PROSPECTIVE JUROR:  That's correct, Your Honor.
 7              THE COURT:  So you are being compensated for your
 8   counseling services?
 9              PROSPECTIVE JUROR:  Yes, that's correct.
10              THE COURT:  Is that your sole source of income?
11              PROSPECTIVE JUROR:  Yes, sir.
12              THE COURT:  Okay.  Thank you.
13         So my questions are directed to the new group.
14         Is there anyone who has any medical condition that would
15   make it difficult for you to be a juror in this case, if you
16   have not disclosed it?  The new group, any medical condition?
17         Is there anyone who has any prior -- again, this involves
18   yourself, how many members and close friends, prior arrests,
19   charges, convictions of any type, including misdemeanor or
20   felony, if that is the case, please raise your hand.
21         We will go to -- first, we will take it in order.
22   Ms. Gladden is first.  Would you pass the microphone to
23   Ms. Gladden, please?
24              PROSPECTIVE JUROR:  My son was arrested.
25              THE COURT:  How long ago was that?
```

```
 1              PROSPECTIVE JUROR:  He was 16, and now he's 50.
 2              THE COURT:  Were you present during the arrest?
 3              PROSPECTIVE JUROR:  No.
 4              THE COURT:  Did he discuss the arrest with you?
 5              PROSPECTIVE JUROR:  Yeah, I had to go to Court with
 6    him.
 7              THE COURT:  And based on his -- your discussions
 8    with him and what you know of the arrests, do you have any
 9    opinions as to whether he was treated fairly by law
10    enforcement?
11              PROSPECTIVE JUROR:  Yeah, it doesn't affect this
12    case at all.
13              THE COURT:  That's what we're trying to find out.
14    That is not going to influence your decision-making here?
15              PROSPECTIVE JUROR:  No.
16              THE COURT:  Let's see.  Anyone else?  We had another
17    hand raised.  We had -- next in order?
18              PROSPECTIVE JUROR:  Hello.  One of my brothers was
19    arrested for a DUI in college, which is probably 25 years ago.
20    A different brother was arrested for battery coming out of a
21    bar fight, and that was probably 25 years as well, and then he
22    also was arrested for disorderly conduct.
23              THE COURT:  Ms. Maron, that is quite a long time
24    ago?
25              PROSPECTIVE JUROR:  With the exception of disorderly
```

1    conduct, which was probably two years ago, I would say.

2            THE COURT:  Were you present during any of the

3    incidents?

4            PROSPECTIVE JUROR:  No.

5            THE COURT:  Will they influence your decision-making

6    here?

7            PROSPECTIVE JUROR:  No.

8            THE COURT:  Anyone else?  Anyone who has ever had

9    any prior negative experiences with law enforcement agencies or

10   officers?

11       You decide what a negative experience is.

12       Negative experiences with law enforcement officers or

13   agencies?

14       No hands.

15       Principles of law, I need to emphasize by repeating it.

16   Very important -- principles of law, these are more than just

17   words.

18       The defendants in this case are presumed innocent until,

19   if ever, they are proved guilty beyond a reasonable doubt to

20   the jury satisfaction.

21       The defendants have no duty to call witnesses in the case,

22   no duty to testify, no duty to offer evidence.  It's always the

23   government's obligation to prove guilt beyond a reasonable

24   doubt.

25       Is there anyone of the new group that would have any

```
 1   concerns about your ability to follow those principles of law?
 2        No hands are raised.
 3        I mentioned that several of the counts involved
 4   allegations of possession, sales, distribution of controlled
 5   substances.
 6        Is there anyone who has any -- yourself, family members,
 7   or close friends, who have any substance abuse problems or
 8   issues?
 9        We have Mr. Lee with his hand raised.
10        Mr. Lee, we will come back to you.  We're going to have a
11   sidebar with you in any event regarding the hardship.
12        Anyone else in the group?
13        No hands.
14        I mentioned the particular gang that is alleged in this
15   case, the Broadway Gangster Crips.
16        Is there anyone who has any familiarity with that
17   particular gang?
18        No hands are raised.
19        Is there anyone who has familiarity with any other gang?
20        No hands are raised.
21        Is there anyone who has ever been a victim of any crime of
22   violence of any type, yourself, family members, or close
23   friends?
24        No hands are raised.
25        As I mentioned previously, we have three defendants in the
```

case. This is -- they are all being tried at the same time, but there is actually three trials going forward.

Each case is separate and apart from the other. The fact that the government may prove their case against one, doesn't mean they prove their case against the other.

Does anyone have any difficulty following that principle?

In other words, going forward, if you are selected as a juror in the case, you have to separate the evidence that applies to one from the evidence that may not apply to the others.

No hands are raised.

Is there anyone, yourself, family members, or close friends who has ever applied or ever been employed with any law enforcement agencies of any type?

No hands are raised.

As mentioned this morning, the indictment alleges that the gang involved here and the government alleges that the gang claims a territory in South Los Angeles that derives its name from the streets by sect, its neighborhood, and the streets are South Broadway and 52nd Street.

Is there anyone who is familiar with that area of Los Angeles?

No hands are raised.

We have Ms. Gladden.

PROSPECTIVE JUROR: I know the area, but I live in

59

1    the valley, that is why, you know, the general area.

2              THE COURT:  You know the general area?

3              PROSPECTIVE JUROR:  I have an idea of it.

4              THE COURT:  Have you ever been down to that location

5    yourself?

6              PROSPECTIVE JUROR:  Probably, passed through it to

7    go where I'm going.

8              THE COURT:  On the freeway?

9              PROSPECTIVE JUROR:  Yeah.  I don't stop to know who

10   lives in there or not.

11             THE COURT:  We discussed issues regarding firearms.

12        Is there anyone who has any particular background,

13   training, and experience in firearms?

14        No hands are raised.

15        Anyone who has any strong views regarding laws concerning

16   the use, possession, sales of firearms?  Any strong views one

17   way or the other?

18        No hands are raised.

19        Anyone who has any strong views regarding laws governing

20   possession, use, and distribution of controlled substances?

21        No hands are raised.

22        If you have not otherwise disclosed, is there anyone who

23   has any prior experience with any -- with any particular gang,

24   again, yourself, family members, or close friends?

25        I mentioned this morning that in this particular case the

1    government used various investigative techniques to pursue the

2    investigation including the use of wiretaps, audio recordings,

3    video recordings, the use of confidential informants, persons

4    paid to provide information to the government or the use of

5    undercover agents.

6         Is there anyone who is concerned about the government's

7    using those types of techniques to investigate criminal

8    activity?  Does anyone have a concern?

9         Mr. Lee has his hand up.

10        And Mr. Lee, we will discuss that more at sidebar because

11   you will be at sidebar.

12        The list of witnesses were read to you.  I just want to

13   make sure, is there anyone who recognized any of the names of

14   the new group?

15        No hands are raised.

16        Of the new group, is there any additional information you

17   believe the lawyers should be aware of in determining whether

18   or not you should be a juror in this case?  Error in the side

19   of volunteering information.  We can't ask all of the

20   questions.

21        Is there is any aspect of your background, work

22   experience, life experience you believe the lawyers should be

23   aware of?

24        Just to make sure, and this is a question that applies to

25   everyone, all of the 18 prospective jurors.

1          I want to make sure that everyone agrees that the law

2    needs to apply fairly to everyone regardless of race,

3    ethnicity, gender, sexual orientation, religion.

4          I want to make sure, is anyone concerned about their

5    ability to apply the law fairly to everyone, irrespective of

6    race or gender or ethnicity?

7          No hands are raised.

8          With that, let me have counsel at sidebar.

9          We're going to take a 15-minute recess for the afternoon

10   recess.

11         Please return at 20 after the hour.

12         The same admonition.  No discussions amongst yourselves or

13   with any other person about the case.  Please remain on the

14   floor.  Do not leave the floor.

15         This is a 15 minute-recess.  No contacts with the lawyers,

16   please.

17              THE COURTROOM DEPUTY:  May everybody please leave.

18         (PERSPECTIVE JURY EXITS THE COURTROOM AT 2:09 P.M.)

19              THE COURTROOM DEPUTY:  You can all remain seated.

20                    (Afternoon recess.)

21              THE COURTROOM DEPUTY:  Please remain seated and come

22   to order.

23         (PROSPECTIVE JURORS ENTER THE COURTROOM AT 2:26 P.M.)

24              THE COURT:  We're back on the record in the United

25   States versus Shaw, Perez, and Ingram.  We have counsel present

```
 1   and all defendants are present.
 2        I was going to call the lawyers to sidebar, so let's
 3   continue with sidebar.
 4                        (Sidebar begins.)
 5             THE COURT:  Okay.  Before we start with the
 6   additional questions, we could call Ms. Lin to sidebar.  She
 7   has indicated that she has some family events that she would
 8   like to attend.
 9        She's also indicated that she has difficulty understanding
10   English.  We can inquire further.
11        I'm relatively convinced that she has difficulty
12   understanding English, but if counsel wishes me to inquire
13   further, we can.  Otherwise, we could stipulate to excuse her.
14             MR. EISNER:  I would agree with that.
15             MR. RAYNOR:  I would agree.
16             MR. SHINER:  We will stipulate, Your Honor.
17             THE COURT:  Okay.  Then we have Mr. Lee.
18        Mr. Lee indicates that he would have an economic hardship,
19   so I can inquire further from Mr. Lee, as a counselor in a
20   suicide center, I would guess that his compensation is not
21   significant, and it may be an economic hardship, but let's find
22   out.
23        Mr. Lee, would you come forward please?
24        You indicated economic hardship.
25             PROSPECTIVE JUROR:  Uh-huh.
```

1          THE COURT:  In order for me to excuse you for that,

2   you will have to provide some additional information.

3          PROSPECTIVE JUROR:  Okay.

4          THE COURT:  Go ahead.  The microphone right there.

5   Everything you are saying is being transcribed.

6          PROSPECTIVE JUROR:  So I make about 14K a year, and

7   it's barely enough to live check to check.  So I'm missing work

8   by coming to jury duty.  They don't compensate at all.

9          THE COURT:  And so do you support anyone else

10  besides yourself?

11         PROSPECTIVE JUROR:  And my dog.

12         THE COURT:  And your dog.  Do you have any other

13  sources of income other than your employment?

14         PROSPECTIVE JUROR:  No, that's it.

15         THE COURT:  And how long have you been employed at

16  the center, a year?

17         PROSPECTIVE JUROR:  For a year now.

18         THE COURT:  And your salary is about 14,000?

19         PROSPECTIVE JUROR:  Uh-huh.

20         THE COURT:  And they are not paying you for jury

21  service?

22         PROSPECTIVE JUROR:  Because I'm not full-time, no.

23         THE COURT:  You are a part-time worker?

24         PROSPECTIVE JUROR:  Yes.

25         THE COURT:  Are they going to move you into a

```
 1    full-time position?
 2              PROSPECTIVE JUROR:  So right now the counselors are
 3    only part-time, but they are talking about making it full-time.
 4              THE COURT:  Are you pursuing any other avenues for
 5    employment, any other fields?
 6              PROSPECTIVE JUROR:  I'm thinking about going back to
 7    school and getting my MFC just for therapy.
 8              THE COURT:  Master's in MF?
 9              PROSPECTIVE JUROR:  So it's master's in family, MFC.
10              THE COURT:  Family counseling?
11              PROSPECTIVE JUROR:  Family counseling, yes.
12              THE COURT:  Any questions?  Thank you.
13              MR. SHINER:  No questions.
14              MR. EISNER:  No questions.
15              THE COURT:  Thank you.  So the Court would conclude
16    that Mr. Lee qualifies to be excused because it would be an
17    extreme hardship for him to remain on the jury in light of his
18    economic situation.
19         Does counsel wish to be heard on that?
20              MR. EISNER:  No.
21              MR. RAYNOR:  No.
22              THE COURT:  Mr. Lee will be excused and then we have
23    Mr. Arora who has a business, and indicates that five weeks
24    would be hardship for him.
25         So, I guess the question is do you want to stipulate to
```

1    excuse him or do you want me to inquire further?

2               MR. RAYNOR:  I think we should stipulate.

3               MR. SHINER:  Stipulate.

4               THE COURT:  Mr. Arora is excused.

5         And so Ms. Lin is excused.  Thank you Ms. Lin, you have to

6    return back to the jury office for further assignment.

7         Mr. Lee, thank you, you are excused.

8               PROSPECTIVE JUROR:  Thank you, Your Honor.

9               THE COURT:  Then Mr. Arora is excused.  Thank you,

10   sir.

11              THE COURTROOM DEPUTY:  He's walking this way.

12              THE COURT:  No, you are excused.  You have been

13   excused.

14        You have to return to the jury office, sir.

15        Okay.  So, any additional questions from government as to

16   this group?

17              MR. SHINER:  Juror Number 12, I think we skipped a

18   few questions.  We didn't find out if she came to a verdict

19   during jury service.  We didn't ask her children's occupation,

20   and we didn't ask if her son was arrested.

21        Those are the questions we are missing.

22                         (Sidebar ends.)

23              THE COURT:  Okay.  Let's go to Ms. Gladden.  The

24   prior jury matters that you have participated in, did you reach

25   a verdict in all of those cases?

```
1              PROSPECTIVE JUROR:  Uh-huh.

2              THE COURT:  Is that yes?

3              PROSPECTIVE JUROR:  Yes.

4              THE COURT:  Again, because everything is being

5    recorded, so I need a response.  Then in reference to the

6    occupation of your adult children?

7              PROSPECTIVE JUROR:  My son is a teacher.  My

8    daughter is data entry for the medical department for some

9    medical office, and my other son is the computer tech for Iowa

10   State.

11             THE COURT:  Iowa State University?

12        Then there was an arrest involving a family member that

13   covered several years ago?

14             PROSPECTIVE JUROR:  Yeah.

15             THE COURT:  What was the nature of the arrest?

16             PROSPECTIVE JUROR:  I did say --

17             THE COURT:  Do you wish to discuss it at sidebar?

18             PROSPECTIVE JUROR:  Yes.

19             THE COURT:  Why don't you come at sidebar.  There is

20   a microphone here so everything you say is being transcribed.

21             PROSPECTIVE JUROR:  Yeah, him and a friend went over

22   to his girlfriend's house, and because the girlfriend's father

23   was -- she said they were raping her.  My son didn't have sex

24   with her, but the other friend did, but they both were like --

25             THE COURT:  Accused?
```

```
 1              PROSPECTIVE JUROR:  Yeah, but they just tested them
 2    and then they let them go.
 3              THE COURT:  So this was an arrest.  No charges were
 4    filed against your son?
 5              PROSPECTIVE JUROR:  He was let go.
 6              THE COURT:  Okay.  Again, do you think that this is
 7    going to influence your decision-making here?
 8              PROSPECTIVE JUROR:  No.  That was years ago, and it
 9    doesn't affect it at all.
10              MR. SHINER:  Can I follow up?
11              THE COURT:  Yes.
12              MR. SHINER:  Do you think your son was treated
13    fairly or do you have an opinion?
14              PROSPECTIVE JUROR:  He was treated fairly.
15              MR. SHINER:  Thank you.
16              THE COURT:  Any additional questions?
17              MR. SHINER:  No.
18              THE COURT:  Defense, any additional questions?
19              MR. RAYNOR:  No, Your Honor.
20              THE COURT:  None.  Then we go to motions for cause.
21    Any of these -- the ones that remain -- any motions?
22         Government passes.
23              MR. RAYNOR:  We pass.
24              THE COURT:  Then we go to preemptory challenges.
25    The next 3 and 4 are with the defense.
```

1           MR. EISNER:  I'm sorry.

2           THE COURT:  You get the next two.

3           MR. RAYNOR:  This is Richard Raynor.  The defense is

4    going to ask the Court to thank and excuse Juror No. 1, Janet

5    Mercer, and Juror Number 6, Karen Buchanan.

6           THE COURT:  So both white females?

7       Ms. Mercer, is excused.  Thank you.

8       And Ms. Buchanan is excused.

9       You have to go to the jury office for further assignment

10   please.

11      And then may I have Ms. Gladden, would you take that No. 1

12   seat?

13          THE COURTROOM DEPUTY:  No, Judge.  She is Juror

14   Number 12.

15          THE COURT:  I made a mistake, Ms. Gladden.  We need

16   Ms. Maron to take the No. 1 seat.

17      Then Mr. Kolsack, did I say that correctly?

18          PROSPECTIVE JUROR:  Kolsack.

19          THE COURT:  Would you take that Number 6 seat.

20      No. 3 with the government.

21          MR. SHINER:  Thank you, Your Honor.  The government

22   passes.

23          THE COURT:  Next?  Two with the defense?

24          MR. EISNER:  Defendants would like to thank and

25   excuse Number 17, Mr. Garman.

**UNITED STATES DISTRICT COURT**

1          THE COURT:  Seat Number 5, Ms. Garman.

2       Mr. Garman, you are excused.  Thank you.

3       Mr. Skulick, would you take that seat, please?  Defense?

4          MR. EISNER:  We would like to thank and ask the

5    Court to please excuse the juror seated in No. 1, Ms. Maron.

6          THE COURT:  Ms. Maron is excused.  Thank you very

7    much.

8       Okay.  We will call some additional.

9          MR. SHINER:  Yes, Your Honor.

10          THE COURT:  There is a member of the panel who has

11   informed Mr. Cruz that he knows certain members of the Broadway

12   Gangster Crips, and he cannot be a juror in the case.  If that

13   person is called, we will identify him at the time.

14                    (Sidebar ends.)

15          THE COURT:  Okay.  The clerk is going to call an

16   additional seven prospective jurors, and we're going to repeat

17   the process again.

18          THE COURTROOM DEPUTY:  Okay.  As I call your name,

19   please come forward.

20       Juror Number 26, Paul Farino, F-a-r-i-n-o.  Take seat

21   No. 1 on the top.

22       Juror Number 27, Mario Reyes, R-e-y-e-s.

23       Arden Giron, G-i-r-o-n.

24       Juror Number 28, Elene Pierson, P-i-e-r-s-o-n.

25       Number 29, Vinh Nguyen, N-g-u-y-e-n.

1          Juror Number 30, Susan Emerson, E-m-e-r-s-o-n.

2          Juror Number 31, Mable Erby, E-r-b-y.

3          And Juror No. 32, Max Lee, L-e-e.

4              THE COURT:  May we start the process again.  We

5     start with the new juror seated in seat No. 1, Mr. Farino.

6     Would you answer the questions on the monitor, please.

7              PROSPECTIVE JUROR:  Yes.  So my name is Paul Farino.

8     I live in Los Angeles.

9          I'm single.  I'm a software consultant.

10         I don't have a spouse, and no children.

11         This is the first time at jury service.

12             THE COURT:  Can you participate in this case?

13             PROSPECTIVE JUROR:  No.

14             THE COURT:  And the reason?

15             PROSPECTIVE JUROR:  My girlfriend has a herniated

16    disc and a bulging disc, so she's bedridden about 90 percent of

17    the time, and I'm the person that takes care of her.

18             THE COURT:  So you are the primary caretaker?

19             PROSPECTIVE JUROR:  Yes.  Obviously, she's not

20    working right now, so economic hardship, too, because I'm the

21    sole income provider.

22             THE COURT:  Okay.  We will come back to that.

23         Separate and apart from whether you can serve based on

24    what you heard so far, do you believe that you could be fair to

25    the parties in this case?

```
 1              PROSPECTIVE JUROR:  Yes.

 2              THE COURT:  Thank you.  We go to Mr. Reyes.

 3              PERSPECTIVE JUROR:  My name is Mario Reyes.

 4      I live in the City of Lawndale.  I'm married.  I'm a

 5   aircraft mechanic.

 6         My wife is -- I'm married.  My wife is a care provider.

 7         I have four daughters, two of them are teachers, one of

 8   them works for Costco.  I have no idea what she does, and the

 9   other one is a student.

10         I was summoned twice.  One, I served the City of Torrance,

11   it was kind of a similar type of case, it was a possession of

12   firearm and possession of drugs, so I don't know if that makes

13   a difference.

14              THE COURT:  Without indicating the verdict, did the

15   jury reach a verdict in the case?

16              PROSPECTIVE JUROR:  Yes.

17              THE COURT:  You are an aircraft mechanic?

18              PROSPECTIVE JUROR:  Yes.

19              THE COURT:  Can you participate in this case?

20              PROSPECTIVE JUROR:  I believe so.

21              THE COURT:  Can you be fair to all of the parties?

22              PROSPECTIVE JUROR:  Yes, sir.

23              THE COURT:  We go to next, Ms. Pierson.

24              PROSPECTIVE JUROR:  My name is Ilene Pierson.  I

25   live in Duarte.  I am married.
```

```
 1        I am an admissions and records clerk II in a community

 2   college.

 3        My spouse's occupation is he works for the City of Los

 4   Angeles, wastewater supervisor.

 5        He is currently in the National Guard as a sergeant in the

 6   U.S. Army.

 7        I have three children.  One is a student studying nursing.

 8   The other two are high school students.

 9        I have served on a jury before, and it was a criminal

10   case.

11            THE COURT:  Did you reach a verdict in that case?

12            PROSPECTIVE JUROR:  No.

13            THE COURT:  And is there any part of that jury

14   experience that would influence your decision-making here?

15            PROSPECTIVE JUROR:  No.

16            THE COURT:  Can you set all of that aside and decide

17   this case based on the evidence and the law?

18            PROSPECTIVE JUROR:  Yes.

19            THE COURT:  Can you be fair to all of the parties

20   and participate?

21            PROSPECTIVE JUROR:  Yes.

22            THE COURT:  Mr. Reyes -- going back to Mr. Reyes, I

23   want to make sure, Mr. Reyes, is there any part of your prior

24   jury experience that would influence your decision-making in

25   this case?
```

```
1                    PROSPECTIVE JUROR:  No, sir.

2                    THE COURT:  Thank you.  And then we go to next,

3    Mr. Nguyen.

4                    PROSPECTIVE JUROR:  Vinh Nguyen.  I live in

5    Hawthorne.  I'm single, unemployed.

6         No spouse, no children.  It's my first jury duty.  I

7    postponed it before.

8                    THE COURT:  Okay.  And when you are employed, what

9    is your occupation?

10                   PROSPECTIVE JUROR:  Previously, I was a food service

11   worker, a lab assistant, and a tutor.

12                   THE COURT:  Your area of tutoring is what?  What do

13   you tutor?

14                   PROSPECTIVE JUROR:  Oh, math, science, English,

15   language arts.

16                   THE COURT:  Can you be a juror in this case and be

17   fair to all of the parties?

18                   PROSPECTIVE JUROR:  I'm available, but I won't be

19   unbiased, and I won't be impartial.

20                   THE COURT:  So you believe you would be biased in

21   favor of a particular side?

22                   PROSPECTIVE JUROR:  Yes.

23                   THE COURT:  Okay.

24                   PROSPECTIVE JUROR:  I have my own values and morals

25   I follow, so that's coming from me.
```

**UNITED STATES DISTRICT COURT**

1          THE COURT:  So, you have a -- is it a religious

2    conviction or philosophical conviction?

3          PROSPECTIVE JUROR:  It's religious and my personal

4    belief.  Like I don't -- I'm Buddhist, I don't like judging

5    other people.  I don't want to potentially dole out punishments

6    to other people.  Any cases or trials that have long jail terms

7    or capital punishment potentially, I'm going to be biased.

8          THE COURT:  Okay.  Well, let me just make it clear.

9    This is not a capital punishment case.

10        Secondly, any issue involving a punishment is for the

11   Court to determine.

12        The jury is not to become involved at all on the issue of

13   punishment.  It cannot even be discussed in the jury room.

14        The questions that are going to be posed to you is whether

15   the government has proved their case on each of the counts that

16   they're bringing forward beyond a reasonable doubt to your

17   satisfaction.

18        Would that change your views at all?

19        PROSPECTIVE JUROR:  No.  I can give my opinion

20   freely, but it bothers me that my opinion could be used to

21   inflict harm to other people's lives.

22        THE COURT:  Okay.  Fair enough, Mr. Nguyen.  And

23   then we have -- so you would prefer, I would guess you would be

24   more comfortable in a civil proceeding, a civil lawsuit?

25        PROSPECTIVE JUROR:  Yes.  Like a case or trial where

**UNITED STATES DISTRICT COURT**

75

1   the worse outcome would be someone losing their money, the

2   property, or any other material asset.

3            THE COURT:  So you are concerned about jury service

4   in any type of criminal proceeding; is that a fair statement?

5            PROSPECTIVE JUROR:  I think so.

6            THE COURT:  Thank you.  Then we go to Ms. Emerson.

7            PROSPECTIVE JUROR:  Uh-huh.  Hi, my name is Susan

8   Emerson.  I live in Los Angeles.

9        I'm single.  I'm an attorney.

10       No children, and I have served on one jury previously.  It

11  was a criminal case in state court and we reached a verdict.

12           THE COURT:  Similar to this case here?

13           PROSPECTIVE JUROR:  No.

14           THE COURT:  The area you practice in?

15           PROSPECTIVE JUROR:  Entertainment.  I'm vice

16  president at a studio.

17           THE COURT:  Is your focus the practice of law or

18  business or both?

19           PROSPECTIVE JUROR:  It's both.

20           THE COURT:  Can you participate in this case?

21           PROSPECTIVE JUROR:  I can.  I would say my one

22  limitation is that my mother is currently living with me while

23  she is recovering from surgery, so I'm her primary caregiver

24  right now.

25           THE COURT:  So will you feel comfortable discussing

1    the nature of the surgery in open court?

2           PROSPECTIVE JUROR:  It was a hip replacement

3    surgery.

4           THE COURT:  Okay.  And how long ago was the surgery?

5           PROSPECTIVE JUROR:  It was a few months ago.

6           THE COURT:  Is she able to -- is she mobile?

7           PROSPECTIVE JUROR:  She's mobile.  She can walk

8    around.  She can't drive, so I take her to her doctor

9    appointments.

10          THE COURT:  And can you be fair, based on what you

11   heard so far?

12          PROSPECTIVE JUROR:  Yes.

13          THE COURT:  Thank you.  We go to next the Ms. Erby.

14          PROSPECTIVE JUROR:  Hi, My name is Mable Erby.  I

15   live in the City of Carson.

16       I'm married.  I'm retired from aerospace.  My husband is

17   also retired.

18       I have two -- I inherited two children from the marriage.

19   I have had prior jury service.  I have served on several cases.

20   It seemed like every two years or so I'm called.

21       I have never served on a criminal case.  I reached a

22   verdict on two civil cases.

23          THE COURT:  Okay.  And then your occupation?

24          PROSPECTIVE JUROR:  I'm a retired engineer, software

25   engineer.

```
 1              THE COURT:  And your husband?

 2              PROSPECTIVE JUROR:  He's also a retired software

 3  engineer.

 4              THE COURT:  And then the occupation of the two

 5  children -- adult children you have inherited?

 6              PROSPECTIVE JUROR:  One is an educator, the other

 7  one owns a day care facility -- day care center.

 8              THE COURT:  Then just to be clear, your prior

 9  experience as a juror is a civil proceeding, there are

10  significant differences between civil cases and criminal cases,

11  one is the burden of proof and in a civil proceeding, it's

12  preponderance of the evidence standard, a much lower standard.

13      In this case, it's proof beyond a reasonable doubt, which

14  is a much higher standard where you hold the government to

15  prove beyond a reasonable doubt.

16              PROSPECTIVE JUROR:  Yes.

17              THE COURT:  Can you be fair to the parties and can

18  you participate?

19              PROSPECTIVE JUROR:  I can be fair to the parties.

20  My aunt passed away.  I have airline tickets to fly to northern

21  California on Thursday to attend her funeral.

22      My cousin is an only child.  She is expecting me to be

23  there on Thursday.

24              THE COURT:  Is that a one-day matter?

25              PROSPECTIVE JUROR:  I will return on Saturday.
```

1          THE COURT:  So --

2          PROSPECTIVE JUROR:  Be out Thursday and Friday,

3    returning on Saturday.

4          THE COURT:  And the funeral is Thursday or Friday?

5          PROSPECTIVE JUROR:  The wake is Thursday and the

6    funeral is Friday at noon.

7          THE COURT:  Okay.  Thank you.  Then Mr. Lee?

8          PROSPECTIVE JUROR:  My name is Max Lee.  I live in

9    Porter Ranch.

10      I'm married.  My occupation is software engineer, and my

11   spouse is not working.  And I have a new baby girl, just one

12   year and 2 months old.

13         THE COURT:  Okay.

14         PROSPECTIVE JUROR:  And I attended many jury summons

15   but I have never been chosen as a juror.

16         THE COURT:  Can you be a juror and participate in

17   this case?

18         PROSPECTIVE JUROR:  I don't think so because my

19   company cannot pay that five weeks.  It's too long, yeah, five

20   weeks.

21         THE COURT:  What company do you work for?

22         PROSPECTIVE JUROR:  Farmer Boy.

23         THE COURT:  Well, here we will hear you further at

24   sidebar regarding, your excuse to be excused for hardship.

25         PROSPECTIVE JUROR:  Also, besides that, also since I

```
 1    have a new small baby.

 2               THE COURT:  Yes.

 3               PROSPECTIVE JUROR:  So I have to sometimes take care

 4    of my baby also.

 5               THE COURT:  All of that will be considered.  We will

 6    discuss that at sidebar.

 7               PROSPECTIVE JUROR:  Yes.  Five weeks too long for

 8    me.

 9               THE COURT:  Okay.  Again, my questions go to the new

10    group.

11        Of the new group, anyone -- this applies to yourself, I'm

12    including yourself, family members -- close family members and

13    close friends, anyone who has any prior arrests, charges, or

14    convictions?

15        No hands are raised.

16        Mr. Lee has his hand up.

17               PROSPECTIVE JUROR:  I was arrested 2008 but the case

18    is dismissed -- not everything is here.

19               THE COURT:  You were arrested personally?

20               PROSPECTIVE JUROR:  I was arrested when I sit with

21    my friend's car and my friend probably have a DUI, and the

22    police also take me to the jail.

23               THE COURT:  Okay.  The matter -- you were not

24    prosecuted; is that correct?

25               PROSPECTIVE JUROR:  Go to the Court, and I hire
```

```
 1    lawyer.  I don't know, I never appeared at Court, and then the

 2    case was dismissed.

 3              THE COURT:  Okay.  Do you feel you were treated

 4    fairly by the police officers involved?

 5              PROSPECTIVE JUROR:  What?

 6              THE COURT:  Were you treated fairly by the police

 7    officers?

 8              PROSPECTIVE JUROR:  Treated fairly?

 9              THE COURT:  Treated fairly.

10              PROSPECTIVE JUROR:  I don't understand.

11              THE COURT:  Thank you.  Any of the new group -- any

12    negative experiences with any law enforcement officer or agency

13    -- any negative experiences?

14         Does anyone have any strong feelings one way or the other

15    regarding laws that govern the use, possession, transportation

16    distribution of controlled substances?

17         Okay.  We have Mr. Nguyen.  Mr. Nguyen, we will come to

18    you at sidebar.  You are going to be at sidebar in any event.

19         Does anyone have any strong views or opinions regarding

20    laws concerning possession, sales, use of firearms?

21    Mr. Nguyen, also his hand is up.  Thank you.

22         Again, the government has alleged the gang that the

23    government believes to be involved in this particular case, is

24    anyone familiar with the Broadway Gangster Crips gang?

25         Anyone have particular familiarity with that?
```

1          No hands are raised.

2          Is there anyone who is familiar with any other gangs?

3          No hands are raised.

4          Just to repeat because of an issue that was raised by

5    Mr. Nguyen, the issue of punishment is for the Court alone, if

6    we ever get there, I'm not suggesting we will, but the issue of

7    punishment is for the Court alone.

8          The issue of punishment is not to be discussed by the jury

9    in the jury deliberation room.  It cannot in any way influence

10   your deliberations.

11         Is there anyone who is concerned about that principle of

12   law, that instruction that will be applied about your ability

13   to follow it.

14         Mr. Nguyen has his hand raised.  Thank you, sir.

15         Again, to repeat for purposes of this group, the

16   defendants have no duty to provide evidence, call witnesses,

17   testify.  The government is held to the highest standard which

18   is proof beyond a reasonable doubt.

19         Any concerns about your ability to follow those

20   principles?  Mr. Nguyen is with his hands raised, and Mr. Lee

21   with his hand raised.

22         The Court has already mentioned the use of various

23   investigative techniques used by the government in this case

24   and used by the government in other cases that includes the use

25   of wiretaps, the use of informants, the use of audio and video

```
 1   recordings, the use of undercover agents, undercover agents
 2   being agents or police officers or federal agents that operate
 3   in undercover capacity, they are not disclosing who they are.
 4   Is anyone concerned about whether it's fair or not for the
 5   government to be able to use those techniques?
 6        Mr. Lee has his hands up?  We will come to you, sir.
 7        Okay.  Just again, to cover some of the matters that were
 8   already covered.
 9        Being a juror requires someone comfortable working with 11
10   other people in the jury room.
11        Your duty is to evaluate and consider the credibility of
12   all of the witnesses who will be called here, there's going to
13   be a variety of witnesses.  There is going to be conflicts in
14   evidence.
15        The one witness may -- who is at a particular scene on a
16   certain date may tell a different story than another witness
17   who was at the same location on the same date.
18        So there may be conflicts in evidence.  It regularly
19   occurs in the course of trials.
20        One of your duties as a juror is to resolve those
21   conflicts, if you can do that.
22        The goal here is to reach a verdict in the case as to the
23   counts, if you can reach a verdict in the case.
24        Sometimes persons hearing two different versions of the
25   same story will throw up their lands and say they can't make a
```

83

```
 1    decision.  What we require of the jury is efforts to work hard
 2    to resolve those conflicts.
 3         Is there anyone that is concerned about their ability to
 4    resolve conflicts?
 5         Mr. Nguyen, did you have your hand raised.  Mr. Nguyen has
 6    his hand raised.
 7         Anyone concerned about your duty to assess credibility of
 8    witnesses?
 9         No hands are raised.
10         Again, you are going to hear from a variety of witnesses.
11    Just because a person comes up and swears to tell the truth
12    doesn't mean they will in fact tell the truth.  It's up to the
13    jury to tell whether the truth is being a told.
14         Separate and apart from that, often persons believe that
15    certain events took place, but if there is not enough
16    foundation to support that, you can consider that.
17         If a person has a stake in the outcome of the case, you
18    can consider that.
19         The point is that credibility and determination is a major
20    part of what the jury does.  The Court does not do that.  I
21    only make the legal determinations.
22         With that being said, a final opportunity for the new
23    group who has taken a seat to volunteer any additional
24    information that the lawyers should know about to determine
25    whether or not you should be a juror in this case.  Is there
```

UNITED STATES DISTRICT COURT

1    anything you haven't disclosed that you believe you should

2    disclose.

3         Mr. Nguyen?

4              PROSPECTIVE JUROR:  I have some experiences with

5    some bad guys, so, when I was a kid, Pokeman cards were all a

6    rage, and I had a sizeable collection.  And one day I was

7    playing with my friend, and I was sitting on the fence outside

8    his apartment, and a jerk threatened me with a knife, and he

9    put it on my wrists and he took -- I had my cards in a folder

10   or binder, and he took that, and he gave it back when I was

11   going to make some noise and start crying.

12             THE COURT:  How long ago did that occur?

13             PROSPECTIVE JUROR:  When I was in middle school.

14             THE COURT:  Okay.  If need be, we will discuss that

15   further at sidebar.

16             PROSPECTIVE JUROR:  Okay.  I just want to add.

17             THE COURT:  We will discuss this further at sidebar,

18   sir.  You are going to come to sidebar in any event because of

19   your other answers to other questions.

20             PROSPECTIVE JUROR:  Okay.

21             THE COURT:  Anything else?

22             PROSPECTIVE JUROR:  Do I have to disclose my

23   military background?

24             THE COURT:  Again, volunteer on the side of full

25   disclosure if you believe there is information that the lawyers

1    should know about.  So you have military background?

2              PROSPECTIVE JUROR:  Yes, I spent nine years at the

3    Air Force in Guatemala City, back in my country.  That is my

4    background.

5              THE COURT:  So, nine years with the Air Force?

6              PROSPECTIVE JUROR:  Yes.

7              THE COURT:  Did you serve at any type of law

8    enforcement capacity -- military police?

9              PROSPECTIVE JUROR:  No, sir.

10             THE COURT:  So that raises another --

11             PROSPECTIVE JUROR:  I was a aircraft mechanic most

12   of the time.

13             THE COURT:  Another question, anyone who has ever

14   worked for -- applied to work for in any law enforcement

15   agency?

16             PROSPECTIVE JUROR:  No.

17             THE COURT:  Any negative experiences with law

18   enforcement officers?

19             PROSPECTIVE JUROR:  No, sir.

20             THE COURT:  Arrests, charges?  None.

21        Okay.  Let's have counsel at sidebar.

22                       (Sidebar begins.)

23             THE COURT:  We have a couple of jurors who have

24   expressed some concerns, Mr. Marino, Mr. Nguygen, and then

25   Mr. Lee.

1          In reference to Farino, he's indicated that he has a

2     significant other who is at home disabled and that he is the

3     sole caretaker of that person.  I can inquire further, but it

4     appears that would be a significant hardship on him and her.

5               MR. RAYNOR:  I will stipulate.

6               MR. SHINER:  Stipulate.

7               THE COURT:  Then we have Mr. Lee, the one year-old

8     child.  He has indicated that separate and apart from that, he

9     has concerns about sitting on a jury five weeks of trial.  He

10    has expressed some economic issues.  I can inquire further, but

11    is there a stipulation he can be excused?

12              MR. RAYNOR:  Stipulate.

13              MR. SHINER:  Stipulate.

14              THE COURT:  He can be excused.

15         Mr. Nguygen, I don't know where to begin, but he has

16    indicated that he would -- as I understand it, he would not

17    follow the law.  He has his own philosophical convictions and

18    religious beliefs that would be hard.

19              MR. RAYNOR:  We stipulate to excuse him.

20              MR. SHINER:  Stipulate.

21                        (Sidebar ends.)

22              THE COURT:  Mr. Farino, thank you very much.  You

23    may be excused.  Thank you, sir.

24         Mr. Nguyen, thank you very much for your candor, you have

25    been excused.

```
 1                    PROSPECTIVE JUROR:  Thank you.

 2                    THE COURT:  Mr. Lee, you have been excused also.

 3     You are excused, sir, Mr. Lee.

 4                         (Sidebar begins.)

 5                    THE COURT:  Follow-up questions regarding the new

 6     group.

 7                    MR. SHINER:  Well actually, I think Ms. Erby has a

 8     hardship, too.

 9                    THE COURT:  It's a one-day thing.

10                    MR. EISNER:  She said two days.

11                    THE COURT:  Do you stipulate to excuse her?

12                    MR. SHINER:  I believe the funeral is Friday.

13                    MR. RAYNOR:  Your Honor, can I take few minutes to

14     consult with my client?

15                    THE COURT:  Why don't you consult with each other

16     first.

17                    MR. RAYNOR:  Just one moment, please.

18                    THE COURT:  Yes.

19                    MR. RAYNOR:  On behalf of Marquis Shaw, we do not

20     want to excuse her.

21                    THE COURT:  Do you wish to inquire?

22                    MR. RAYNOR:  No, Your Honor.

23                    THE COURT:  Pardon?

24                    MR. RAYNOR:  No, Your Honor.

25                    THE COURT:  You are not asking for additional
```

1    inquiry?

2            MR. RAYNOR:  No.

3            THE COURT:  The government is asking for additional

4    inquiry?

5        Ms. Erby, would you come forward, please?

6        Okay.  The issue is your other commitment for the funeral

7    and wake of a family member.  I'm assuming you have already --

8    it's a close family member?

9            PROSPECTIVE JUROR:  Yes, it is.

10           THE COURT:  It's a funeral you cannot miss?

11           PROSPECTIVE JUROR:  That's correct.

12           THE COURT:  If we can accommodate one of the two

13   days, would that -- would that allow you to remain as a juror

14   in the case?

15       In other words, if you attended the funeral but not the

16   wake or the wake but not the funeral, does that work?

17           PROSPECTIVE JUROR:  But how do I change an airline

18   ticket?  Once you purchase an airline ticket, there are fees

19   for making changes.

20           THE COURT:  Okay.  So, you are scheduled to fly out

21   when?

22           PROSPECTIVE JUROR:  At 11:00 a.m. on Thursday

23   morning.

24           THE COURT:  Thursday morning.

25       You are scheduled to return Saturday?

```
 1              PROSPECTIVE JUROR:  That's correct.
 2              THE COURT:  11:00 a.m. on Thursday.  What time is
 3    the wake?
 4              PROSPECTIVE JUROR:  I think five -- the wake is at
 5    five on Thursday, and the funeral is at noon on Friday.
 6              THE COURT:  And what city are you flying into?
 7              PROSPECTIVE JUROR:  In Oakland.
 8              THE COURT:  Oakland, California.  Does the
 9    government have any questions?
10              MR. SHINER:  Do you mind saying how close a family
11    member it is?
12              PROSPECTIVE JUROR:  Yes, it's my aunt.
13              MR. DIAZ:  No, Your Honor.
14              MR. EISNER:  No, Your Honor.
15              THE COURT:  Other than that, do you have any other
16    conflicts or commitments if you were to be selected as a juror
17    in this case?  Are there any other conflicts we should know
18    about?
19              PROSPECTIVE JUROR:  Not that I'm aware of.
20              THE COURT:  Other than that, you can be a juror in
21    the case?
22              PROSPECTIVE JUROR:  That's correct.
23              THE COURT:  Okay.  Thank you.
24              MR. EISNER:  I don't suppose you will get the day
25    off on Thursday and Friday on a long weekend?
```

UNITED STATES DISTRICT COURT

```
 1                 THE COURT:  Pardon?
 2                 THE COURTROOM DEPUTY:  Friday, the 16th, we're off.
 3                 THE COURT:  Well, I'm not sure.  Ms. Erby, what date
 4    -- what is the date again?
 5                 PROSPECTIVE JUROR:  The date -- I'm sorry.  My
 6    flight is on Thursday morning, Thursday at 11.
 7                 THE COURT:  This week?
 8                 PROSPECTIVE JUROR:  Yes.
 9                 THE COURT:  This week?
10       Yeah, it raises issues with other jurors in terms of
11    extending the trial date out.  Does the government wish to be
12    heard?
13                 MR. SHINER:  My point is simply that we don't think
14    having her miss this funeral -- this family member's funeral,
15    if we can accommodate her, that is fine, but it seems like an
16    awful hardship for her to miss this.
17                 THE COURT:  I can't order her to be here in light of
18    the fact she has a close family member.  She's already
19    committed to it, so we will have to come back to that.
20       Any other follow-up?
21                 MR. SHINER:  No, Your Honor.
22                 THE COURT:  I'm not going to excuse her at this
23    time.
24                 MR. EISNER:  Your Honor, can I inquire, did
25    Mr. Giron work in the Air Force in Guatemala or United States
```

```
 1    Air Force?

 2              THE COURT:  Mr. Reyes?

 3              MR. EISNER:  Yes.

 4              THE COURT:  No.

 5              MR. EISNER:  The Guatemala Air Force?

 6              THE COURT:  Yes.

 7         Okay.  Mr. Lopez, would you come up?

 8         Mr. Lopez.

 9              PROSPECTIVE JUROR:  Yes.

10              THE COURT:  You indicated to Mr. Cruz you have

11    another issue.

12              PROSPECTIVE JUROR:  Yes.  I just remembered my

13    mother is having surgery.  She has kidney stones.  She's going

14    to have them removed next week.  She is going to be out --

15    she's going to be out a couple of months.  I might be the sole

16    provider for the family, and since we have a bigger home, it's

17    our entire family, I don't think my salary will support us for

18    all of the bills we have.

19              THE COURT:  Surgery is when?

20              PROSPECTIVE JUROR:  I believe it's going to be this

21    Monday or next Monday.

22              THE COURT:  You said kidney stones?

23              PROSPECTIVE JUROR:  Yes, kidney stones.

24              THE COURT:  Will she be hospitalized?

25              PROSPECTIVE JUROR:  Yes.
```

```
 1              THE COURT:  And who is the support, who supports
 2     your family?
 3              PROSPECTIVE JUROR:  It's me and my mother.
 4              THE COURT:  She will be out of work?
 5              PROSPECTIVE JUROR:  She will be out of work.
 6              THE COURT:  Does she have any type of compensation
 7     coming in during her time off?
 8              PROSPECTIVE JUROR:  I don't believe so.  She works
 9     for the Red Cross.  They have been doing a lot of deductions
10     for the wages that they do.
11              THE COURT:  She will not be compensated?
12              PROSPECTIVE JUROR:  No.
13              THE COURT:  And what do you do for a living again?
14              PROSPECTIVE JUROR:  I work for program in an
15     aerospace company.  I'm a lead technician so I have my crew and
16     we build, repair, upgrade, and maintain military aircrafts for
17     the U.S. government.
18              THE COURT:  Does your company compensate you?
19              PROSPECTIVE JUROR:  No.  We do get accommodated for
20     juror service.
21              THE COURT:  Would they compensate you for five weeks
22     of jury service?
23              PROSPECTIVE JUROR:  I know for fact they will go up
24     for two weeks, but after that, it has to be reevaluated by the
25     managers.  I don't have contact with my managers at the current
```

1    moment since he is out of the country.

2              THE COURT:  So you are asking to be excused because

3    you need to take care of your mother?

4              PROSPECTIVE JUROR:  Yes.

5              THE COURT:  Physically and then financially for my

6    family.

7         Anyone else at home?

8              PROSPECTIVE JUROR:  No.

9              THE COURT:  Thank you.

10             PROSPECTIVE JUROR:  Thank you.

11             THE COURT:  So we go back to Ms. Erby.  Is there any

12   final comments about Ms. Erby?  The conclusion that the Court

13   comes to, it would be a personal family hardship -- economic

14   hardship for her to remain on the jury in light of the fact she

15   has committed financially and personally to attending a close

16   family member's funeral.

17        So the Court would be excusing her for cause.

18        Does anybody wish to be heard?

19             MR. EISNER:  No, Your Honor.

20             THE COURT:  Ms. Erby, thank you very much for all

21   your comments and your service here so far.  I'm sorry about

22   the family.

23             PROSPECTIVE JUROR:  Thank you.

24             MR. RAYNOR:  I do wish to be heard regarding

25   Mr. Lopez.

```
 1              THE COURT:  Okay.

 2              MR. RAYNOR:  We would stipulate.

 3              MR. SHINER:  Stipulate.

 4              THE COURT:  Mr. Lopez, you are excused for hardship.

 5    Thank you.  And I wish the best for your mother, okay.

 6         Are there some questions?

 7              MR. SHINER:  She said she had caretaking issue for

 8    her mother.  That is Ms. Emerson.

 9              THE COURT:  Ms. Emerson, would you come to sidebar

10    please?

11         The issue of hardship to you or your mother regarding

12    the --

13              PROSPECTIVE JUROR:  It's my mother, rather than to

14    me, yeah.

15              THE COURT:  So, I guess you need to explain it in

16    more detail.

17              PROSPECTIVE JUROR:  Okay.  So she can move around on

18    her own, and she is currently.  That is why she's able to be

19    alone during the day, but I do check in on her at lunch.

20         I work really close to my home and fortunately I'm able to

21    pop in and check in on her at lunch.

22         I go immediately home to the extent she has appointments

23    that she needs to be driven to.  I have the ability to take

24    time off work to do that.

25              THE COURT:  Do you have any siblings or any other
```

95

```
 1   family members?
 2              PROSPECTIVE JUROR:  No.
 3              THE COURT:  No other persons who could assist you?
 4              PROSPECTIVE JUROR:  No.
 5              THE COURT:  Does she have any medical appointments
 6   that are currently scheduled?
 7              PROSPECTIVE JUROR:  I think she has one in two
 8   weeks.  Yeah, I'm not sure of the exact date, but I think it
 9   was around the 20th.
10              THE COURT:  If we can accommodate that one
11   appointment, in other words, allow you to take her to that
12   appointment, could you be a juror in this case?
13              PROSPECTIVE JUROR:  Yes, I could.
14              MR. SHINER:  Can I follow up about her profession?
15              THE COURT:  Yes.
16              MR. SHINER:  In your work have you had any
17   professional interactions with the U. S. Attorney's Office.
18              PROSPECTIVE JUROR:  No, I haven't.
19              MR. SHINER:  Thank you.
20              THE COURT:  Thank you.  Okay.  Any additional
21   questions?
22              MR. SHINER:  That's it.
23              THE COURT:  Defense, any additional questions?
24         Okay.  We will now go to exercise preemptory challenges,
25   and let's fill the two seats on top.
```

1        THE COURTROOM DEPUTY:  Mr. Reyes, would you take

2    your seat up there?

3       Mr. Pierson, would you take the top seat there.

4        THE COURT:  Next, let's go to any pass for cause.

5        MR. SHINER:  Yes, Your Honor.

6        MR. RAYNOR:  Yes, Your Honor.

7        THE COURT:  Let's go to exercise preemptory

8    challenges for the government.

9        MR. SHINER:  Pass.

10       THE COURT:  Seven and eight to the defense.

11       MR. EISNER:  Well, we would like to thank and ask

12   the Court to please excuse juror in seat -- Juror Number 11.

13   Ms. Murakami.

14       THE COURT:  Ms. Murakami is excused.

15      Ms. Emerson would be in that seat.

16      Next would be the defense.

17       MR. DIAZ:  We would to thank and excuse Juror No. 1,

18   Your Honor, Mr. Reyes.

19       THE COURT:  Mr. Giron and Mr. Reyes is excused.

20      Let's put Emerson in this seat here.

21       THE COURTROOM DEPUTY:  Yes, Number 11.  Okay.

22   Ms. Emerson, would you please take the seat right there.  Thank

23   you.

24       THE COURT:  We will continue.

25                    (Sidebar ends.)

1          THE COURT:  Okay.  I think everybody knows the

2    drill.  We're going to call seven additional prospective

3    jurors, and we will have you answer the questions.

4      The two important questions initially are, can you be

5    fair, and can you participate?

6      So, let's have the seven additional jurors.

7          THE COURTROOM DEPUTY:  As I call your name, please

8    come forward.

9      Juror number 33, Nancy Thomas, Juror 33.

10     Juror Number 34, Albert Antonio Munoz.

11     Juror Number 35, Ann Mary Lopiparo, L-o-p-i-p-a-r-o.

12     Juror Number 36, Anita Ramirez, R-a-m-i-r-e-z.

13     Juror Number 37, Katie Dufour, D-u-f-o-u-r.

14     Juror Number 38, Romie Madrigal, M-a-d-r-i-g-a-l.

15     And Juror Number 39, Albert Navarro, N-a-v-a-r-r-o.

16         THE COURT:  Okay.  Let's start with Ms. Thomas.

17         PROSPECTIVE JUROR:  Hi, my name is Nancy Thomas.  I

18   live in Los Angeles.  I'm married.  I work as a diet tech at

19   Cedars Sinai.

20         MR. EISNER:  I'm sorry, Your Honor, I can't hear.

21         THE COURT:  She works as a diet tech at Cedars

22   Sinai.  Would you speak louder, please.

23         PROSPECTIVE JUROR:  My husband is a retired postal

24   service workers.

25     No children.  And I have been summoned but I have never

1    been on a panel.

2              THE COURT:  I'm not sure the microphone is working.

3              PROSPECTIVE JUROR:  It's working.

4              THE COURT:  Okay.  Can you, Ms. Thomas, can you

5    participate?

6              PROSPECTIVE JUROR:  Yes.

7              THE COURT:  And can you be fair, based on everything

8    you have heard so far -- can you be fair to the government and

9    fair to the defendants?

10             PROSPECTIVE JUROR:  I would try.

11             THE COURT:  To the best of your ability.

12             PROSPECTIVE JUROR:  Yes.

13             THE COURT:  Okay.  Thank you.  Let's pass the

14   microphone.  We go to Mr. Munoz.

15             PROSPECTIVE JUROR:  My name is Albert Munoz.  I live

16   in San Fernando.

17        I'm married.  I'm a warehouse manager.  My wife is a X-ray

18   technician for urgent care.

19        I have one child, two year-old, and I have never served

20   before.

21             THE COURT:  Can you participate in this case?

22             PROSPECTIVE JUROR:  Yes.

23             THE COURT:  And can you be fair to all of the

24   parties?

25             PROSPECTIVE JUROR:  Yes.

```
 1          THE COURT:  And no prior jury service; is that what
 2   you said?
 3          PROSPECTIVE JUROR:  Yeah.  I haven't done it before.
 4          THE COURT:  Okay.  Thank you.
 5          PROSPECTIVE JUROR:  I'm Ann Lopiparo.  I live in
 6   Harbor City.
 7      I'm married.  I'm a homemaker.  My spouse is a software
 8   engineer.
 9      No children.  I have never sat on a jury.
10          THE COURT:  Okay.  Can you participate in this case?
11          PROSPECTIVE JUROR:  Yes.
12          THE COURT:  Can you be fair, based on everything you
13   have heard so far?
14          PROSPECTIVE JUROR:  Yes.
15          THE COURT:  Thank you, Ms. Ramirez.
16          PROSPECTIVE JUROR:  My name is Anita Ramirez.  I
17   live in Oxnard.
18      Married.  I work for a mortgage investment company.  I'm a
19   loss mitigation specialist.
20      My husband works for a credit union.
21      I have no children, and my company does not pay five weeks
22   of jury duty, so I would experience a hardship.
23          THE COURT:  And okay, we will discuss hardship
24   further at sidebar.
25      Before you pass it, based on what you have heard so far,
```

```
 1    can you be fair to the parties?

 2               PROSPECTIVE JUROR:  Yes.

 3               THE COURT:  And then separate and apart from the

 4    issue of hardship, are there any other issues that would

 5    preclude you from being a juror in this case?

 6               PROSPECTIVE JUROR:  No.

 7               THE COURT:  Thank you.

 8               PROSPECTIVE JUROR:  Romie Madrigal.  I live in City

 9    of Torrance, and I am single.

10        My occupation -- I currently work with a law firm

11    litigation and medical malpractice.

12        Never been married.  No children, and never served.

13               THE COURT:  Okay.  And what your position at the

14    firm?

15               PERSPECTIVE JUROR:  I'm a legal assistant.  I assist

16    paralegals, from attorneys to secretaries, prepare them for

17    trial.  I review medical record charts, and also assist with

18    document production.

19               THE COURT:  Okay.  And the focus of the practice of

20    the firm is medical malpractice?

21        Did I understand you correctly?

22               PROSPECTIVE JUROR:  Primarily, yes.

23               THE COURT:  And then what other areas of law does

24    the firm engage in?

25               PROSPECTIVE JUROR:  Real estate.  It's real estate
```

```
1    and probate.

2               THE COURT:  Any criminal defense matters?

3               PROSPECTIVE JUROR:  No.

4               THE COURT:  Can you be a juror in this case?  Can

5    you participate as a juror in the case?

6               PROSPECTIVE JUROR:  Yes.

7               THE COURT:  Can you be fair based on what you have

8    heard so far?

9               PROSPECTIVE JUROR:  Yes.

10              THE COURT:  Next.  Mr. Madrigal.

11              PROSPECTIVE JUROR:  I'm Katie Dufour.

12              THE COURT:  I'm sorry.

13              PROSPECTIVE JUROR:  My name is Katie Dufour.  I live

14   in West Covina.

15        I am married.  I'm a clinic counter manager.

16        My husband is a wine and spirits representative.

17        We have no children, and I have never served.

18              THE COURT:  And then what do you do as a clinic

19   counter manager?

20              PROSPECTIVE JUROR:  It's an Ulta Beauty retailer so

21   I'm in charge of sales goals and all product that is sold by

22   Clinique.

23              THE COURT:  And can you participate in this case?

24              PROSPECTIVE JUROR:  Yes.

25              THE COURT:  And be fair, based on what you have
```

```
 1    heard so far?

 2              PROSPECTIVE JUROR:  Yes.

 3              THE COURT:  Thank you.  Next?

 4              PROSPECTIVE JUROR:  My name is Albert Navarro.  I

 5    live in Long Beach.  I'm single.

 6        My work is special education, structural assistant.

 7        I'm not married, two grown children, one works.  One does

 8    not.  The one that works is a technician, and I never served on

 9    a jury.

10              THE COURT:  You were formally married?

11              PROSPECTIVE JUROR:  Yes.

12              THE COURT:  The occupation of your former spouse.

13              PROSPECTIVE JUROR:  She never worked.

14              THE COURT:  Then your special education, what does a

15    structural assistant do?

16              PROSPECTIVE JUROR:  Just assist a teacher.

17              THE COURT:  And based on what you have heard so far,

18    do you feel you could be fair to all of the parties in the

19    case?

20              PROSPECTIVE JUROR:  Yes.

21              THE COURT:  Also, can you participate in a case that

22    will last five weeks?

23              PROSPECTIVE JUROR:  Yes.

24              THE COURT:  Okay.  Thank you.

25        So we start with the new group in terms of the questions.
```

**UNITED STATES DISTRICT COURT**

```
 1    Any arrests, convictions, or charges involving yourself, family

 2    members, or close friends.

 3         If you have a yes response or a former response, please

 4    raise your hand.

 5         We have one juror with her hand raised.  We have two,

 6    Mr. Navarro, and Ms. Dufour.  I have that, okay.

 7         Ms. Dufour, do you mind disclosing that in public or we

 8    should do it at sidebar?

 9              PROSPECTIVE JUROR:  Sidebar, please.

10              THE COURT:  Mr. Navarro?

11              PROSPECTIVE JUROR:  Whatever.

12              THE COURT:  Would you tell us about the prior

13    arrests, conviction, or charge?

14              PROSPECTIVE JUROR:  I have been arrested lots of

15    times.

16              THE COURT:  When was the last time?

17              PROSPECTIVE JUROR:  '99.

18              THE COURT:  What was the most serious offense?

19              PROSPECTIVE JUROR:  Probably drug possession, sales.

20              THE COURT:  And were you ever convicted of any of

21    those counts?

22              PROSPECTIVE JUROR:  Never.

23              THE COURT:  Based on your experience with law

24    enforcement, do you have a view as to whether you were treated

25    fairly or not?
```

**UNITED STATES DISTRICT COURT**

```
1              PROSPECTIVE JUROR:  The officers were great.

2              THE COURT:  You were treated?

3              PROSPECTIVE JUROR:  Great.

4              THE COURT:  I'm not sure what you mean by that.

5              PROSPECTIVE JUROR:  I was treated fairly.

6              THE COURT:  You were treated fairly.  Were you

7    treated fairly by the judicial system or process?

8              PROSPECTIVE JUROR:  Yes.

9              THE COURT:  In any of your matters, were you

10   represented by counsel.  Did you have a lawyer?

11             PROSPECTIVE JUROR:  Yes.

12             THE COURT:  And do you feel you were treated fairly

13   by the lawyer who represented you?

14             PROSPECTIVE JUROR:  Yes.

15             THE COURT:  There were prosecutors, I would imagine.

16   Do you have a view as to whether you were treated fairly by the

17   prosecutors involved?

18             PROSPECTIVE JUROR:  Yes.

19             THE COURT:  Did you serve any time in custody?

20             PROSPECTIVE JUROR:  A little bit.  Like a night or

21   two.

22             THE COURT:  Any -- so the arrests you mentioned is

23   drug-related.

24        What other offenses were you arrested for?

25             PROSPECTIVE JUROR:  Counterfeit, conspiracy to
```

**UNITED STATES DISTRICT COURT**

```
 1   commit burglary, burglary.  That's about it.
 2              THE COURT:  Were they state charges or federal
 3   charges?
 4              PROSPECTIVE JUROR:  They never really stuck, so I
 5   mean, probably the federal agents let me go.  The counterfeit,
 6   I can't imagine it being any more than state.
 7              THE COURT:  Were there federal law enforcement
 8   officers involved?
 9              PROSPECTIVE JUROR:  Regular police.
10              THE COURT:  When you say regular, what agency, if
11   you know?
12              PROSPECTIVE JUROR:  Simi Valley.
13              THE COURT:  Just to be clear again, you were never
14   convicted on any of the offenses?
15              PROSPECTIVE JUROR:  Only as a juvenile.
16              THE COURT:  And the juvenile offense that you were
17   -- was adjudicated against you, what was the offense there?
18              PROSPECTIVE JUROR:  Burglary.
19              THE COURT:  Okay.  Anyone else?  Arrests, charges,
20   or convictions?  Mr. Munoz, yes.
21              PROSPECTIVE JUROR:  I have a DUI.
22              THE COURT:  Let's have the microphone.
23              PROSPECTIVE JUROR:  Driving under the influence.
24              THE COURT:  How long ago was that?
25              PROSPECTIVE JUROR:  About four years ago.
```

1          THE COURT:  And do you feel you were treated fairly

2     by the police officers involved?

3          PROSPECTIVE JUROR:  Yes.

4          THE COURT:  By the judicial system or process?

5          PROSPECTIVE JUROR:  Yes.

6          THE COURT:  Will that experience in any way impact

7     your ability to be a juror in this case?

8          PROSPECTIVE JUROR:  No.

9          THE COURT:  Would you be bias at all against the

10    government because of the prior matter?

11         PROSPECTIVE JUROR:  No.

12         THE COURT:  Mr. Navarro, just to cover again, just

13    to make sure -- I just want to make sure none of your prior

14    convictions, charges, or arrests would in any way influence

15    your decision-making here, true?

16       I need a response directly.

17         PROSPECTIVE JUROR:  It wouldn't affect it.

18         THE COURT:  Thank you.  If you haven't otherwise

19    disclosed, is there anyone who has had any negative experiences

20    with any law enforcement officer or another agency?

21       No hands are raised.

22       Is there anyone of the new group, anyone who has ever

23    applied to be a member of the law enforcement agency, ever

24    worked with law enforcement agency, again, this applies to

25    yourself, family members, or close friends?

1        Okay.  Mr. Munoz, had his hand up.

2              PROSPECTIVE JUROR:  I applied to the border patrol.

3              THE COURT:  And was this a recent application?

4              PROSPECTIVE JUROR:  Yeah, it was last year.

5              THE COURT:  Are you still pursuing that process?

6              PROSPECTIVE JUROR:  No, I got a disqualified.

7              THE COURT:  Well, the fact you have been

8    disqualified, will that impact your decision-making here as a

9    juror?

10             PROSPECTIVE JUROR:  No.

11             THE COURT:  Okay.  Anyone else?

12       No hands are raised.

13       Anyone who has strong feelings, one way or the other

14   regarding laws regulating the use, possession, transportation,

15   or sales of controlled substances or firearms?

16       No hands are raised.

17       Again, the gang that has been mentioned in the indictment

18   here, and it's been mentioned here in Court is the Broadway

19   Gangster Crips.

20       Does anyone have any prior experience or is familiar with

21   that gang at all?

22       No hands are raised.

23       Is there anyone who is familiar with any other gangs?

24       No hands are raised.

25       Again, just to repeat, the goal -- the object here is to

1    reach a verdict, if the jury can reach a verdict.

2        It's going to require the jury to work hard to resolve

3    conflicts.

4        There will be conflicts in the course of the trial,

5    conflicts in evidence that the jury will be required to work to

6    resolve, if those conflicts can be resolved.

7        You are going to be required to assess the credibility of

8    the witnesses who are going to be called, and evaluate all of

9    the exhibits, and physical evidence that is offered in the

10   course of the trial.

11       Is there anyone who is concerned about your ability to

12   follow or comply with those duties of a juror?

13       No hands are raised.

14       Again, it requires you to work in a group setting.

15       Does everyone feel comfortable working with 11 other

16   jurors?

17       Okay.  Is there anyone who is concerned about their

18   ability to work with others?

19       No hands are raised.

20       Is there anyone who has ever been a victim of a violent

21   crime involving yourself, family members, or close friends?

22       No hands are raised.

23       Okay.  Again, this is the opportunity for the new group to

24   offer additional information you believe the lawyers should

25   know about in determining whether you should be a juror in this

```
 1    case.
 2         Any additional information to offer that you have not
 3    otherwise disclosed?
 4         Does anyone have any medical conditions that need to be
 5    disclosed involving yourself, family members, or close friends?
 6         Again, no hands.
 7         And then the issue of hardship.
 8         I just want to, again, cover any of the new group that has
 9    concerns regarding hardship.
10         Would you raise your hand.  Any hardships of the new
11    group?
12         Okay.  Ms. Ramirez, is that correct.
13              PROSPECTIVE JUROR:  Yes.
14              THE COURT:  That's it.  Let's come to sidebar.
15                        (Sidebar begins.)
16              THE COURT:  If you would -- if you would like an
17    opportunity to stand up and stretch, feel free to do that.
18              THE COURTROOM DEPUTY:  Yes.
19              THE COURT:  Let me inquire, do you want me to
20    inquire further of Ms. Ramirez who has indicated hardship.  I
21    can call her to sidebar.
22              MR. KETCHEL:  Yes.
23              THE COURT:  Ms. Ramirez, would you come to sidebar
24    please?
25         First of all, I didn't notice, did you raise your hand
```

1    regarding prior arrests?

2           PROSPECTIVE JUROR:  Yes.  My sister was arrested for

3    possession of crystal methamphetamine.

4           THE COURT:  How long ago was that?

5           PROSPECTIVE JUROR:  Last year.

6           THE COURT:  You were present when she was arrested?

7           PROSPECTIVE JUROR:  No.

8           THE COURT:  Did she discuss the matter with you?

9           PROSPECTIVE JUROR:  The police officer did.

10          THE COURT:  Did she discuss it with you?

11          PROSPECTIVE JUROR:  She has never admitted to doing

12   that drug.

13          THE COURT:  Okay.  Based on what you know of the

14   situation, do you have a view or opinion as to whether she was

15   treated fairly or not by law enforcement?

16          PROSPECTIVE JUROR:  She was treated fairly.

17          THE COURT:  The case -- are the charges currently

18   pending?

19          PROSPECTIVE JUROR:  No.  They are not pending.

20          THE COURT:  Was it a state prosecution or federal

21   prosecution?

22          PROSPECTIVE JUROR:  It was the county.  But I don't

23   think she -- I think it was probably dismissed already.

24          THE COURT:  Did you appear at any of the court

25   appearances --

```
1              PROSPECTIVE JUROR:  No.

2              THE COURT:  -- with her?

3              PROSPECTIVE JUROR:  No.

4              THE COURT:  Is there any way that that matter is

5    going to influence your decision-making here?

6              PROSPECTIVE JUROR:  No.

7              THE COURT:  Let's go to the hardship issue.

8         So you have expressed a hardship concern.

9              PROSPECTIVE JUROR:  Yes.

10             THE COURT:  Just tell us about that.

11             PROSPECTIVE JUROR:  So, the five weeks, my company

12   only pays two days.  So I would experience a hardship --

13   financial hardship.

14             THE COURT:  Who are you employed with?

15             PROSPECTIVE JUROR:  PennyMac.

16             THE COURT:  Two days.  Who else that supports the

17   household?

18             PROSPECTIVE JUROR:  My husband and myself.

19             THE COURT:  And are you able to -- I guess pay or

20   cover your bills if you are not working and getting compensated

21   by your employer?

22             PROSPECTIVE JUROR:  Probably for three weeks, but

23   not more than that.

24             THE COURT:  Not five.

25             PROSPECTIVE JUROR:  Not five, probably not.
```

```
 1                THE COURT:  Do you currently rent or do you own your
 2    home?
 3                PROSPECTIVE JUROR:  We rent.
 4                THE COURT:  And I assume -- do you have any other
 5    sources of income?
 6                PROSPECTIVE JUROR:  No.  I just work for PennyMac.
 7                THE COURT:  Your husband has no other sources of
 8    income?
 9                PROSPECTIVE JUROR:  He works at the credit union.
10                THE COURT:  I assume you are not independently
11    wealthy?
12                PROSPECTIVE JUROR:  No.
13                THE COURT:  Do you wish to inquire further --
14    government wish to inquire?
15                MR. SHINER:  No, Your Honor.
16                MR. EISNER:  No, Your Honor.
17                THE COURT:  Thank you.  Her request to be excused is
18    an economic hardship.  Accordingly, I intend to grant the
19    request, unless otherwise convinced.  Does anyone wish to be
20    heard?
21                MR. SHINER:  No objection.
22                THE COURT:  Ms. Ramirez, you have been excused.
23        Thank you very much.
24        Any follow-up questions?  Government?
25                MR. SHINER:  Co-counsel thinks Ms. Defour raised her
```

1    hand.

2            THE COURT:  Well, we should make sure.

3        Ms. Dufour.  It's a common name, we should ask her about

4    that.

5        Ms. Dufour, would you come to sidebar.  Did you have your

6    hands raised regarding prior arrests?

7            PROSPECTIVE JUROR:  Yes.  When I was 18 years ago, I

8    had a DUI and resisting arrest and possession of

9    methamphetamine.

10           THE COURT:  So you were arrested?

11           PROSPECTIVE JUROR:  I was arrested and convicted,

12   yes.  But I know this sounds cliche, but it wasn't mine.  I

13   don't think it was fair.

14           THE COURT:  Were you arrested being under the

15   influence of controlled substance?

16           PROSPECTIVE JUROR:  No.

17           THE COURT:  Were you driving the car?

18           PROSPECTIVE JUROR:  Yes.

19           THE COURT:  Was anyone in the vehicle?

20           PROSPECTIVE JUROR:  Yes.

21           THE COURT:  You were arrested and charged?

22           PROSPECTIVE JUROR:  Yes.

23           THE COURT:  What was the result?

24           PROSPECTIVE JUROR:  I was in the police station for

25   about three days.  After that they gave me a felony, but they

1      called it something else, which basically meant I had to do

2      classes and probation, and then after that, they took it off,

3      but I still had the arrest, the DUI and hit and run and

4      resisting arrest.

5                  THE COURT:  So the wobbler meaning the prosecutor

6      could pursue a felony or misdemeanor.  If you completed the

7      classes, it was a misdemeanor?

8                  PROSPECTIVE JUROR:  Uh-huh.

9                  THE COURT:  What was the quantity that was involved

10     they were alleging?

11                 PROSPECTIVE JUROR:  I honestly don't remember.

12       I know it was a lot.  I didn't even understand what the

13     amount meant that they said I had.

14                 THE COURT:  When you say a lot.  Is it -- I'm not

15     sure what that means.

16                 PROSPECTIVE JUROR:  I think it was in the tens of

17     grams.  I don't know what that means.

18                 THE COURT:  Do you feel that that matter is going to

19     influence your decision-making here?

20                 PROSPECTIVE JUROR:  No, not really.

21                 THE COURT:  Are you concerned about your ability to

22     be fair to the government in this case because of that prior

23     arrest and charge?

24                 PROSPECTIVE JUROR:  Not that I'm aware, currently.

25                 THE COURT:  You said the controlled substances were

```
 1   not yours, but the government charged you for that.
 2        Do you feel that was fair?
 3              PROSPECTIVE JUROR:  No, I don't feel it was fair.
 4              THE COURT:  Again, can you set that aside and decide
 5   the case based on the evidence in the law to the best of your
 6   ability?
 7              PROSPECTIVE JUROR:  I can try the best of my
 8   ability, yes.
 9              THE COURT:  Can you participate in this case?
10              PROSPECTIVE JUROR:  Yes.
11              THE COURT:  And you are saying you could be fair?
12              PROSPECTIVE JUROR:  Yes.
13              THE COURT:  To all of the parties?
14              PROSPECTIVE JUROR:  Yes.
15              THE COURT:  If the government proves the case beyond
16   a reasonable doubt, can you return a verdict to the federal
17   government?
18              PROSPECTIVE JUROR:  Yes.
19              THE COURT:  If they fail to do that, can you return
20   a verdict in favor of the defendant?
21              PROSPECTIVE JUROR:  Yes.
22              THE COURT:  Thank you.  Anything else?  Follow ups?
23              MR. SHINER:  No.
24              THE COURT:  Defense followup?
25              MR. RAYNOR:  No.
```

```
1            MR. EISNER:  No.

2            THE COURT:  Okay.  We go to motions for cause as to

3    the new group.  Government first.

4            MR. SHINER:  One moment, Your Honor.

5            THE COURT:  For cause challenge as to Ms. Dufour.

6            MR. SHINER:  So the Court's questions, whether she

7    was treated fairly, she did not -- clearly because she

8    maintains it was not her drugs that she was arrested for and

9    charged with, and when you asked if she could be fair, she did

10   -- I think she hesitated significantly.

11           MR. DIAZ:  I don't think she hesitated, Your Honor.

12   I think she has acknowledged what happened to her.  She said

13   she could do the best she can.

14           THE COURT:  The Court can only go by the good faith

15   of the juror.  She has indicated she can be fair to the best of

16   her ability.  I believe she meant it when she said that, so the

17   motion for cause would be denied.

18      I'm assuming that no defense counsel is moving for cause

19   as to Ms. Dufour?

20           MR. EISNER:  No.

21           MR. RAYNOR:  Correct, Your Honor.

22           THE COURT:  Motion is denied.  So any other motions?

23           MR. EISNER:  I do, Your Honor.

24           THE COURT:  I'm waiting for the government.

25           MR. SHINER:  Pass.
```

**UNITED STATES DISTRICT COURT**

```
1              THE COURT:  Okay.  Defense.

2              MR. EISNER:  You know, it might be premature, but

3    the juror in Seat No. 1, when she was asked if she could be

4    fair to the defense, she said, I will try.  And I just -- I

5    know the record is just left on that, but --

6              THE COURT:  I can inquire further.

7              MR. SHINER:  We completely forgot to ask her about

8    the witness -- the Beverly Hills police officer regarding

9    Ms. Dufour.

10             THE COURT:  Yes.  Ms. Dufour, just one question.  Do

11   you have any -- to your knowledge -- do you have any relatives

12   that are law enforcement officers?

13             PROSPECTIVE JUROR:  No.

14             THE COURT:  Do you know one way or the other?

15         No relatives who are law enforcement officers; is that

16   correct?

17             PROSPECTIVE JUROR:  No, neither.

18             THE COURT:  Okay.  Ms. Thomas, just a quick

19   question.  I just want to make sure that based on your

20   ability -- based on all of the information you received so far

21   regarding this case, can you be fair to the government, can you

22   be fair to the defendants to the best of your ability?

23             PROSPECTIVE JUROR:  Yes.

24             THE COURT:  Do you have any concern about your

25   ability to be fair to any of the parties here?
```

```
1                    PROSPECTIVE JUROR:  No.

2                    THE COURT:  Thank you.  Are you pursuing any motion

3       for cause as to Ms. Thomas?

4                    MR. EISNER:  No, Your Honor.

5                    THE COURT:  Does the defense pass for cause as to

6       the remainder?

7                    MR. RAYNOR:  Yes, Your Honor.

8                    THE COURTROOM DEPUTY:  Several of the alternates, I

9       mean, the people in the audience had to go to the bathroom.

10      They had to leave, and Juror Number 13, who is Mr. Munoz,

11      indicated that he wanted to let you know that he owns a weapon,

12      and he forgot to tell you.

13                   THE COURT:  Okay.  Do you wish to inquire at

14      sidebar?

15                   MR. RAYNOR:  He owns what?

16                   THE COURTROOM DEPUTY:  A weapon.

17                   THE COURT:  This is Number 5?

18                   THE COURTROOM DEPUTY:  Yes.

19                   THE COURT:  So do we have a clear pass for cause as

20      to the defense?

21                   MR. EISNER:  One more moment.

22                   THE COURT:  Okay.  We need to move.

23                   MR. EISNER:  Pass for cause.

24                   MR. RAYNOR:  Yes, sir.

25                   THE COURT:  Next preemptory is with the government.
```

```
 1    This is government's number 5.
 2                MR. SHINER:  Pass.
 3                THE COURT:  Pass.  Mr. Cruz is returning.
 4    Government passed as to 5.
 5                THE COURTROOM DEPUTY:  Okay.
 6                THE COURT:  Then we go to 9 and 10, the last.
 7                MR. RAYNOR:  The defense would ask the Court to
 8    thank and excuse Juror No. 2.
 9                THE COURT:  Mr. Teasley?
10                MR. RAYNOR:  Correct.
11                THE COURT:  This is a male, and I think probably at
12    least part African-American?
13                MR. RAYNOR:  Yes.
14                THE COURT:  Anyone?  African-American.  Mr. Teasley
15    is excused.
16        Mr. Teasley, you are excused.  Thank you very much.  You
17    are excused.  Thank you.
18        And Mr. Munoz, would you take that seat?
19                MR. RAYNOR:  Your Honor, could I have one moment?
20                THE COURT:  Yes.  Next is with the defense.
21        Counsel, I need to conclude this.
22                MR. RAYNOR:  The defense would ask the Court to
23    thank and excuse Juror No. 3.
24                THE COURT:  Juror No. 3, Ms. Kim.  Okay.  This is
25    your last -- this is the last for defense.
```

UNITED STATES DISTRICT COURT

```
1              MR. RAYNOR:  Okay.

2              THE COURT:  Ms. Liem is excused.  Thank you very

3     much.

4         Ms. Murakami, would you take that seat please?

5         Next and last for the government?

6              MR. SHINER:  Pass, Your Honor.

7              THE COURT:  Okay.  I have that the government has

8     passed on their sixth, and I have -- my record reflects that

9     the defendants have used all ten preemptories.

10        Is there any legal reason why the jury should not now be

11    sworn in?

12             MR. RAYNOR:  None from the defense.

13             MR. SHINER:  No.

14             THE COURT:  We have a jury that has been selected.

15    It's the first 12.  We still have to select the alternates, so

16    all of the members of the first jury will be the members of the

17    jury once you have sworn them in.

18        So let's have the jury sworn in.

19             THE COURTROOM DEPUTY:  Ladies and gentlemen, will

20    you all rise to be sworn in.

21        Ladies and gentlemen of the jury, do you solemnly swear

22    you will well and truly try the case now pending before this

23    Court and render a true verdict according to the evidence, so

24    help you God?

25             JURORS:  I do.
```

1          THE COURTROOM DEPUTY:  Thank you.  Please be seated.

2          THE COURT:  We move to the selection of alternates.

3    And we will call -- let's see, three additional.

4        Would you move the alternates over?

5          THE COURTROOM DEPUTY:  Yes, Your Honor.

6        Would you please move this way, okay.

7        If I call your name, please come forward.

8        Juror Number 40, Felita Wiltz.  W-i-l-t-z.

9        Juror Number 41, Pamela Cosse, C-o-s-s-e.

10       And Juror Number 42, Raul Pulido, P-u-l-i-d-o.

11         THE COURT:  Okay.  We have selected a jury in the

12   case.  Now we're selecting alternates in the case.

13       We're going to have four alternates in the case.  The goal

14   or the role of the alternate is to treat the case as seriously

15   as if you were a regularly-seated juror with the understanding

16   you may never be called to participate in the jury

17   deliberation.  It's always a jury of 12 persons.  The

18   alternates are not sitting there.

19       In case a member of the jury is excused, the excuse has to

20   be for exceptional reasons and good cause, you have to be able

21   to step inside and participate in that deliberation process.

22       Of the new group that are prospective alternates, is there

23   anyone who believes they cannot fulfill their duties as

24   alternates?

25       Okay.  We will start with the new group that has taken a

```
 1    seat.  We're going to start with Ms. Wiltz.
 2              PROSPECTIVE JUROR:  My name is Felita Wiltz.  I live
 3    in Los Angeles.  I'm married.  I am a caregiver/property -- I
 4    mean, just say caregiver.
 5         My husband is a property manager.
 6         I have one child and five step children, and I have served
 7    once on civil, and we did not reach a verdict.
 8              THE COURT:  Okay.  Can you participate as an
 9    alternate in this case?
10              PROSPECTIVE JUROR:  I don't think so, because I have
11    been having bad back pains, and I don't know how long I can sit
12    down because just today I had trouble sitting.
13              THE COURT:  Are you currently under the care of a
14    physician or doctor?
15              PROSPECTIVE JUROR:  I just had an MRI and X-rays and
16    I'm going to go to pain management next week.
17              THE COURT:  Okay.  Are you currently taking
18    medication?
19              PROSPECTIVE JUROR:  Just when it gets too bad, that
20    is when I take it.
21              THE COURT:  How long has the problem presented
22    itself?
23              PROSPECTIVE JUROR:  A long time.
24              THE COURT:  Okay.  And so, I don't want to put words
25    in your mouth, but I just want to make sure you are requesting
```

```
 1    to be excused because of the medical issue and condition?

 2              PROSPECTIVE JUROR:  Thank you.

 3              THE COURT:  I'm not excusing you.  I'm saying is

 4    that your request?  Is that your request?

 5              PROSPECTIVE JUROR:  Yes.

 6              THE COURT:  Separate and apart from that issue, are

 7    there any other issues regarding hardship?

 8              PROSPECTIVE JUROR:  No.

 9              THE COURT:  Based on what you have heard so far, do

10    you feel you could be fair to the parties here?

11              PROSPECTIVE JUROR:  Yes.

12              THE COURT:  Okay.  If you need to stand because of

13    your back, feel free to do that.

14              PROSPECTIVE JUROR:  Thank you.

15              THE COURT:  Next?

16              PROSPECTIVE JUROR:  My name is Pamela Cosse.  I live

17    in Pasadena.

18         I'm married.  I'm retired.  My husband's most recent job,

19    he's a clinical psychologist.

20         I have two children.  One works in DC for a policy group,

21    and the other one works on Wall Street.

22         And I have been called, but never selected.  Maybe in the

23    state of Pennsylvania, I was actually on a jury, but we didn't

24    go forward, they canceled it.

25              THE COURT:  Did you say you are retired?
```

```
1              PROSPECTIVE JUROR:  Yes.

2              THE COURT:  What was your occupation?

3              PROSPECTIVE JUROR:  Toxicologist.

4              THE COURT:  In what capacity?

5              PROSPECTIVE JUROR:  I was working for a chemical

6    company conducting toxic tests.

7              THE COURT:  Could you describe a little bit more

8    what you did on a daily basis?

9         Do you have a chemistry background?

10             PROSPECTIVE JUROR:  Biology.  So we tested

11   developmental agricultural products.

12        So, for example, if you look on a package, you see all of

13   the LD50s, all of that, I conducted studies like that.

14             THE COURT:  And did you perform any tests regarding

15   controlled substances?

16             PROSPECTIVE JUROR:  There were -- as far as drugs,

17   no, these are agricultural products.

18             THE COURT:  Were you ever called as a consultant in

19   any litigation?

20             PROSPECTIVE JUROR:  No.

21             THE COURT:  Ever testified in Court in that

22   capacity?

23             PROSPECTIVE JUROR:  No.  But in other capacities.

24             THE COURT:  Well, tell us about that.

25             PROSPECTIVE JUROR:  I sued a nursing home.  So I
```

```
 1   was --

 2             THE COURT:  The plaintiff?

 3             PROSPECTIVE JUROR:  Yes.  In the state of

 4   Pennsylvania.

 5             THE COURT:  Well, will that matter influence your

 6   decision-making here at all?

 7             PROSPECTIVE JUROR:  No.  It's two separate things.

 8             THE COURT:  Can you be fair to all of the parties?

 9             PROSPECTIVE JUROR:  I believe so.

10             THE COURT:  And participate?

11             PROSPECTIVE JUROR:  Yes.

12             THE COURT:  And the occupation of your husband

13   again?

14             PROSPECTIVE JUROR:  Clinical psychologist.

15             THE COURT:  Does he have his own practice?

16             PROSPECTIVE JUROR:  He runs -- what do you mean?

17   Does he have his own practice?  He has a private practice and

18   he's a professor, and he runs a clinical psychology.

19             THE COURT:  He's a professor, so he teaches?

20             PROSPECTIVE JUROR:  He runs -- he runs a clinic and

21   he has private practice.

22             THE COURT:  Okay.  Does his target patient, can you

23   describe his target patient, the type of patient he would be

24   treating?

25             PROSPECTIVE JUROR:  No, I can't not really.  That is
```

```
 1    confidential.

 2              THE COURT:  Does it involve any substance abuse?

 3              PROSPECTIVE JUROR:  I couldn't tell you that.  He

 4    doesn't say.

 5              THE COURT:  Has he discussed anything with you

 6    regarding his work that would influence your decision-making in

 7    this case?

 8              PROSPECTIVE JUROR:  No.

 9              THE COURT:  Thank you.  Next?

10              PROSPECTIVE JUROR:  My name is Raul Pulido.  I live

11    in the City of Oxnard.  I'm single.

12         I have several occupations.  I work for the County of

13    Ventura human services agency as a client benefit specialist.

14         I work for a movie theater as a concessionist.  I'm a

15    notary public.

16         No spouse.  No children, and never served on a jury.

17              THE COURT:  Okay.  So you are a very busy person?

18              PROSPECTIVE JUROR:  Yes.

19              THE COURT:  And you have come a long way to be here

20    today.

21         So let me just start, can you participate in this case?

22              PROSPECTIVE JUROR:  Yes.

23              THE COURT:  Can you be fair to all of the parties?

24              PROSPECTIVE JUROR:  Yes.

25              THE COURT:  Based on what you have heard so far?
```

1          PROSPECTIVE JUROR:  Yes.

2          THE COURT:  Okay.  Now back to the new group that

3     has taken a seat.

4        Any prior arrests, convictions, or charges involving your

5     family, yourself, family members, or close friends.  We have

6     Mr. Pulido.  Would you tell us about that, sir?

7          PROSPECTIVE JUROR:  In July of 2016, I was arrested

8     for driving under the influence, and in August of 2016, I was

9     convicted.

10         THE COURT:  You are talking about you, personally?

11         PROSPECTIVE JUROR:  Yes.

12         THE COURT:  What agency was involved?

13         PROSPECTIVE JUROR:  Ventura County Sheriff's Office.

14         THE COURT:  Do you have an opinion as to whether you

15    were treated fairly or not by law enforcement?

16         PROSPECTIVE JUROR:  I was treated fairly.

17         THE COURT:  By the judicial process or system.

18         PROSPECTIVE JUROR:  Treated fairly.

19         THE COURT:  Were you represented by counsel in that

20    case?

21         PROSPECTIVE JUROR:  No.

22         THE COURT:  Will that matter influence your

23    decision-making here?

24         PROSPECTIVE JUROR:  No.

25         THE COURT:  Ms. Wiltz, I think you had your hand

```
 1   raised also?
 2             PROSPECTIVE JUROR:  My husband was arrested, but it
 3   was over before I met him.
 4             THE COURT:  Do you know what the arrest was for?
 5             PROSPECTIVE JUROR:  For receiving stolen goods.
 6             THE COURT:  Did he discuss the matter with you?  Has
 7   he discussed the matter with you?
 8             PROSPECTIVE JUROR:  Not really.
 9             THE COURT:  Based on what you know from any
10   discussions with him or others, do you have an opinion as to
11   whether he was treated fairly or not by law enforcement?
12             PROSPECTIVE JUROR:  Yes.
13             THE COURT:  Do you have an opinion one way or the
14   other?
15             PROSPECTIVE JUROR:  No.
16             THE COURT:  None.  Will that matter in any way
17   influence your decision-making here?
18             PROSPECTIVE JUROR:  No.
19             THE COURT:  Is there anyone who has ever applied --
20   yourself, close friends, family members applied to any law
21   enforcement agency or worked for any law enforcement agency?
22             PROSPECTIVE JUROR:  Yes, I forgot to tell you, my
23   son, he works for the Sheriff's Department.
24             THE COURT:  Which county?
25             PROSPECTIVE JUROR:  County of San Bernardino.  He's
```

1    a dispatcher.

2              THE COURT:  He's a civilian employee?

3              PROSPECTIVE JUROR:  Yeah.

4              THE COURT:  And again, will that influence you here?

5              PROSPECTIVE JUROR:  No.

6              THE COURT:  Thank you.  And then Mr. Pulido had his

7    hand raised.

8              PROSPECTIVE JUROR:  In 2014, I applied for Ventura

9    County Sheriff's Office.

10             THE COURT:  And did you -- how far did you go in

11   that application process?

12             PROSPECTIVE JUROR:  Background check.

13             THE COURT:  Were you offered a position?

14             PROSPECTIVE JUROR:  No.

15             THE COURT:  And will that fact influence your

16   decision-making here?

17             PROSPECTIVE JUROR:  No.

18             THE COURT:  Does anyone have strong views or

19   opinions concerning laws, regulating weapons, or controlled

20   substances one way or the other?

21        Just to reiterate the principles of law, again, no duty to

22   call witnesses, no duty to testify, no duty to present any

23   physical evidence, the government always has a burden of

24   proving their case beyond a reasonable doubt as to each count

25   and each defendant.  If there is a failure to do that, the

1    verdict is in favor of the defendants.

2        If the government convinces you beyond a reasonable doubt,

3    to your satisfaction, it is the verdict in favor of the

4    government.

5        Of the new group, does anyone have any concerns about

6    their ability to follow those principles of law?

7        No hands are raised.

8        We have Ms. Wiltz who has indicated a medical condition,

9    and I'm sensitive to the back condition.  My wife has a back

10   condition, too, so I know it could be extremely problematic.

11       Does anyone else have any other medical issues to bring to

12   the Court's attention?

13       None?

14       Is there any additional information you have that should

15   be disclosed to the lawyers and the parties to determine

16   whether you should be an alternate in the case.

17       Again, the role of the alternate is to pay attention,

18   treat the case as seriously as a regular sitting juror with the

19   understanding you may not be called to participate in

20   deliberations, but you have to be able to step in there, if

21   called upon.

22       Can everyone do that?  Yes?

23       Okay.  Let's have counsel at sidebar.

24                   (Sidebar begins.)

25            THE COURT:  Follow-up questions?  We have Ms. Wiltz

```
 1   who indicated that she has a severe back problem.

 2              MR. RAYNOR:  No objection.

 3              THE COURT:  I think she looks like she has a back

 4   problem.

 5       Do we agree she should be excused?

 6              MR. SHINER:  Agreed.

 7              THE COURT:  Ms. Wiltz, thank you very much.  You are

 8   excused.

 9       Any follow-up?

10              MR. SHINER:  No.

11              THE COURT:  Defense, any follow-up?

12              MR. EISNER:  No, Your Honor.

13              MR. RAYNOR:  No.

14              THE COURT:  We go to motions for cause.

15              MR. SHINER:  Nothing for cause.  Pass.

16              MR. RAYNOR:  Pass for cause, Your Honor.

17              THE COURT:  We go to the preemptory challenges.

18   Ramirez is one, Dufour is two, and Madrigal.

19              THE COURTROOM DEPUTY:  I'm sorry, Dufour is one.

20              THE COURT:  Dufour is one.  Who is next?

21              MR. RAYNOR:  I think the seats got mixed up.

22              THE COURTROOM DEPUTY:  It should be -- they switched

23   seats.  It's Dufour and Ms. Madrigal.

24       Ms. Dufour is next.

25              THE COURT:  Let's switch them up.
```

1        THE COURTROOM DEPUTY:  Okay.  Could Ms. Dufour and

2   Madrigal, could you please switch seats?

3        THE COURT:  You got out of order.

4     Okay.  First preemptory is for the government.

5        MR. SHINER:  We would like to thank and excuse

6   Ms. Dufour.

7        THE COURT:  We have Mr. Pulido?  The preemptory goes

8   to the defense.

9        MR. RAYNOR:  Just a second.

10       THE COURT:  So we have Madrigal, Navarro, Cosse.

11       THE COURTROOM DEPUTY:  And Pulido.

12       MR. DIAZ:  Defense would like to thank and excuse

13   Number 18, Mr. Pulido.

14       THE COURT:  Mr. Pulido is excused.

15       MR. SHINER:  Who are the four still seated?

16       THE COURT:  Ms. Dufour is excused.

17     We should call three more.  We need to have four.

18     Okay.  We're going to call three additional prospective

19   alternates.

20                      (Sidebar ends.)

21       THE COURTROOM DEPUTY:  Okay.  Ladies and gentlemen,

22   would you please take the seat again.

23     Okay, as I call your name, please come forward.

24     Juror Number 43, Michelle Grosenbach, G-r-o-s-e-n-b-a-c-h.

25     Juror Number 44, Vivian Sheng, S-h-e-n-g.

1          And Juror Number 45, Jesse Sasaki, S-a-s-k-i.

2               THE COURT:  Okay.  We have -- let's start with

3     Ms. Grosenbach.

4               PROSPECTIVE JUROR:  Yes.  My name is Michelle

5     Grosenbach.  I live in Arcadia, California.  I'm single.  I

6     work as implementation consultant at Wells Fargo Bank.

7          I have no children, and I have served as an alternate

8     twice on a jury.  Both criminal.

9          One came to a verdict and the other one was settled

10    outside the courtroom.

11              THE COURT:  Anything discussed or heard or viewed

12    that would influence your decision-making here?

13              PROSPECTIVE JUROR:  No.

14              THE COURT:  What is an implementation consultant --

15    what do you do?

16              PROSPECTIVE JUROR:  What I do is we have other banks

17    and we have their customers that come into Wells Fargo, and I

18    set up lock box payment solutions for them, and do complex file

19    layout account receivable transmissions.

20              THE COURT:  And can you participate in this case?

21              PROSPECTIVE JUROR:  Yes, I can.

22              THE COURT:  And be fair to all of the parties?

23              PROSPECTIVE JUROR:  Yes, I can.

24              THE COURT:  I'm not going to repeat all of the

25    questions I have asked, but I have asked a number of questions.

```
 1        Are there any questions that stand out in your mind you
 2   would like to respond to?
 3              PROSPECTIVE JUROR:  My cousin -- her husband is in
 4   law enforcement for Orange County Sheriff.
 5        I do have friends that are with Temple City Sheriff that I
 6   know, acquaintances, but they are not someone I see on a
 7   regular basis, but I do know them.  Other than that, no.
 8              THE COURT:  Will your relationships with these
 9   individuals or persons influence your decision-making here?
10              PROSPECTIVE JUROR:  No.
11              THE COURT:  Again, your duty is to assess the
12   credibility of the witnesses.  There will be law enforcement
13   officers and civilian witnesses.  You start the process by
14   applying the same standard, the ultimate decision or conclusion
15   is up to you along with your fellow jurors when you deliberate.
16   We start the same process by applying the same standard.
17        I need a response.
18              PROSPECTIVE JUROR:  Yes.
19              THE COURT:  Okay.  And then we go next Ms. Sheng.
20              PROSPECTIVE JUROR:  Vivian Sheng.  I live in the
21   City of Long Beach.  I'm married.
22        I'm a real estate appraiser for LA County Assessors
23   Office.
24        My husband is a school teacher.  We don't have any
25   children.
```

```
1        I have had prior jury service.  I know I have been on at

2   least two cases.  One, we did come to a verdict.  On the second

3   one, I was dismissed before the trial was over.

4             THE COURT:  Were they civil cases or criminal cases?

5             PROSPECTIVE JUROR:  Criminal.

6             THE COURT:  And any case similar to this one here?

7             PROSPECTIVE JUROR:  Just that they were criminal

8   cases, and there was -- the one, there was a gun involved.

9             THE COURT:  Is there any part of your experience

10  there that would influence your decision-making here?

11            PROSPECTIVE JUROR:  No.

12            THE COURT:  Can you be fair to the parties and also

13  participate?

14            PROSPECTIVE JUROR:  Yes.

15            THE COURT:  Thank you.  And then Mr. Sasaki.

16            PROSPECTIVE JUROR:  Good afternoon.  My name is

17  Jesse Sasaki.  I live in the City of Los Angeles.

18       I'm married.  I work for the technical investigation

19  division for the Los Angeles Police Department.

20       My spouse works very part-time at a retail store.  I have

21  two children.  One adult is attending college, the other is in

22  high school.

23       I have served on three juries that I can remember.  And

24  two criminal, one civil, and we all came to a verdict.

25            THE COURT:  Okay.  And then I think you had your
```

```
 1    hand raised when the witnesses were identified.

 2               PROSPECTIVE JUROR:  Yes, sir.

 3               THE COURT:  Then how many of those -- the witnesses

 4    identified, do you know?

 5               PROSPECTIVE JUROR:  At least five.

 6               THE COURT:  Your relationship is what -- is it a

 7    professional relationship or friendship, social?

 8               PROSPECTIVE JUROR:  Professional.

 9               THE COURT:  Is there any aspect of that relationship

10    that would cause you to be concerned about your ability to be

11    fair to the defendants in this case?

12               PROSPECTIVE JUROR:  Yes.

13               THE COURT:  Okay.  Fair enough.  Thank you.

14         Again, the focus of my questions is with the new group.

15         So, any prior arrests, convictions, or charges involving

16    yourself, family members, or close friends?

17         No hands.

18         Any of the new group -- any prior experience with law

19    enforcement -- negative experiences with law enforcement?

20         No hands.

21         Has anyone ever worked for law enforcement agency in any

22    capacity other than Mr. Sasaki.

23         No hands.

24         Any strong feelings one way or the other regarding laws

25    regulating weapons or controlled substances?
```

1        No hands are raised.

2        Any prior experiences with gangs, any family members,

3   friends, okay.

4        Mr. Sasaki, his hand is raised.

5             PROSPECTIVE JUROR:  I think I can't recall the exact

6   years.

7             THE COURT:  Mr. Sasaki.  We will discuss that at

8   sidebar in light of your relationship with certain of the

9   witnesses.

10       Any medical issues that need to be discussed that have not

11  otherwise been disclosed?

12       Any other issues concerning your ability to be an

13  alternate in the case?

14       Okay.  Then we will have again lawyers at sidebar.  We're

15  very close to selecting alternates.

16                        (Sidebar begins.)

17             THE COURT:  Okay.  Can we stipulate to let

18  Mr. Sasaki be excused?

19             MR. SHINER:  Yes.

20             THE COURT:  Mr. Sasaki, thank you very much, you are

21  excused.  Motion for cause as to the new two.

22             MR. SHINER:  Pass.

23             THE COURT:  Okay.  Defense?

24             MR. RAYNOR:  Pass.

25             MR. EISNER:  Pass.

1           THE COURT:  We go to the exercise of the

2    government's second and final preemptory challenge.

3           Just so we're all on the same page, Mardigal is No. 1,

4    Navarro, No. 2, Cosse No. 3, Grosenbach No. 4.  We're going to

5    have four alternates.

6           Next is with the government.

7           MR. SHINER:  We would like to excuse Mr. Navarro.

8           THE COURT:  Mr. Navarro, you are excused.  Thank you

9    very much, sir.

10          MR. RAYNOR:  Your Honor, the defense would ask the

11   Court to thank and excuse Juror Number 43, Ms. Grosenbach.

12          MR. SHINER:  I saved her for being an alternate.

13          MR. RAYNOR:  That was nice of you.

14          THE COURT:  Ms. Grosenbach is excused.  So we need

15   one more alternate.  We need one more.

16          So let's call three more.

17                        (Sidebar ends.)

18          THE COURTROOM DEPUTY:  Okay.  Yes, Your Honor.  This

19   will be the last round.

20          Ms. Cosse and Ms. Sheng, would you move over, please.  We

21   need one more alternate.

22          Okay.  As I call your name, please come forward and I will

23   seat you.

24          Juror Number 46, Elizabeth Correa, C-o-r-r-ea.

25          Juror Number 47, Wan Tsoi, T-s-o-i.

1          And Juror Number 48, Kimara Gault, G-a-u-l-t.

2                    THE COURT:  Okay.  We will start with the new group.

3      We will start with Ms. Correa.  Would you answer the questions

4      on the board on the monitor?

5                    PROSPECTIVE JUROR:  My name is Elizabeth Correa.  I

6      live in Los Angeles, Studio City.

7          I'm married.  I'm an office manager.  My husband is a

8      catering manager.  We have one son who is eight months.

9                    THE COURT:  Can you --

10                    PROSPECTIVE JUROR:  I have no prior jury service.

11                    THE COURT:  Can you participate in this case and be

12      fair to all of the parties?

13                    PROSPECTIVE JUROR:  Yes.

14                    THE COURT:  Next?

15                    PROSPECTIVE JUROR:  My name is Wan Tsoi.  I live in

16      San Gabriel Valley.  Married, two children.

17          I'm an engineer in the aerospace industry.

18          My wife is a flight attendant.  No adult children.

19          I have been on jury duty a few times, but never selected

20      as a juror.

21                    THE COURT:  Okay.  Can you participate in this case

22      and be fair to all of the parties?

23                    PROSPECTIVE JUROR:  I think I can participate in

24      this case.  What time does trial start?

25                    THE COURT:  Well, we are going to discuss the

```
1    schedule going forward.  We will start most days at 8:30.

2              PROSPECTIVE JUROR:  My wife is a flight attendant so

3    I'm half-time single parent, she's working.

4              THE COURT:  So the Court will start at 8:30.

5              PROSPECTIVE JUROR:  Okay, but I don't think I can be

6    fair, and I can give you my reasons, if you want.

7              THE COURT:  So you can participate in the case, but

8    you are concerned about your ability to be fair?

9              PROSPECTIVE JUROR:  Yes.

10             THE COURT:  Thank you.  And we go to Ms. Gault.

11        My name is Kimara Gault.

12        I live in Compton.  I am married.  I work at United

13   Airlines, so does my husband.

14        I have one adult child and he doesn't live in the home.  I

15   served on a jury six months ago.

16             THE COURT:  Civil or criminal?

17             PROSPECTIVE JUROR:  Civil.  We came to a verdict.

18             THE COURT:  Did you reach a verdict in the case?

19             PROSPECTIVE JUROR:  Yes, we did.

20             THE COURT:  The occupation of your adult son?

21             PROSPECTIVE JUROR:  Unemployed.

22             THE COURT:  When employed or pursuing employment,

23   what is the occupation?

24             PROSPECTIVE JUROR:  Just casual, movie theaters.

25             THE COURT:  What do you do at United?
```

**UNITED STATES DISTRICT COURT**

```
1              PROSPECTIVE JUROR:  Customer service, 18 years.

2              THE COURT:  And what does your husband do, also?

3              PROSPECTIVE JUROR:  Ramp service.

4              THE COURT:  Can you participate in this case and be

5    fair to all of the parties?

6              PROSPECTIVE JUROR:  Yes.

7              THE COURT:  Okay.  Again, the target is the new

8    group that has taken a seat with Ms. Correa being first.

9         I just want to make sure -- is there anyone who has any

10   prior arrests, charges, or convictions involving family members

11   or close friends or yourself?

12        Yes, sir, Ms. Correa.

13             PROSPECTIVE JUROR:  I was arrested when I was in

14   college for underage drinking, 20 days before my birthday, but

15   that is it.

16             THE COURT:  Okay.  You were treated fairly by law

17   enforcement?

18             PROSPECTIVE JUROR:  Yes.

19             THE COURT:  Do you feel that will influence your

20   decision-making here?

21             PROSPECTIVE JUROR:  No.

22             THE COURT:  Anyone else with a hand raise.

23        Yes, sir.  Mr. Tsoi.

24             PROSPECTIVE JUROR:  I was arrested when I was in

25   college for public intoxication.
```

1           THE COURT:  Were you treated fairly?

2           PROSPECTIVE JUROR:  Too fairly, I think.  I'm not

3   joking.  Out of 100 people commit a crime, only one gets trial

4   and prosecuted.  That is my opinion.

5           THE COURT:  Were you charged with any offense --

6   were you given a citation?

7           PROSPECTIVE JUROR:  Well, I was, you know, after

8   drinking with my friends.  I was walking home and I think I

9   broke somebody's window on their home.  I blacked out.  I

10  didn't remember a thing until I woke up, you know, basically in

11  the police station.

12      And I think I vaguely remember that this was about

13  30 years ago.

14      So I was not convicted.  I think I pled guilty.

15      I had an attorney at the time.

16      I pled guilty and then they asked me to pay back the

17  repairman and then they sent me to the drinking school.  That

18  was it.

19          THE COURT:  Did you complete it?

20          PROSPECTIVE JUROR:  Yes.

21          THE COURT:  Ms. Gault, did you have your hand raised

22  at all?

23          PROSPECTIVE JUROR:  No.

24          THE COURT:  Anyone who has any prior relationships

25  or current relationships with any law enforcement agency and

1    ever applied to be a member of law enforcement agency, any

2    family members who are employed or applied to have employment

3    with law enforcement?

4         No hands are raised.

5         Issues involving laws that regulates the control or laws

6    that govern possession, sales, distribution of weapons or

7    controlled substances.

8         Any strong views one way or the other?

9         No hands are raise.

10        The Court has already mentioned a gang that is involved in

11   the indictment.

12        Is anyone familiar with that gang.

13        Anyone familiar with any other gangs?

14        No hands are raised.

15        Any negative experience that you have -- any negative

16   experiences with any law enforcement officer or agency?  Any

17   negative problems with yourself, family members, or close

18   friends?

19        Any additional information you believe the lawyers should

20   know about to determine whether or not you should be an

21   alternate in this case?

22        This is an opportunity for you to volunteer information.

23        No hands are raised.

24        I will see counsel at sidebar.

25                       (Sidebar begins.)

1          THE COURT:  Any motion for cause as to the remaining

2     three?

3          We have Juror Number 47, who has indicated he cannot be

4     fair.

5          We can inquire further at sidebar or you can stipulate.

6          MR. EISNER:  Stipulate for cause.

7          MR. SHINER:  Mr. Tsoi?

8          THE COURT:  He has indicated he cannot be fair.

9          MR. SHINER:  Yes.

10         THE COURT:  I would imagine there is a joint motion

11    to excuse him for cause?

12         MR. EISNER:  I have never had a client that said

13    they were treated too lightly.

14         THE COURT:  Is it Mr. Tsoi?  You are excused, sir.

15         Any other motions for cause as to the government?

16         MR. SHINER:  No.

17         THE COURT:  The defense?

18         MR. RAYNOR:  No.

19         MR. EISNER:  No.

20         THE COURT:  Okay.  Ms. Correa is the fourth

21    alternate.

22         Any issues to discuss before the alternates are sworn in?

23         MR. SHINER:  No.

24         THE COURT:  Okay.  Let's swear all the four

25    alternates.

1        You have exercised your preemptories.

2            MR. EISNER:  The government, too?

3            THE COURT:  Yes.

4        We have selected alternates, and the clerk will be

5    swearing the alternates.

6                        (Sidebar ends.)

7            THE COURTROOM DEPUTY:  Could I have Ms. Madrigal,

8    Ms. Cosse, Ms. Sheng, and Ms. Correa, please stand and raise

9    your right hand to be sworn.

10       Ladies, do you solemnly swear you will well and truly try

11   the case now pending before this Court and render a true

12   verdict according to the evidence, so help you God?

13           ALTERNATE JURORS:  I do.

14           THE COURT:  Thank you.

15       I would like to take the opportunity to thank everyone

16   else for being here, it's been a long day, and please return

17   back to the office just to be excused for this evening.

18       You may have to return tomorrow for other jury service, so

19   back to the jury office to be excused.

20       Ms. Gault, you are excused, too.

21       Okay.  We're going to -- the alternates and the jury will

22   be excused shortly.

23       It's been a long day, so we will start tomorrow with

24   opening statements from counsel and then the evidence portion

25   of the case.

1        I just want -- I take the opportunity, again, to welcome

2    everyone.  You are now the jury and the alternates on the case.

3        There are some very important rules to keep in mind

4    throughout the course of the trial.

5        No contact between yourselves and any of the lawyers or

6    any of the parties in the case, a very strict rule.

7        If you see the lawyers in the hallway or the government

8    agents and they avoid having even eye contact with you, it's

9    not because they are being rude, it's because there is a very

10   strict rule, so please assist them by not even addressing them

11   in the hallway.

12       There are going to be numerous witnesses that are going to

13   be called in this case.

14       The list has already been provided for you, and so if a

15   person is in the corridor, they could be witness in the case.

16   If they are not wearing a jury badge, they could be a witness

17   in the case, so please avoid having any type of conversation or

18   contact with any of the persons who will be in the hallway

19   possibly waiting to be called as witnesses in the case.

20       If you are seen having a conversation with any witness,

21   then the Court has to take the time to hold a hearing to

22   determine whether you were influenced at all by any of the

23   statements made by the witness.

24       So rather than delay the process, please just follow that

25   rule in mind.

147

1      I read an instruction to you this morning.  I'm going to

2  paraphrase that instruction.  This is an instruction you must

3  abide by throughout the course of the trial until the jury

4  reaches a verdict in the case or you are otherwise discharged.

5      So again, do not communicate with anyone in any way and do

6  not let anyone else communicate with you in any way about the

7  merits of the case or anything to do with it.

8      This includes discussing the case in person, in writing,

9  by phone, or electronic means, via e-mail, text messaging, or

10  any Internet chat room, blog, website, or other feature.

11      This applies to communicating with your fellow jurors

12  until the case is given to you for purposes of deliberation.

13      It applies to communicating with everyone else, including

14  family members, your employer, the media, press, and people

15  involved in the trial.

16      Although, you may notify your family and your employer,

17  you have been seated as a juror in the case, and if you are

18  approached in any way about your jury service or anything about

19  the case, you must respond you have been ordered by the Court

20  not to discuss the matter and to report any contact with the

21  Court.

22      Do not read, watch, or listen to any news or media

23  accounts or commentary about the case.

24      I don't think that will be the matter here, but it could,

25  so if that would be the case, do not read or watch any news or

media accounts regarding the case.

Do not do any research, such as consulting dictionaries,
searching the Internet, or using other reference materials, and
do not make any investigation on your own or try to learn about
the case on your own.

The law requires these restrictions to ensure that the
parties have a fair trial, based on the same evidence that each
party has had an opportunity to address.

A juror who violates these restrictions, jeopardizes the
fairness of the proceedings, and a mistrial could result which
would require the trial process to have to start again and that
would be very expensive to the government, to the defendants,
and to taxpayers generally, and to the judicial process.

So if a juror is exposed to any outside information,
please notify the Court immediately.

When you go home tonight there are going to be persons who
are going to want to know a little bit about the jury service.
Again, you are instructed just to inform them you have been
selected to sit on a case and not discuss any aspect of the
case with them.

There is human nature that comes into place and there
is -- there is a tendency to want to do research on the case,
to Google the persons involved with the case, to do research
regarding the gang that has been mentioned here.  Absolutely do
not do that.

1     Be vigilant to your duties.

2     You have the same oath that the Court has taken.  You have

3   a duty to follow the law.  If you are to violate that oath, it

4   could jeopardize the entire process.

5     I can tell you that it's taken a little bit of time to get

6   this case to the jury.

7     With that, the jury is going to be excused.  I am going to

8   give you additional instructions tomorrow to guide you during

9   the evidence portion of the case and trial process.

10     This evening, you will be excused.  You will return

11   tomorrow.

12     We're going to keep a relatively tight schedule, because

13   we have a lot to cover.  So at 8:30 -- we're going to start

14   precisely at 8:30 a.m. tomorrow.

15     Arrive early so we can start early.  We have traffic

16   throughout the city.  Los Angeles is the most congested city, I

17   think, in the country now.

18     And so make sure you allow plenty of time to arrive so

19   that we can start at 8:30 a.m.  There is a question?

20          JUROR:  Can we take notes?

21          THE COURT:  Oh, yes.  Tomorrow when you return you

22   are going to be given tablets and then pens to take notes and

23   you are able to take notes throughout the process.

24     There is going to be other -- there may be other

25   demonstratives during the course of the trial to assist you to

**UNITED STATES DISTRICT COURT**

```
 1    assess all of the information that will be provided to you

 2    during the course of the trial.

 3              JUROR:  Sorry.  When we come back, do we just come

 4    up to outside the door or do we wait down in the jury room?

 5              THE COURT:  Yes.

 6              JUROR:  If there is an emergency, where do we call

 7    in to notify you?

 8              THE COURTROOM DEPUTY:  I will tell them that, too.

 9              THE COURT:  All of that information will be provided

10    to you by Mr. Cruz, who is the clerk here.

11         Any additional questions?

12         Now, you are the jury in the case, you are the alternates

13    in the case.  You are the jury and alternates until otherwise

14    discharged or until a verdict is reached.

15         With that, the jury and alternates will be excused, and

16    ordered back tomorrow at 8:30.

17         Again, do not discuss the case.

18              THE COURTROOM DEPUTY:  All rise for the jury,

19    please.

20              (JURY EXITS THE COURTROOM AT 4:40 P.M.)

21              THE COURT:  I think the jury has been excused.

22    Please have a seat, just some housekeeping matters.

23         We have opening statements tomorrow.

24         What is the status of the matter involving Mr. Perez?

25              MR. JENKINS:  Mr. Perez will be presented with what
```

1    we have discussed earlier today.

2         I expect that it will take some time for Mr. Perez's

3    attorney to go over that.  It's a complicated document, but I

4    literally printed it out at the last break.  We have a copy to

5    present to him right now.

6              THE COURT:  So, I guess if counsel needs additional

7    time to discuss whatever is being provided to Mr. Perez this

8    evening, that should be done, because tomorrow we're going to

9    start with opening statements.

10        How long will it take the government to make an opening

11   statement?

12             MR. PARK:  50 minutes, Your Honor.

13             THE COURT:  50?

14             MR. PARK:  Yes, Your Honor.

15             THE COURT:  The defense?

16             MR. RAYNOR:  Less than ten minutes.

17             MR. EISNER:  Ten minutes.

18             MR. DIAZ:  30 minutes.

19             THE COURT:  Has the government disclosed a list of

20   witnesses who will be called to the defense?

21        Please do that, if you haven't already done it.

22             MR. SHINER:  We did.

23             THE COURT:  In terms of the pending motions in

24   limine, I'm hoping to get those orders out either this evening

25   or tomorrow morning some time, but hopefully before opening

1    statements.

2                MR. RAYNOR:  Thank you, Your Honor.

3                THE COURT:  Which matter is most important to the

4    government in terms of opening statements?

5                MR. SHINER:  The gang expert motion followed by the

6    criminal history of the victim's motion.

7                THE COURT:  Okay.

8                MR. DIAZ:  Just for the record, I want to join the

9    gang expert motion that was filed by Mr. Eisner.

10               MR. RAYNOR:  Your Honor, Mr. Shaw would like to join

11   that motion as well.

12               THE COURT:  Okay.  Thank you.

13        Is there anything else to discuss before everyone is

14   excused?

15               MR. RAYNOR:  Yes, Your Honor.  The government has

16   disclosed certain photographs that they intend to use during

17   their opening statement, and we have some objections to some of

18   those.

19        I think they wanted to have the issues resolved

20   beforehand.  I can just identify those and perhaps we could

21   discuss them, maybe.

22               THE COURT:  Well, my general practice is to allow

23   the parties to make reference in opening statements to any

24   exhibit that counsel is confident will be received into

25   evidence.

1      If counsel makes reference to an exhibit, and it's not

2  received into evidence for any good reason, and there is

3  prejudice that is caused to the defense, then that could result

4  in appropriate sanctions.

5      But I generally leave it up to counsel to make those

6  decisions.

7      If there is a particular matter that is of significance,

8  then I'm open to addressing it now.

9           MR. RAYNOR:  Yes, Your Honor.  So rather than

10  address a bunch of them, let me focus on the one to me that is

11  the most problematic.  That is -- it's 107.2 and it's a video

12  of basically some African-American man kind of going on a

13  tirade about respecting Broadway and Broadway Gangster Crips,

14  and about people who have died and people should be -- people

15  who are members of the Broadway Gang died supporting Broadway

16  and the least that people could do would be to pay for the

17  gravestone.

18      It's basically somebody going on a narrative and it's none

19  of the defendants here.

20           THE COURT:  Okay.  I need more context to that.  Is

21  it Exhibit 107.2?  Who is going to address that on behalf of

22  the government?

23           MR. PARK:  We can play that right now.  It's just a

24  small portion of that clip.  It was played during the last

25  trial.  It was played during opening statement at the last

```
 1   trial and the speaker --

 2            THE COURT:  When you say the last trial, you are

 3   referring to Mr. Gordon?

 4            MR. PARK:  Yes.  It's a clip in which Tracy Harris,

 5   one of the OJs of the gang speaks with the gang's territory,

 6   and how the members of the gang are obligated to protect that

 7   territory through violence or otherwise.

 8            THE COURT:  Yes, I believe in the Gordon trial that

 9   was received into evidence.

10            MR. PARK:  Yes, Your Honor.

11            THE COURT:  Has that clip been expended at all?

12   It's the same clip that was presented in Mr. Gordon's trial.

13            MR. PARK:  Yes, Your Honor.  The part we're playing

14   in the opening is smaller than was in the other portion.

15            THE COURT:  Your ground for the objection?

16            MR. RAYNOR:  It's 403 hearsay, lack of foundation

17   for, you know, co-conspirator statement.  And it appears that

18   this was a video that was taken with a cell phone camera to be

19   captured on this.  And you know --

20            THE COURT:  Let's play it very quickly.

21       I recall the video, or the clip, I should say.  But let's

22   make sure we're on the same page.

23       Mr. Park, are you going to be making opening statements?

24            MR. PARK:  Yes, Your Honor.  And the text of the

25   clip --
```

```
 1            THE COURT:  I have read the text.

 2                 (Video played in open court.)

 3            THE COURT:  I have read the text and reviewed the

 4    clip.  The objection to its use in opening statements is

 5    overruled.

 6            MR. DIAZ:  Your Honor, I want to join the objection

 7    for all of the reasons that -- I don't see how it can amount to

 8    a fair trial if we start the trial, Your Honor, without the

 9    evidence being presented and already being essentially

10    published, you know.  It's a given.

11        To me, it's very unusual, and so I want to also join the

12    objection.

13            THE COURT:  Well, it's not unusual, but again, the

14    jury is instructed that opening statement is not evidence, and

15    the Court has made it clear that the Court expects the

16    government to lay the foundation for its admission of

17    Exhibit 107.2.  If it's not received as an exhibit in evidence,

18    then the Court will consider any appropriate remedy.

19            MR. EISNER:  Your Honor, I join on that objection on

20    behalf of Mr. Ingram.

21        Your Honor, we were given -- about two days ago, we were

22    given 50 some-odd pictures and photographs as to what is going

23    to be demonstrated to the jury in opening statement.

24        Again, for the same reason, it's cumulative.  It's telling

25    the jury that this is what the case is about before they even
```

1    hear it from a witness.  And for those reasons, I join in that

2    motion.

3                THE COURT:  Okay.  Thank you.

4                MR. RAYNOR:  Just very briefly, Your Honor.  The

5    Court ruled on a motion relating to co-conspirator's statement

6    hearsay, or alleged co-conspirator's statement hearsay.

7         And we would just ask that it apply across the board.  If

8    it's an unknown co-conspirator where the government hadn't

9    established that they are not going to bring it up in opening,

10   they are not going to be bringing it up with other witnesses

11   beyond, I know the Court ruled on it in one instance, but we

12   ask that the same rule applies across the board.

13               THE COURT:  I don't know how to apply it in a

14   blanket form.

15        If there is, again -- if there is certain evidence that is

16   offered in the course of the government's case in chief and

17   there is grounds to object, then the objection will be

18   entertained by the Court.

19        If somehow the statement or exhibit is shown to the jury

20   without sufficient foundation, and there is prejudice to the

21   defendants, again, the Court will entertain the proper remedy.

22               MR. RAYNOR:  Thank you, Your Honor.

23               THE COURT:  So, we are going to be adjourned.

24        We will start tomorrow.

25        Please arrive before 8:30, so you can set up.  Counsel for

UNITED STATES DISTRICT COURT

```
 1    the defense, make sure that all of the equipment that is being

 2    used -- you have a backup plan just in case the technology

 3    fails.

 4                MR. PARK:  Understood, Your Honor.

 5                THE COURT:  Thank you.

 6                   (Proceedings concluded at 4:53 p.m.)

 7                                    *  *  *

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

## **CERTIFICATE OF OFFICIAL REPORTER**

COUNTY OF LOS ANGELES    )
                         )
STATE OF CALIFORNIA      )


          I, TERRI A. HOURIGAN, Federal Official Realtime

Court Reporter, in and for the United States District Court for

the Central District of California, do hereby certify that

pursuant to Section 753, Title 28, United States Code that the

foregoing is a true and correct transcript of the

stenographically reported proceedings held in the

above-entitled matter and that the transcript page format is in

conformance with the regulations of the judicial conference of

the United States.


Date:  July 17, 2018



                         /s/ TERRI A. HOURIGAN
          _____
                TERRI A. HOURIGAN, CSR NO. 3838, CCRR
                   Federal Official Court Reporter


**UNITED STATES DISTRICT COURT**