# Exhibit A

CHERNIS LAW GROUP, P.C.
Michael S. Chernis, CSB 259319
2425 Olympic Blvd, Suite 4000-W
Santa Monica, CA 90404
Tel: (310) 566-4388
Fax: (310) 382-2541
michael@chernislaw.com

Attorney for Defendant
**ROBERT CURTIS BARNETT**

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>TYRINE MARTINEZ, et al<br>(ROBERT BARNETT, No. 29)<br><br>Defendant. | CASE NO.: 2:14-CR-00338-SJO-29<br><br>EX PARTE APPLICATION FOR STATUS CONFERENCE TO ADDRESS POST-SENTENCING DISCLOSURES BY GOVERNMENT CONCERNING CONFIDENTIAL INFORMANTS AND REQUEST FOR ORDER GRANTING TOLLING OF DEFENDANT'S CLAIMS PURSUANT TO 28 U.S.C. §2255; SUPPORTING DECLARATION; PROPOSED ORDER |

TO THE HONORABLE S. JAMES OTERO, UNITED STATES DISTRICT JUDGE:

Michael S. Chernis attorney for ROBERT CURTIS BARNETT respectfully requests the Court to hold a status conference on December 17, 2018, to address the consequences of recent disclosures by the Government, post-Sentencing, that Confidential Informant evidence relied upon by the Government and conveyed to the Court in connection with the sentencing of Mr. Barnett, and apparently relied upon by the Court in sentencing Mr. Barnett, was recanted and called into question by other witnesses. In particular, the Government and the Defense would like to discuss with the Court the possible remedies available to Mr. Barnett, including re-sentencing by the Court. This request is based on the attached declaration of counsel and the Government joins in this request for a status conference to address these issues.

In addition, the Counsel for Mr. Barnett and the Government have entered into a tolling agreement with respect to any claims that Mr. Barnett may have pursuant to 28 U.S.C. § 2255 with respect to these recent Government disclosures, to the effect that any right that Mr. Barnett would

have under Section 2255 would not lapse before June 19, 2019, to avoid needless litigation about when those claims would expire. The Parties jointly request that the Court grant the attached Proposed Order confirming its acceptance of this tolling agreement.

Dated: December 11, 2018

Respectfully submitted,

*/s/ Michael Chernis*

MICHAEL S. CHERNIS
Attorney for Defendant
**ROBERT CURTIS BARNETT**

---

DEFENDANT BARNETT EXPARTE APPLICATION FOR STATUS CONFERENCE

## DECLARATION OF COUNSEL IN SUPPORT OF EX PARTE APPLICATION

I, MICHAEL S. CHERNIS, declare as follows:

1) I am CJA appointed counsel for Defendant Robert Curtis Barnett in this action. I make the Declaration in support of my application requesting that the Court (i) hold a status conference to address certain issues pertaining to Mr. Barnett that have arisen since his sentencing in December 2016, and (ii) grant the attached proposed order concerning the timing for Mr. Barnett to bring any claims he may have under 28 U.S.C. § 2255 relating to those issues.

2) I was appointed to represent Mr. Barnett at his arraignment on June 17, 2014. Thereafter, I represented Mr. Barnett through his sentencing by this Court on December 12, 2016. The Court sentenced Mr. Barnett to a term of 105 months, which was the term requested by the Government. Mr. Barnett had sought a sentence of 70 months.

3) In support of its sentencing position, and requested sentence, the Government placed great reliance upon, and brought to the Court's attention, a prior State court conviction for aggravated assault from a 2006 act event where Mr. Barnett at age 18 was charged with being the driver of a car with two other gang member passengers who then exited and shot two persons alleged to be rival gang members (neither fatal). Mr. Barnett was never alleged in State Court, or in the RICO case, with being a shooter – only the driver.

4) Mr. Barnett contended during his federal case that he was not involved in the assault, and was not even the driver, but instead had taken the guilty plea under duress. To that end, in connection with plea negotiations, Mr. Barnett's attorney submitted a mitigation package to the Government with evidence to support his contention that he did not particulate in the 2006 assault. As a result, the Government agreed to not include this 2006 assault, which was alleged in the RICO Indictment, as one of the predicate acts included in Mr. Barnett's Plea Agreement.

5) Nonetheless, the Government in its Sentencing Position used this prior State conviction to portray Mr. Barnett as a violent offender – it was the only prior conduct of Mr. Barnett involving violence. Otherwise, Mr. Barnett's prior convictions and RICO predicates were limited to possession and sale of small quantities of crack cocaine.

6) Notably, the Government attached to its Sentencing Position and filed under seal a June 15, 2014 witness statement from CW-14, allegedly one of the shooters from the 2006 assault, which statement inculpated Mr. Barnett in the assault.

7) At the sentencing hearing the Government discussed the 2006 assault at length. (See Transcript of December 12, 2016 Sentencing Hearing, attached hereto as Exhibit A, at 21-22). For example, the Government argued that this event established Mr. Barnett's pattern of "shooting at rivals, being violent." (Tr.22-21-22)

8) The Court seemingly placed great emphasis on Mr. Barnett's participation in the 2006 assault in imposing a sentence. For example, the Court made reference at the sentencing hearing to this prior criminal conviction several times in distinguishing Mr. Barnett from other similarly-situated defendants who received lesser sentences. (Tr. 14:18-19; Tr:15:6-7)

9) The Court also agreed with the Government's characterization of Mr. Barnett as having a violent history and pattern of violent behavior. (Tr. 27). Indeed, the Court in response to my efforts to demonstrate that other defendants in the case who plead guilty to conduct like Mr. Barnett had received sentences of between 70-84 months, pointed to his violent past as evidenced by the 2006 assault. Specifically, the Court noted that Mr. Barnett "was the driver in a case where … there was an attempted murder. There was a total disregard for life." (Tr. 27:22-24)

10) It thus appears that the Court in imposing a sentence of 105 months relied at least in part upon Mr. Barnett's role in the 2006 assault, as emphasized by the Government, and that Mr. Barnett may otherwise have received a sentence closer to 84 months.

11) The Court, however, did not have the benefit of any of the evidence submitted by Mr. Barnett to the Government concerning his innocence in the 2006 assault, which included statements made by other cooperating witnesses. Mr. Barnett's counsel had agreed with the Government to not submit that evidence to the Court in order to get the full 3 points for acceptance of responsibility.

12) Yet, approximately one year after the sentencing, the Government notified me that CW-14 – the witness that had given the statement the Government submitted to the Court in connection with Mr. Barnett's sentencing hearing – had recanted his statement during a December 13, 2017 trial preparation session. In a letter sent to me on December 14, 2017, entitled "Brady Disclosure," AUSA Max Shiner wrote as follows:

> During this meeting, CW-14 recanted a discrete portion of his previous statement to the government that he provided during a proffer session with his then counsel on June 25, 2014. Specifically, CW-14 had previously told the government that your client, Robert Barnett, took part in two September 9, 2006 assaults with a firearm (to which your client pled guilty in state court). However, in yesterday's proffer, CW-14 newly claimed that neither [Robert Barnett] nor co-defendant Ricky Keaton were present in the vehicle used in the shootings… and that the driver of the vehicle was another Broadway Crips member whom CW-14 claimed he could not identify. CW-14 stated that Mr. Barnett and Mr. Keaton were present with other Broadway gang members prior to and after the shootings, but claimed that otherwise they had no direct involvement in the shootings.

13) AUSA Shiner further stated that in light of the recanted statement, "the government, FBI, and local task force officers are immediately re-opening an investigation in these shootings." In addition, I was advised that the statements by CW-14 would be summarized in a report and produced to me once completed, and provided to the Court under seal.

14) On June 22, 2018, the Government submitted the promised report to the Court under seal (Dkt. 3518). In relevant part, the Government reported that another witness CW-1 told the Government during a proffer session on February 19, 2018, that Mr. Barnett was not involved in the 2006 assault, and named the actual shooter

and driver, thus corroborating the revised version of events by CW-14, and further suggesting that his June 2015 proffer statement relied upon by the Government and submitted to the Court in connection with Mr. Barnett's sentencing was unreliable.

15) The December 14, 2017 Brady disclosure by the Government, and the June 22, 2018 report filed by the Government, raise a number of questions and concerns for Mr. Barnett, including whether there was a violation of his rights in connection with the Government's use of CW-14's recanted statement during Mr. Barnett's sentencing, and whether the Government had information available to it prior to CW-14 recanted his statement raising questions about its reliability. There is also the question of what if any remedy Mr. Barnett may have as a result of these disclosures, under 28 U.S.C. § 2255, or otherwise, and what if any discovery Mr. Barnett may require to support those claims.

16) Since the Government's June 22, 2018 filing, I have had several discussions with AUSA Mack Jenkins about these issues, and the possibility of reaching an agreement between the Parties that would avoid further litigation, including a possible joint request for a re-sentencing of Mr. Barnett. At this point in time in the discussions, the Government and myself believe it would be in the best interests of all parties and justice to have a Status Conference with the Court to discuss these issues, and possible steps forward.

17) Although it would be ideal to have Mr. Barnett present at the status conference, he is currently serving his federal prison sentence at Victorville Correctional Institute in Adelanto, CA. Frankly, I have been trying for months to contact Mr. Barnett to determine whether he wants to be present at this status conference, as I understand such transfers can be disruptive. I am not sure that my letters to Mr. Barnett are reaching him. For the sake of time, and in the interests of having this status conference take place in the coming weeks, the Defense is not requesting at this time to have Mr. Barnett present at the status conference. Mr. Barnett can be brought to Court for further status conferences, if any, where any final determinations are made with respect to his rights stemming from the above-

mentioned disclosures. If, however, the Court deems it necessary to have Mr. Barnett present, then I would request that the Court order the Bureau of Prisons to transport Mr. Barnett to Court for the Status Conference on December 17, 2018, or as soon as the Court can conduct a status conference before the new year.

18) As the Court well knows, 2255 motions must be filed within one-year of the date on which the facts supporting the claims presented could have been discovered through the exercise of due diligence. The Government first made a disclosure to Mr. Barnett on December 14, 2017, nearly one year ago. It is Mr. Barnett's position that this disclosure did not begin the one-year time period to run, and that at the earliest the time period would not have commenced to run until the Government filed its report on June 22, 2018, at the earliest. To avoid needless litigation about when the deadline to file Section 2255 claims expires, on December 4, 2018, AUSA Jenkins and I agreed that such claims would not lapse until June 19, 2018, at the earliest. Attached hereto is a proposed order we ask the Court to grant adopting the parties' tolling agreement.

19) Accordingly, for the reasons set forth above, on behalf of Mr. Barnett, I respectfully request the Court to conduct a status conference before the end of the year, and ideally on December 17, 2018, to discuss the matters set forth herein, and to grant the proposed order.

20) AUSA Jenkins has advised me that the Government concurs in and fully supports the requested relief for a status conference to discuss next steps and the tolling of Section 2255 rights, although it may not agree with each of my characterizations in this Declaration, including the impact of CW-14's recanted statement on the sentence imposed upon Mr. Barnett.

I declare under penalty of perjury and under the laws of the State of California that the foregoing is true and correct. Executed on December 11, 2018, at Santa Monica, California.

*/s/ Michael Chernis*
MICHAEL S. CHERNIS

---

DEFENDANT BARNETT EXPARTE APPLICATION FOR STATUS CONFERENCE